**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**
**GREENSBORO DIVISION**

JENNIFER FORD, individually and on
behalf of all others similarly situated,

       Plaintiff,

v.

VETERANS GUARDIAN VA CLAIM
CONSULTING, LLC,

       Defendant.

CASE NO.: 1:23-cv-756

COMPLAINT -- CLASS ACTION

DEMAND FOR JURY TRIAL

## CLASS ACTION COMPLAINT

Plaintiff Jennifer Ford ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following based on personal knowledge as to herself and on the investigation of her undersigned counsel as to all other matters, and brings this class action against Defendant Veterans Guardian VA Claim Consulting, LLC ("Defendant" or "Veterans Guardian").

## I.  NATURE OF THE ACTION

1.     This case is about illegal fees charged to disabled United States Military veterans by an unaccredited North Carolina-based company, Veterans Guardian. The fees are extracted from victims' Disability Compensation benefits paid through the United States Department of Veterans Affairs (the "VA"). Despite its name, Veterans Guardian in fact preys on disabled veterans by unfairly and deceptively taking tens of millions of dollars of their disability benefits in violation of Federal law, the North Carolina Unfair and

Deceptive Trade Practices Act ("UDTPA"), and the North Carolina Debt Collection Act ("NCDCA").

2.     VA Disability Compensation provides a monthly tax-free payment to veterans who became sick or injured while serving in the military and to veterans whose service made an existing condition worse.[1]

3.     For VA Disability Compensation, the VA rates veterans' disabilities on a scale from 0% to 100% in 10% increments (*e.g.*, 10%, 20%, 30%).[2]

4.     VA Disability Compensation can be increased to compensate for dependents such as a spouse, parent, or children.[3] Depending on the circumstances, VA Disability Compensation can exceed $4,000 per month.

5.     To obtain VA Disability Compensation, veterans must file a claim with the VA. There are many Veteran Service Organizations ("VSOs") who assist veterans in filing their disability claims, *without charge*. Some of the most well-known VSOs include The American Legion, Veterans of Foreign Wars, Disabled American Veterans, among many other reputable organizations made up of VA accredited claims representatives.

6.     Each of these organizations were stakeholders in the implementation of the Veterans Appeals Improvement and Modernization Act of 2017 which helped to dramatically reform and simplify the processes and procedures involved in obtaining

---

[1] *See* https://www.va.gov/disability/

[2] *See* https://www.benefits.va.gov/compensation/rates-index.asp#:~:text=VA%20rates%20disability%20from%200,disability%20percentage%20for%20multiple%20disabilities

[3] *See* https://www.va.gov/view-change-dependents/

benefits or an increase in benefits.[4] Once a veteran receives an initial claim rating, they may to continue with their VSO or, alternatively, may use a for-profit VA accredited agent or attorney. Like attorneys representing clients before the bar of a given state, Congress empowered the VA to regulate individuals and entities assisting veterans with filing claims for VA Disability Compensation benefits.

7.      38 CFR 14.629 (b)(1) plainly states that "[n]o individual may assist claimants in the preparation, presentation, and prosecution of claims for VA benefits as an agent or attorney **unless** he or she has first been accredited by VA for such purpose."

8.      Despite this clear prohibition, Veterans Guardian routinely and systematically assists claimants in the preparation, presentation, and prosecution of claims for VA benefits *and* charges a substantial contingency fee for doing so despite not being accredited by the VA.

9.      Veterans Guardian's contingency fee equals five times the amount of any monthly VA Disability Compensation increase. This amount exceeds the amount that could be lawfully charged by legitimate VA-accredited representatives under 38 C.F.R. § 14, *et seq.*

10.     Veterans Guardian's uniform contract asserts that its services and fees are "in compliance with Chapter 59, United States Code and Title 38, Code of Federal Regulations § 14." A copy of Plaintiff's Consulting Service Agreement (the "Contract")

---

[4] https://news.va.gov/press-room/vas-appeals-modernization-act-takes-effect-today-new-law-streamlines-departments-current-claims-and-appeals-process-for-veterans/

with Defendant is attached hereto as Exhibit A.

11.     There is no provision in Chapter 38 or Chapter 59 of the United States Code that allows Veterans Guardian, an unaccredited entity, to prepare claims for veterans to submit to the VA and to be compensated for doing so.

12.     All fees collected by Veterans Guardian are unlawful as they stem from conduct prohibited by federal law.

13.     Plaintiff seeks to represent all similarly situated veterans who have paid Veterans Guardian in connection with an unlawful agency contract that is unfair and deceptive under North Carolina law, the home state of Veterans Guardian.

## II.  JURISDICTION AND VENUE

14.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because there are at least 100 members in the proposed Class defined below, the combined claims of the proposed Class members exceed $5,000,000, exclusive of interest and costs, and as discovery will show, more than two-thirds of the proposed Class members are citizens of a state other than Veterans Guardian's state of citizenship, North Carolina.

15.     Alternatively, this Court has federal question jurisdiction over this action pursuant to 28. U.S.C. § 1331 as the foundation for the claims made arise under the Constitution, laws, or treaties of the United States, specifically Chapter 59, United States Code and Title 38, Code of Federal Regulations § 14 which prohibit non-accredited agents from aiding in the creation and/or submission of disability claims to the VA.

4

16.     This Court possesses personal jurisdiction because Veterans Guardian deliberately and regularly conducts business, marketing, claim distributing, promoting VA claims assistance and appeals, and/or collections, in North Carolina, and has its principal place of business in Pinehurst, North Carolina. The illegal fees at issue are issued, invoiced, processed, and collected from the State of North Carolina. Veterans Guardian has obtained the benefits of the laws of North Carolina and profited handsomely from North Carolina commerce.

17.     The Veterans Guardian contract with Plaintiff and the Class includes a Choice of Law and Venue provision which reads: "This agreement is entered into and shall be governed by the laws of the State of North Carolina and said states courts shall have exclusive jurisdiction to adjudicate any dispute arising out of or relating to this agreement. …"

18.     Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because Veterans Guardian is a limited liability company subject to personal jurisdiction in this District and does business in this District. Additionally, venue is proper because a substantial portion of the acts, events, and/or unlawful activity giving rise to the claims asserted occurred in this District.

### III. PARTIES

19.     Plaintiff Jennifer Ford is a United States Army Veteran and former Staff Sergeant who received an honorable discharge after her time in the military. Ms. Ford resides in Kilgore, Texas.

5

20.     Defendant Veterans Guardian VA Claim Consulting, LLC is a North Carolina Limited Liability Company with its principal place of business in Pinehurst, North Carolina.  Membership in Veterans Guardian is as follows: (a) Member Scott Greenblatt is a natural person and resident of Pinehurst North Carolina, and a citizen of North Carolina; and (b) Member William Taylor is a natural person and resident of Pinehurst North Carolina, and a citizen of North Carolina. Accordingly, upon information and belief, all members of Defendant's limited liability company are residents and citizens of North Carolina.

21.     Veterans Guardian is headquartered and has its principal place of business at 75 Trotter Hills Circle, Pinehurst, North Carolina 28374. Upon information and belief, Veterans Guardian's employees are employed and conduct the following business at its headquarters, without limitation: prepare VA Disability Compensation claims, correspond to client inbound calls, manage its website, discuss VA Disability Compensation claims with veterans, request medical records, request military records, review medical records and military records, place telephone calls to veterans to prepare veterans for private medical examination, place telephone calls to veterans to prepare veterans for the VA's C&P examination, email draft copies of completed VA Disability Compensation claims to veterans, mail hard copies of VA Disability Compensation Claims to veterans, provide instructions on how to execute a VA Disability Compensation Claim Packet and the necessary attachments, place telephone calls to veterans to explain how to submit intent to file, email invoices to veterans to collect a debt, receive payments from veterans as a result

6

of Defendant's debt collection activities, and other related activities.

22.     Defendant prepares, presents, and/or prosecutes VA Disability Compensations Claims and Appeals. Defendant operates a brick-and-mortar location in Pinehurst, North Carolina. Upon information and belief, Defendant solicits and targets veterans from all 50 states, and owns and operates the website: https://vetsguardian.com/.

## IV. FACTS

### A.     The History of VA Disability Compensation Benefits

23.     The United States Department of Veterans Affairs ("VA") is organized into three administrations: (a) Veterans Benefits Administration ("VBA"); (b) Veterans Health Administration ("VHA"); and (c) National Cemetery Administration ("NCA"). The VBA provides a variety of disability compensation, pension, education, and more.[5] VBA is the administration involved in approving and awarding VA Disability Compensation.

24.     The United States recognizes the effects of military service on veterans that result in disabilities that are service connected and secondary service connected, diseases, or injuries incurred or aggravated during active military service.[6] The VA's disability program provides monthly VA Disability Compensation payments to veterans who suffered injuries during their military service or secondary to their military service.

25.     In 2022, nearly 3.9 million veterans received monthly disability

---

[5] *See* https://www.benefits.va.gov/benefits/about.asp#:~:text=Protects%20the%20benefits%20paid%20to,%2C%20Veterans%2C%20and%20their%20families
[6] *See* https://helpdesk.vetsfirst.org/index.php?pg=kb.page&id=1785

7

compensation payments for partial or complete disabilities.[7]

## B. Federal Law Contains Strict Guidelines Governing the Challenged Conduct

26.     Sections 14.626 through 14.637 of Title 38 of the Code of Federal Regulations, implement Chapter 59 of the United States Code governing the representation of claimants for veterans' benefits. There are very clear and strict dictates under this law including:

- Anyone assisting "in the preparation, presentation, and prosecution of claims for VA benefits" must be accredited by VA for that purpose. 38 C.F.R. 14.629 (b)(1)

- Only accredited agents and attorneys may receive a fee from claimants or appellants for their services. 38 C.F.R. § 14.636(b).

- Fees charged by accredited Agents and attorneys after an initial decision must comply with power of attorney requirements of 38 C.F.R. § 14.631 and the fee agreement requirements of 38 C.F.R. § 14.636(g).

- All agreements for fees for services must be in writing and signed by both the claimant or appellant and the accredited agent or attorney. Specifically, those agreements must contain: (1) name the veteran; (2) name the claimant or appellant if other than a veteran; (3) name any disinterested third-party payer and the relationship between the third-party payer and the veteran, claimant, or appellant; (4) set forth the applicable VA file number; and (5) contain the specific terms under which the amount to be paid for the services of the attorney

---

[7] *See* https://www.census.gov/newsroom/press-releases/2021/veterans-report.html

or agent will be determined. 38 C.F.R. § 14.636(g)(1)(i-v).

27.     A copy of those signed written agreements must then be sent to either the VA or Office of General Counsel ("OGC") within 30 days. 38 C.F.R. 14.636(g)(3).

28.     No money may ever be charged or paid before a notice of the initial claim is issued. 38 U.S.C. § 5904(c)(1).

29.     Fees exceeding 33 1/3 percent of past-due VA disability benefits awarded are presumed unreasonable. 38 C.F.R. § 14.636(f)

30.     It is unlawful to charge veterans for assisting with initial claims or the recovery of future VA benefits.

31.     Upon information and belief, Veterans Guardian is not an accredited agent of the VA, has never filed any direct-pay fee agreements with the VA, nor filed a direct-pay fee agreement with the OGC for VA Disability Compensation Claims that it prepares and collects a fee from U.S. veterans.  Veterans Guardian also charges fees for initial claims and for amounts that do not comply with the VA strict limitations set forth above.

**C.     Unfair and Deceptive Acts by Defendant Veterans Guardian**

38.     By failing to first receive accreditation from the VA prior to assisting Veterans in the preparation and presentation of their veterans' benefits claims under the guise of providing only "pre-filing" and "post-filing" consulting services and charging exorbitant fees that are contingent upon the success of veterans' claims, Veterans Guardian violated federal regulations; and by violating regulations that were designed to protect veterans, Veterans Guardian has committed an unfair and deceptive trade practice under

9

N.C. Gen. Stat. § 75–1.1.

32.     The standard form Veterans Guardian Consulting Service Agreement (the "Contract") entices veterans to use its services with deceptive or false statements. For example, contrary to the specific prohibitions against unaccredited agents preparing VA Disability Compensation Claims, the Contract states that its services and fees are "in accordance with Chapter 59, Title 38, United States Code and Title 38, Code of Federal Regulations § 14." This is false or deceptive statement. Veterans Guardian is an unaccredited agency and is strictly prohibited by Federal Law from assisting in preparing or presenting disability claims to the VA. But Veterans Guardian ignores these restrictions and regulations and deceptively provides these restricted services under the pretext of providing "pre-filing" and "post-filing" consulting services. Even though the Contract informs clients that Veterans Guardian is unaccredited, it takes advantage of its veteran clients with its superior position of knowledge and sophistication by intentionally mischaracterizing its services as pre and post filing consulting services.

33.     The purpose of the regulations *viz.* 38 U.S.C. Chapter 59 and 38 C.F.R. § 14 was to protect veterans from exploitation by the unlawful business practices as challenged here. For example, the purpose of enacting the law and regulations set forth above was to ensure that "claimants for Department of Veterans Affairs (VA) benefits have responsible, qualified representation in the preparation, presentation, and prosecution of claims for veterans' benefits." See 38 C.F.R. § 14.626. In fact, while enacting § 14.636 *viz.* the provision capping the fees that agents or attorneys may charge "in connection with

10

representation" in proceedings before the VA to 33 1/3%, Congress expressed a concern with allowing contingent fee agreements, stating that such agreements "present a more specific risk of exploitation" and "give rise to the potential that a significant portion of a veteran's past-due benefits could be transferred to a lawyer for less work than was expected by the client at the time of the agreement." *See* Accreditation of Agents and Attorneys; Agent and Attorney Fees, 73 FR 29852-01.

34.    Veterans Guardian's unfair business practices have caused many unwary veterans to hire Veterans Guardian believing it to be a legitimate provider of lawful VA claim services, when in fact the Contracts are unlawful due to the fact that Veterans Guardian is not accredited by the VA; Veterans Guardian's services are not permissible under the regulations; Veterans Guardian is not permitted to charge fees on initial claims, Veterans Guardian's fees exceed the rates charged by actual VA accredited agents and attorneys; Veterans Guardian's claim over VA benefits in the form of "agreed-to" fees and the penalties imposed for the non-payment of fees are unlawful under the regulations. Thus, by violating regulations that were enacted by Congress to protect veterans from becoming victims of unlawful, unscrupulous and deceptive business practices, Veterans Guardian violates UDTPA, § 75-1.1. Its unlawful and unfair business practices have proximately caused Plaintiff's damages in the form of unlawful payments made from her monthly benefit payments.

**D.    Press Scrutiny of Veterans Guardian and Other "*Claims Sharks*"**

35.    In the last few years, companies such as Veterans Guardian, which illegally

11

prey on veterans in the name of helping them increase their disability benefits, have come under significant scrutiny by the media, veterans' advocacy groups and the VA itself.

36. On April 1, 2022, WBTV a local television station Charlotte, North Carolina, ran a news segment warning veterans against Veterans Guardians after conducting a private investigation into its services. The news segment included interviews with veterans who had used their services and found that Veterans Guardian "asked veterans for their personal login credentials and submit[ted] claims in their name." WBTV also reported that it had seen an email from Veterans Guardian in which it coached a client on how to ask for documents from the VA and the client told WBTV that Veterans Guardian had warned him specifically not to mention to the VA that he was working with Veterans Guardian. Below is a snapshot of the email displayed in the news segment:[8]

---

[8] *See* https://www.wbtv.com/2022/04/01/pack-vultures-american-legion-warns-veterans-about-nc-company/

## 'A pack of vultures.' American Legion warns veterans about NC Company

Veterans Guardian previously the subject of WBTV investigation

To move along with the process, we need some additional information to continue developing your individual claim strategy. Once we receive your information, we will complete the assessment and get back to you quickly with an individual strategy to maximize your VA disability compensation!
?????

Please provide the following documents to matthew.brawn@vetsguardian.com or by Fax to (910) 493-3988.

1) DD214 - Certificate of Release or Discharge from Active Duty

2) VA Rating Decision Letter - If you have previously filed a claim the VA would have mailed you a letter with an explanation of their decision. If you do not have your Decision Letter, you can obtain this via the VA hotline.

Call the VA at 1-800-827-1000 - Request to speak to a representative and ask for the following "Please fax me my Rating Decision Letter to (910) 493-3988"
(Please have them send it in YOUR name on the cover letter, not Veterans Guardian)

If you have a Rated Disability with the VA please also provide the following:

3) VA Disability Rating Breakdown Letter - To obtain this letter please call the VA at 1-800-827-1000.

**WBTV INVESTIGATES**
**AMERICAN LEGION WARNS VETERANS ABOUT NC COMPANY**
**CHARGING FOR HELP GETTING BENEFITS**

37.     WBTV also reported that the American Legion also expressed its concern with Veterans Guardian's services and fees, calling it a "a pack of vultures" and a "predatory claims company."

38.     On April 27, 2022, the United States House of Representatives, Committee on Veteran's Affairs, held an investigative hearing on the practices of unaccredited claims consultants. At this conference, several veterans' advocates such as the American Legion, National Organization of Veterans' Advocates ("NOVA") and Veteran of Foreign Wars ("VFW") testified on the predatory practices of unaccredited agencies such as Veterans Guardian. For example, the VFW, referred to non-accredited consulting groups as "Claim Sharks," and called out a few predatory practices employed by these companies such as "guaranteeing increases in benefits" and "promising no-cost consultations."

13

39.     More recently, CBS News and the Texas Tribune also brought to light the predatory nature of unaccredited claims consultants such as Veterans Guardian.[9]

**E.     Veterans Guardian Submitted False or Misleading Statements to Congress**

**i.     Veterans Guardian's First False Statement to Congress**

40.     On April 27, 2022, the House Committee on Veterans' Affairs Subcommittees on Disability Assistance and Memorial Affairs and Oversight and Investigations conducted an open session and joint oversight hearing entitled "At What Cost? – Ensuring Quality Representation in the Veteran Benefit Claims Process" (the "Hearing").

41.     Among the witnesses testifying was William Taylor ("Mr. Taylor"), co-founder and Chief Operating Officer of Veterans Guardian. When questioned during the hearing, Mr. Taylor testified under oath that "Veterans Guardian has not received a cease-and-desist letter from the VA."[10] The Hearing Committee later determined that the Letter sent by the VA OGC staff attorney was a cease-and-desist letter.

**ii.     Veterans Guardian's Second False Statement to Congress**

42.     On May 9, 2022, Hearing Committee staff emailed Brian Johnson ("Mr.

---

[9] *See* CBS News, "Some private companies charge hefty fees to help veterans with disability claims," May 11,2023 at https://www.cbsnews.com/news/veterans-disability-claims-companies-charge-fees/ (last visited on August 3, 2023); Texas Tribune, "As veteran disability claims soar, unaccredited coaches profit off frustration with VA system," July 5, 2023 at https://www.texastribune.org/2023/07/05/veterans-disability-benefits-brian-reese-va-claims-insider/ (last visited on August 3, 2023).

[10] *Id.*

14

Johnson"), Veterans Guardian's Vice President of Government and Public Affairs seeking to confirm Mr. Taylor's testimony that Veterans Guardian "has not received a cease-and-desist letter from the VA." That same day, Veterans Guardian's through Mr. Johnson, falsely stated that Veterans Guardian had not received any cease-and-desist letter from VA OGC. *Id.*

### iii. Veterans Guardian's Third False Statement to Congress

43. On June 9, 2022, Hearing Committee staff met with Mr. Taylor, Mr. Greenblatt, and Mr. Johnson and other representatives of Veterans Guardian to discuss its inaccurate statements regarding the Letter. When again asked about Mr. Taylor's testimony, Veterans Guardian officials stated that they did not recall receiving a cease-and-desist letter from the VA OGC. *Id.*

44. Following Veterans Guardian's third false or misleading statement and/or omission, the Hearing Committee staff explicitly referenced the Letter addressed to Mr. Greenblatt. At that time, after the Hearing Committee's fourth attempt to seek the truth from Veterans Guardian's officials, Veterans Guardian finally admitted that it had received the Letter, but did not believe that the Letter constituted a cease-and-desist letter.

### iv. Once Reminded that His False Statements to Congress Carry Five Years in Prison, Mr. Taylor Supplemented his False Testimony

45. On June 27, 2022, the Chairs and Ranking Members of the Subcommittees sent a letter to Mr. Prober and advised that Mr. Taylor's testimony was inaccurate because the VA OGC categorized the Letter to Veterans Guardian as a cease-and-desist letter.

Notably, the Committee cited the June 27, 2022 letter, and reminded Mr. Taylor that it is a crime, punishable by fines and imprisonment of up to 5 years, to knowingly and willfully make a materially false, fictitious, or fraudulent statement or representation to Congress. Subsequently, Mr. Taylor supplemented his testimony to Congress.

**F.     PLAINTIFF'S FACTS**

46.     Plaintiff Jennifer Ford was honorably discharged from the United States Army on August 18, 2009.

47.     Plaintiff suffered from several service-connected injuries and secondary service-connected injuries as a result of her military service as a military police officer.

48.     Because her injuries were known and obvious, Plaintiff knew that she had to file a claim for disability benefits with the VA.

49.     Prior to contacting Veterans Guardian, Plaintiff received a 60% VA disability impairment rating as a result of her military service.   She received a monthly payment from the VA as a result of her disabilities.

**i.     Plaintiff's First Claim**

50.     In early 2022, Plaintiff believed that the PTSD she suffered from due to her time in the military caused her to suffer a complete disability at a level higher than the 60% that had previously been determined by the VA.

51.     Plaintiff went to the internet to gather information about filing a VA Disability Compensation Claim or appeal with the VA.

52.     Plaintiff's internet search took her to the Veterans Guardian website.

16

53.     After spending time reading information on Veterans Guardian's website,[11] Plaintiff used the website to contact the company directly about filing a claim with the VA for additional benefits.

54.     Thereafter, Plaintiff received a call from a representative of Veterans Guardian that explained its representation and services.  Importantly, Veterans Guardian's representative ensured Plaintiff that its VA services were legal and in full compliance with Federal Law and that it would only charge Plaintiff five (5) times any monthly VA Disability Compensation increase received by Plaintiff, each time Veterans Guardian increased Plaintiff's monthly VA Disability Compensation. After speaking with Defendant's representative, Plaintiff signed the Contract and became a client of Veterans Guardian.

55.     Once it signed Plaintiff as a client, Veterans Guardian solicited access to Plaintiff's medical records and military records to review and develop a strategy to increase her VA Disability Compensation.

56.     Next, Veterans Guardian coordinated an outside private medical opinion to assess Plaintiff's post-traumatic stress disorder ("PTSD") symptoms.

57.     A representative of Veterans Guardian's prepared Plaintiff for her PTSD private medical examination by explaining the PTSD examination and evaluation process.

58.     Once the private medical examination was complete and Plaintiff received a medical opinion, Veterans Guardian drafted and prepared Plaintiff's VA Disability

---

[11] *See* https://vetsguardian.com/.

Compensation Claim using official VA forms, including: (a) VA Application for Disability Compensation and Related Compensation Benefits Form – 21-526EZ; and (b) VA Statement in Support of Claim Form – 21-4138. Additionally, Veterans Guardian gathered the necessary attachments including Plaintiff's DD214 and private medical opinion. All of the VA forms prepared by Veterans Guardian and the necessary attachments (the "Packet") were emailed by Veterans Guardian to Plaintiff for her review. The Packet emailed was labeled "draft" as it was drafted and prepared by Veterans Guardian.

59. Once Plaintiff approved the Packet, Veterans Guardian then mailed the Packet to Plaintiff with instructions, including that Veterans Guardian: (a) marked specific locations where Plaintiff was required to sign and date the VA Disability Compensation Claim that it prepared; (b) pre-marked the Packet's envelope with the VA's mailing address that would receive the Packet; (3) pre-stamped the Packet's envelope; and (4) instructed Plaintiff to place the Packet in the mail.

60. Veterans Guardian's claim preparation continued after mailing her Packet to the VA. Specifically, Veterans Guardian instructed Plaintiff to notify its office if the VA sent correspondence that requested additional information so that Veterans Guardian could assist Plaintiff with a response and provide advice on how to respond to the VA.

61. Once Plaintiff's Packet was submitted to the VA, Veterans Guardian provided additional instructions to Plaintiff to present to the VA medical examiner and respond to the VA's questions.

62. Plaintiff thereafter received a call from the VA to schedule her VA

18

Compensation and Pension Examination ("C&P Exam").[12] A representative of Veterans Guardian prepared Plaintiff for her C&P Exam and coached her on how to present her symptoms to the VA medical examiner.

63.     Contrary to Veterans Guardian's claims that it only offers "pre-filing" and "post-filing" claims assistance, Veterans Guardian assists veterans following their submission of the Packet when it assists with C&P Exams, simulated the C&P Exam, and prepared Plaintiff and the Class members for the C&P Exam.

64.     In her First Claim in which Veterans Guardian's assisted Plaintiff, her disability rating increased.

65.     Plaintiff took no part in drafting her VA Disability Claim. Veterans Guardian and its employees are the only individuals that prepared Plaintiff's First Claim and prepared Plaintiff for her C&P examination upon filing her First Claim.

66.     Below is an email from Veterans Guardian's representative to Plaintiff in which it admits to preparing Plaintiff's First Claim:

---

[12] When a veteran files a claim for VA Disability Compensation with the VA, the VA may ask the veteran to appear at an examination as part of the VA claim process. This is known as a VA claim exam or a VA compensation and pension exam.

On Fri, Mar 25, 2022, 1:59 PM Samantha Kehoe <samantha.kehoe@vetsguardian.com> wrote:
Veteran Ford,

Attached you will find your VA claim packet for review. **The document is password protected.** The
password is the **last six digits of your Social Security Number.**

Please thoroughly look over your claim, making sure all information listed throughout is correct. **If your claim
needs corrections or revisions,** please let us know what needs to be corrected at your earliest
convenience (call or email me). **If your claim is accurate and ready,** please reply with your approval to this

1

email, and we will then physically mail a copy of the complete claim to you at your mailing address. If you or
someone you trust is not available to receive your claim by mail, **please tell us now.**

Once you've reviewed and approved your claim, we will provide you with:
1. A complete, printed copy of your claim
2. Instructions on where you'll need to add your signature and date throughout your packet
3. An addressed, stamped envelope to send your claim to the VA

You can expect your claim to be processed by the VA within 90-120 days after you mail in your claim,
although it can certainly happen sooner than that. Please check your eBenefits account regularly - VA
eBenefits accounts are updated by VA personnel, so it is not possible for us to predict when your claim
submission will be reflected. Please also check your daily postal mail, which is still  a common method of
notification by the VA. Be sure to contact us if/when you receive *any* VA correspondence so we may help
you respond to any requests for information in a timely manner, provide advice, or simply follow your claim
progress moving forward.

It's been a pleasure working with you. We wish you the best with your VA claim.

--

Respectfully,

**Samantha Kehoe**
PTSD Team at Veterans Guardian VA Claim Consulting

67. Upon clicking the link contained in the email above, Plaintiff was routed to several VA claim forms that had been fully prepared by Veterans Guardian.

68. Veterans Guardian completely prepared Plaintiff's VA Disability Compensation Claim. It selected the appropriate forms, filled out all the necessary data for Plaintiff's specific claim, printed the claim forms and supporting documents, and mailed the completed Packet in paper form to Plaintiff's home address, along with a fully addressed envelope addressed to the VA, and instructions on where to add her signature and date on the claim form. Veterans Guardian even provided a pre-addressed and stamped envelope for mailing her claim submission to the VA.

69. Veterans Guardian prepares and completes thousands of similar claim forms

20

for submission to the VA every month.

70.     Moreover, Veterans Guardian also reminded Plaintiff in no uncertain terms, "Be sure to contact us if/when you receive any VA correspondence so we may help you respond to any requests for information in a timely manner, provide advice, or simply follow your claim progress moving forward."

71.     Plaintiff ultimately received a VA Disability Compensation increase of $360.00 per month.

72.     Pursuant to the fee agreement contained in Veterans Guardian's Contract, Veterans Guardian invoiced Plaintiff for $1,800.00 ($360.00 x 5).

73.     Plaintiff paid Veterans Guardian $1,800.00 over the course of several monthly installment payments for preparing her VA Disability Compensation claim that was submitted to the VA.

74.     A VA accredited agent or attorney is not permitted to charge a fee based on increasing a veteran's monthly disability compensation. A VA accredited agent or attorney is only permitted to charge a percentage of the back pay or past due benefits capped at 33 1/3 percent, unless approved by the OGC.

75.     Plaintiff's back pay or past due benefits resulting from her first claim total roughly $350.00. As a result, the maximum a VA accredited agent or attorney could have charged Plaintiff regarding her first claim is approximately $116.55.

76.     In her first claim, Veterans Guardian charged Plaintiff over fifteen times or over 1,500% the allowable fees permitted by federal law.

21

77.     Veterans Guardian never submitted a fee agreement to the VA or the OGC. Moreover, the OGC never approved of Veterans Guardian's fees that exceeded 33 1/3%.

**ii.     Plaintiff's Second Claim**

78.     Following Plaintiff's rating increase related to her PTSD, Plaintiff believed that she had another viable disability claim related to her high blood pressure that would increase her VA Disability Compensation further.

79.     Plaintiff again reached out to Veterans Guardian and had a telephone conversation to strategize about her Second Claim, and the representative of Veterans Guardian suggested that Plaintiff file a second supplemental claim for additional benefits from the VA.   .

80.     For Plaintiff's Second Claim, Veterans Guardian focused on her high blood pressure/hypertension, scarring, tinnitus, and asthma.

81.     Again, Veterans Guardian solicited access to Plaintiff's medical records to review and develop a strategy to attempt to increase her VA Disability Compensation.

82.     Veterans Guardian thereafter fully prepared Plaintiff's Second Claim.

83.     Plaintiff never drafted her Second VA Disability Claim that achieved an increase, nor did she receive assistance from any VSO or VA-accredited representative. Veterans Guardian and its employees are the only individuals that prepared and worked on Plaintiff's second claim.

84.     A November 7, 2022 email from a Veterans Guardian's representative to Plaintiff admits to fully preparing Plaintiff's Second Claim:

22

From: **Samantha Mellon** <samantha.mellon@vetsguardian.com>
Date: Mon, Nov 7, 2022, 11:58 AM
Subject: Packet for Review
To: Jenn Ford <jenanderic1814@gmail.com>

Veteran Ford,

Attached you will find your VA claim packet for your review.

**The document is password protected.**

**The password is the last six digits of your Social Security Number.**
Please thoroughly review your claim, and make sure that your Social Security Number, home address and phone number listed throughout are correct.

If your claim is accurate and ready, **please tell us immediately.**

If corrections are needed, let us know what needs to be corrected. Once you are satisfied, we will **mail** you:

1. A complete, printed copy
2. Instructions on where to sign and date
3. A self-addressed, stamped envelope to mail your claim to the VA

If you, or someone you trust is not available to mail your claim, **please tell us now.**
**After 7 days if we do not get a response from you, your claim packet will automatically be sent to our mail team, and mailed out to you.**

Plan on your claim being processed by the VA within 90-120 days, though processing times can vary.

85.     Veterans Guardian also completely prepared Plaintiff's Second VA Disability Claim. It selected the appropriate form, filled out all the necessary data for Plaintiff's claim, printed the claim form and supporting documents, and mailed the completed package in paper form to Plaintiff's home address along with a fully addressed envelope addressed to the VA and instructions on where to add her signature and date the claim form. Veterans Guardian even provided a pre-addressed and stamped envelope for mailing her claim submission to the VA.

86.     Veterans Guardian completes thousands of similar claim forms for submission to the VA every month.

87.     Veterans Guardian also reminded Plaintiff in no uncertain terms that it would continue to assist in preparing and submitting her claim to the VA: "Be sure to contact us

23

if/when you receive any VA correspondence so we may help you respond to any requests for information in a timely manner, provide advice, or simply follow your claim progress moving forward."

88.  Ultimately, Plaintiff received a monthly VA Disability Compensation increase worth $300.00.

89.  Thereafter, Veterans Guardian invoiced Plaintiff under its Contract for $1,500.00 ($300.00 x 5) or five times her monthly VA Disability Compensation increase.

90.  Had a VA accredited agent or attorney prepared Plaintiff's second claim, their fee would have been limited to 33 1/3% of the retroactive award or back pay.

91.  The retroactive award for Plaintiff's second claim was roughly $1,620.00. In other words, the fees paid to a VA accredited agent or attorney for Plaintiff's second claim would have been roughly $539.46.

92.  Plaintiff paid Veterans Guardian $1,500.00 in one lump sum on her Second Claim.

93.  In total, Plaintiff has paid Veterans Guardian $3,401.00 with respect to her First Claim and Second Claim.

94.  Had a VA accredited agent or attorney assisted with Plaintiff's two claims, Plaintiff would have only been required to pay approximately $656.01.

95.  As a result of its unlawful fees, Plaintiff paid Veterans Guardian at least $2,744.99 more than is permitted by federal law and could have been charged by Accredited Agents.

24

96.     Veterans Guardian has employed similar excessive fees to members of the Class.

97.     Veterans Guardian collects these amounts in open violation of the restrictions and qualifications set forth in 38 C.F.R. § 14, *et seq*.

98.     Discovery will show that no individual at Veterans Guardian is licensed to practice medicine.

99.     Discovery will show that no individual at Veterans Guardian is a VA accredited agent or attorney.

## V.     CLASS ALLEGATIONS

100.    Plaintiff brings this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. The proposed class is defined as:

> UDTPA Class: All veterans who paid Veterans Guardian a fee in connection with preparing claims for VA Disability Compensation under a contract in substantially the same form as Exhibit A.

> NCDCA Class: All veterans who received an invoice from Veterans Guardian in connection with preparing claims for VA Disability Compensation under an invoice in substantially the same form as Exhibit B.

101.    Expressly excluded from the Class are: (a) any Judge presiding over this action and members of their families; (b) Defendant and any entity in which Defendant has a controlling interest, or which has a controlling interest in Defendant, and its legal representatives, assigns and successors; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

25

102.     The class period is four (4) years prior to the original filing date of this action.

103.     Plaintiff reserves the right to amend the Class definition if warranted as a result of further investigation and discovery.

**Rule 23(a) Criteria**

104.     <u>Numerosity</u>. Veterans Guardian's scheme has harmed and continues to harm veterans and their dependents. The members of the Class are so numerous that joinder of all members is impracticable. Veterans Guardian's written graphic that it emailed to Plaintiff on May 16, 2023, states that it has "a success rate of over 90%" and has "processed over 25,000 disability claims in the last two (2) years."[13] The sheer volume of its VA Disability Claim business supports a finding of numerosity.

105.     The exact number of Class members is unknown as such information is in the exclusive control of Veterans Guardian. Veterans Guardian, however, has prepared, prosecuted, and/or presented tens of thousands of VA Disability Claims on behalf of veterans disguised as *pro se* VA claims and where it charged veterans a contingent fee equivalent to five (5) times the monthly VA Disability Compensation increase that the veteran receives as a result of Veterans Guardian's representation, preparation, presentation, and/or prosecution of his/her VA Disability Claim.

106.     Due to the nature of the VA Disability Claims involved and the fact that Veterans Guardian assists veterans in all 50 states and online around the globe, Plaintiff believes the Class consists of thousands of veterans. Defendant's online ads are

---

[13] Exhibit C

geographically dispersed throughout the U.S. and internationally making joinder of all Class members impracticable.

107. <u>Commonality</u>. Common questions of law and fact affect the rights of each Class member and common relief by way of damages is sought for Plaintiff and the Class.

108. The harm that Veterans Guardian has caused is substantially uniform with respect to Class members. Common questions of law and fact that affect the Class members include, but are not limited to:

     a.    Whether Defendant is subject to the limitations of 38 U.S.C. Chapter 59 and 38 CFR § 14, *et seq.*;

     b.    Whether Defendant's business practices are in violation of 38 U.S.C. Chapter 59 and 38 C.F.R. § 14;

     c.    Whether Defendant's violations of 38 U.S.C. Chapter 59 and 38 C.F.R. § 14 are *per se* violations of the North Carolina Unfair and Deceptive Practices Act ("UDTPA");

     d.    Whether the Defendant is a debt collector as defined by the North Carolina Debt Collection Act ("NCDCA") N.C.G.S. § 75-50(3);

     e.    Whether Defendant's invoices were sent in violation of NCDCA N.C.G.S. § 75-50(2) by falsely representing the legal status, character or true nature of the debt.

     f.    Whether Defendant's violations of NCDCA are *per se* violations of the UDTPA; and

27

g. Whether members of the Class have sustained damages and, if so, the proper measure of such damages provided by N.C. Gen Stat § 75-16.

109. <u>Typicality</u>. Plaintiff's claims are typical of the claims (and defenses that will be asserted) of the Class because she is a veteran of the United States Military and her VA Disability Compensation Claim prepared, presented, and/or prosecuted by Defendant was typical of the type of assistance that Defendant provides to veterans following standardized practices, procedures, and policies. The documents involved in the transaction were standard form documents and the violations are statutory in nature. Plaintiff suffered damages of the same type and in the same manner as the Class she seeks to represent. There is nothing peculiar about Plaintiff's claims.

110. <u>Adequacy</u>. Plaintiff will fairly and adequately assert and protect the interests of the Class. Plaintiff has hired attorneys who are experienced in prosecuting class action claims and will adequately represent the interests of the class and Plaintiff has no conflict of interest that will interfere with maintenance of this class action.

**Rule 23(b) Criteria**

111. <u>Predominance and Superiority</u>. Pursuant to FED. R. CIV. P. 23(b)(3), a class action provides a fair and efficient method for the adjudication of this controversy for the following reasons:

a. The common questions of law and fact set forth herein predominate over any questions affecting only individual Class members. The statutory claims under the N.C. Gen Stat § 75-1 require a simple identification of those veterans who are covered

28

under the statute, and an act in violation of N.C. Gen Stat § 75-1.1, *et seq*.

        b.      The statutory claims under the N.C. Gen Stat § 75-50 require a simple identification of those veterans who are covered under the statute, and an act in violation of N.C. Gen Stat § 75-51(8).

        c.      Plaintiff can identify members of each class once she receives a list of all veterans that entered into a Consulting Service Agreement, similar to Exhibit A, and paid money to Veterans Guardian and/or received a standard form invoice similar to Exhibit B.

        d.      The number of veterans who paid Veterans Guardian's fees that exceed 33 1/3 percent of the increased award as governed by 38 CFR § 14.636(f)(1) is a predominant common question that will turn on the language of the contract.

        e.      There are no unusual legal or factual issues that would create manageability problems;

        f.      Prosecution of thousands of separate actions by individual members of the Class would create a risk of inconsistent and varying adjudications against Defendant and could create incompatible standards of conduct;

        g.      Adjudications with respect to individual members of the Class could, as a practical matter, be dispositive of any interest of other members not parties to such adjudications, or substantially impair their ability to protect their interests; and

        h.      The claims of the individual Class members are small in relation to the expenses of litigation, making a Class action the only procedural method of redress in

which Class members can, as a practical matter, recover.

112.    Moreover, Veterans Guardian has acted and refused to act on grounds generally applicable to the Class, thereby making declaratory relief and corresponding final injunctive relief under Rule 23(b)(2) appropriate with respect to the Class as a whole. Veterans Guardian should be enjoined from preparing, presenting, and/or prosecuting VA Disability Claims in violation of N.C. Gen Stat § 75-1.1, *et seq.*, N.C. Gen Stat § 75-50, *et seq.*, 38 U.S.C. Chapter 59, *et seq.*, and 38 CFR § 14, *et seq.*, and a declaration should be issued that Defendant disgorge its ill-gotten gains and void the invoices with any outstanding debt.

## COUNT I
### Violation of the N.C. Gen Stat § 75-1.1, *et seq.*
### (UDTPA Class)

113.    Plaintiff incorporates by reference each and every factual allegation set forth in paragraphs 1 - 112 above.

114.    Veterans Guardian's Contract states that North Carolina law applies to the agreement between the parties regarding compensation to Veterans Guardian for preparing the VA Disability Compensation claim Packet to be submitted to the VA.

115.    The North Carolina UDTPA prohibits businesses from engaging in unfair and deceptive acts or practices. The UDTPA largely mirrors the Federal Trade Commission Act and states that "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen Stat § 75-1.1.

30

116. The UDTPA provides a four-year statute of limitations.

117. The purpose of UDTPA is "to declare, and to provide civil legal means to maintain, ethical standards of dealings between persons engaged in business and between persons engaged in business and the consuming public within this State to the end that good faith and fair dealings between buyers and sellers at all level[s] of commerce be had in this State." *Bhatti v. Buckland*, 328 N.C. 240, 400 S.E.2d 440 (1991).

118. Courts have used many standards to determine whether an act or practice is "unfair," including:

(1) If the act violates industry standards

(2) Violates public policy

(3) Immoral, unethical, or unscrupulous

(4) Substantially injures consumers

(5) Inequitable assertion of the party's power or position

(6) Has the tendency to deceive

119. "Commerce" includes all business activities, however, denominated, but does not include professional services rendered by a member of a learned profession. N.C. Gen Stat § 75-1.1(b).

120. Veterans Guardian charged fees to veterans for preparing claims for disability benefits with the VA which constitutes commerce under the UDTPA as such services were rendered by unaccredited claims representatives, not a member of a learned profession.

31

121.     Veterans Guardian's business activities, at all times relevant to this Complaint, are considered "commerce" as defined in N.C. Gen Stat § 75-1.1(b).

122.     Veterans Guardian's business practices occurred almost exclusively in North Carolina and violate the UDTPA because they violated public policy, were unethical and unscrupulous, and substantially injured veterans.

123.     The UDTPA was created to provide an additional remedy apart from those less adequate remedies afforded under common law causes of action for fraud, breach of contract, or breach of warranty.

124.     North Carolina courts have held that a violation of a regulatory statute that are designed to prevent unfair or deceptive conduct can constitute a per se violation of the UDTPA.

125.     Veterans Guardian's violation of 38 U.S.C. §59, *et seq.* and/or 38 C.F.R. § 14, *et seq.*, constitutes a violation of regulations designed to prevent unfair and or deceptive conduct and therefore can act as a per se violation of N.C. Gen. Stat. 75-1.1.

126.     Moreover, North Carolina appellate courts have held that violations of regulatory statutes that are designed to protect consumers are *per se* violations of N.C.G.S. 75-1.1.

127.     Federal law established under 38 U.S.C. Chapter 59, *et seq.* and/or 38 C.F.R. § 14, *et seq.*, are regulations governing who can prepare and present claims for disability benefits to the VA and how much can be charged to the veteran in connection with such services.  Because these regulations were designed to protect veterans, Veterans Guardian's

32

business practice of routinely violating these regulations constitutes a per se violation of N.C.G.S. 75-1.1. Specifically, sections 14.626 through 14.637 of Title 38 of the Code of Federal Regulations, implement Chapter 59 of the United States Code governing the representation of claimants for veterans' benefits.

128. 38 C.F.R. 14.629 (b)(1) states: "No individual may assist claimants in the preparation, presentation, and prosecution of claims for VA benefits as an agent or attorney unless he or she has first been accredited by VA for such purpose."

129. Veterans Guardian is in violation of 38. C.F.R. 14.629(b)(1) because it admittedly prepared Plaintiff's First Claim for VA benefits without first receiving accreditation by the VA:

On Fri, Mar 25, 2022, 1:59 PM Samantha Kehoe <samantha.kehoe@vetsguardian.com> wrote:
Veteran Ford,

Attached you will find your VA claim packet for review. **The document is password protected.** The password is the **last six digits of your Social Security Number.**

Please thoroughly look over your claim, making sure all information listed throughout is correct. **If your claim needs corrections or revisions,** please let us know what needs to be corrected at your earliest convenience (call or email me). **If your claim is accurate and ready,** please reply with your approval to this

1

email, and we will then physically mail a copy of the complete claim to you at your mailing address. If you or someone you trust is not available to receive your claim by mail, **please tell us now.**

Once you've reviewed and approved your claim, we will provide you with:
1. A complete, printed copy of your claim
2. Instructions on where you'll need to add your signature and date throughout your packet
3. An addressed, stamped envelope to send your claim to the VA

You can expect your claim to be processed by the VA within 90-120 days after you mail in your claim, although it can certainly happen sooner than that. Please check your eBenefits account regularly - VA eBenefits accounts are updated by VA personnel, so it is not possible for us to predict when your claim submission will be reflected. Please also check your daily postal mail, which is still a common method of notification by the VA. Be sure to contact us if/when you receive *any* VA correspondence so we may help you respond to any requests for information in a timely manner, provide advice, or simply follow your claim progress moving forward.

It's been a pleasure working with you. We wish you the best with your VA claim.

--

Respectfully,

**Samantha Kehoe**
PTSD Team at Veterans Guardian VA Claim Consulting

33

130. Upon clicking the link contained in the email above, Plaintiff was routed to several VA claim forms that had been fully prepared by Veterans Guardian.

131. Veterans Guardian completely prepared Plaintiff's First Claim. It selected the appropriate forms, filled out all the necessary data for Plaintiff's specific claim, printed the claim forms and supporting documents, and mailed the completed Packet in paper form to Plaintiff's home address, along with a fully addressed envelope addressed to the VA, and instructions on where to add her signature and date on the claim form. Veterans Guardian even provided a pre-addressed and stamped envelope for mailing her claim submission to the VA.

132. Upon information and belief, Veterans Guardian prepares and completes thousands of claim forms for submission to the VA every month that are substantially similar to Plaintiff's First Claim.

133. Moreover, Veterans Guardian also reminded Plaintiff in no uncertain terms, "Be sure to contact us if/when you receive any VA correspondence so we may help you respond to any requests for information in a timely manner, provide advice, or simply follow your claim progress moving forward."

134. Once Plaintiff's First Claim was submitted, Veterans Guardian prepared Plaintiff for her private medical exam, C&P medical exam administered by the VA, and Veterans Guardian instructed Plaintiff to notify its office if the VA sent correspondence that requested additional information so that Veterans Guardian could assist Plaintiff with a response and provide advice on how to respond to the VA, in violation of 38. C.F.R.

34

14.629(b)(1).

135.    Plaintiff received an increase related to her First Claim worth roughly $360.00 per month.

136.    Only accredited agents and attorneys may receive a fee from claimants or appellants for their services provided in connection with representation, however, even as an unaccredited claims representative, Veterans Guardian charged and collected a fee related to Plaintiff's First Claim in violation of 38 C.F.R. § 14.636(b).

137.    Pursuant to the language contained in Veterans Guardian's Contract, Veterans Guardian emailed Plaintiff an invoice charging her $1,800.00 ($360.00 x 5) for its services in preparing Plaintiff's First Claim.

138.    Over the course of several months, Plaintiff paid Veterans Guardian $1,800.00 in several installment payments.

139.    Veterans Guardian collection of fees for services provided in connection with Plaintiff's First Claim representation violates 38 C.F.R. § 14.636(b).

140.    Agents and attorneys may charge claimants or appellants for representation provided that: after an agency of original jurisdiction has issued a decision[14] on a claim or claims or for an increase in rate of benefit, so long as the agent or attorney has complied with: (1) the power of attorney requirements of 38 C.F.R. § 14.631; and (2) the fee agreement requirements of 38 C.F.R. § 14.636(g).

141.    All agreements for the payment of any fees for services rendered in

---

[14] This means once the VA has made its initial claim decision or original claim decision.

Case 1:23-cv-00756-CCE-LPA   Document 1   Filed 09/01/23   Page 35 of 50

connection with Veteran's benefits must be in writing and signed by both the claimant or appellant and the accredited agent or attorney. To be valid and lawful, a fee agreement must: (1) name the veteran; (2) name the claimant or appellant if other than a veteran; (3) name any disinterested third-party payer and the relationship between the third-party payer and the veteran, claimant, or appellant; (4) set forth the applicable VA file number; and (5) contain the specific terms under which the amount to be paid for the services of the attorney or agent will be determined. 38 C.F.R. § 14.636(g)(1)(i-v).

142.    Within thirty (30) days of the execution of a fee agreement between a veteran and representative, the representative must send a copy of their fee agreement to either the VA or Office of General Counsel ("OGC"). 38 C.F.R. 14.636(g)(3).

143.    In connection with Plaintiff's First Claim, Veterans Guardian never complied with any of the power of attorney requirements contained in 38 C.F.R. § 14.631 nor the fee agreement requirements of 38 C.F.R. § 14.636(g). Furthermore, Veterans Guardian is not an accredited agent of the VA, has never filed any direct-pay fee agreements with the VA, nor filed a direct-pay fee agreement with the OGC for any of the VA Disability Compensation Claims that it prepared and collected a fee on Plaintiff's First Claim.

144.    Plaintiff's back pay or past due benefits resulting from her First Claim is roughly $350.00. As a result, the maximum amount that a VA accredited agent or attorney could have charged Plaintiff for the increase of her First Claim would have been capped at approximately $116.55.

145.    In her First Claim, Veterans Guardian charged Plaintiff fifteen times or over

36

1,500% the allowable fees permitted by federal regulations when Veterans Guardian charged $1,800.00 to Plaintiff.

146. In Plaintiff's First Claim, Veterans Guardian never submitted a fee agreement to the VA or the OGC. Moreover, the OGC never approved of Veterans Guardian's fees.

147. As for Plaintiff's Second Claim, Veterans Guardian is in violation of 38. C.F.R. 14.629(b)(1) because it admittedly prepared Plaintiff's Second Claim for VA benefits without first receiving accreditation by the VA:

From: **Samantha Mellon** <samantha.mellon@vetsguardian.com>
Date: Mon, Nov 7, 2022, 11:58 AM
Subject: Packet for Review
To: Jenn Ford <jenanderic1814@gmail.com>

Veteran Ford,

Attached you will find your VA claim packet for your review.

**The document is password protected.**

**The password is the last six digits of your Social Security Number.**
Please thoroughly review your claim, and make sure that your Social Security Number, home address and phone number listed throughout are correct.

If your claim is accurate and ready, **please tell us immediately.**

If corrections are needed, let us know what needs to be corrected. Once you are satisfied, we will **mail** you:

1. A complete, printed copy
2. Instructions on where to sign and date
3. A self-addressed, stamped envelope to mail your claim to the VA

If you, or someone you trust is not available to mail your claim, **please tell us now.**
**After 7 days if we do not get a response from you, your claim packet will automatically be sent to our mail team, and mailed out to you.**

Plan on your claim being processed by the VA within 90-120 days, though processing times can vary.

148. Upon clicking the link contained in the email above, Plaintiff was routed to several VA claim forms that had been fully prepared by Veterans Guardian.

149. Veterans Guardian completely prepared Plaintiff's VA Second Claim. It

37

selected the appropriate forms, filled out all the necessary data for Plaintiff's specific claim, printed the claim forms and supporting documents, and mailed the completed Packet in paper form to Plaintiff's home address, along with a fully addressed envelope addressed to the VA, and instructions on where to add her signature and date on the claim form. Veterans Guardian even provided a pre-addressed and stamped envelope for mailing her claim submission to the VA.

150.    Veterans Guardian prepares and completes thousands of similar claim forms for submission to the VA every month.

151.    Again, Veterans Guardian also reminded Plaintiff in no uncertain terms, "Be sure to contact us if/when you receive any VA correspondence so we may help you respond to any requests for information in a timely manner, provide advice, or simply follow your claim progress moving forward."

152.    Once Plaintiff's Second Claim was submitted, Veterans Guardian prepared Plaintiff for her C&P medical exam administered by the VA and Veterans Guardian instructed Plaintiff to notify its office if the VA sent correspondence that requested additional information so that Veterans Guardian could assist Plaintiff with a response and provide advice on how to respond to the VA, in violation of 38. C.F.R. 14.629(b)(1).

153.    Plaintiff received an increase related to her Second Claim. Plaintiff received a VA Disability Compensation increase worth roughly $300.00 per month.

154.    Only accredited agents and attorneys may receive a fee from claimants or appellants for their services provided in connection with representation, however, even as

38

an unaccredited representative, Veterans Guardian charged and collected a fee related to Plaintiff's Second Claim in violation of 38 C.F.R. § 14.636(b).

155.  Pursuant to the language contained in Veterans Guardian's Contract, Veterans Guardian charged Plaintiff an invoice ($300.00 x 5) for its services in preparing Plaintiff's Second Claim.

156.  For Plaintiff's Second Claim, she paid Veterans Guardian $1,500.00 in one lump sum payment.

157.  Accredited agents and attorneys may charge claimants or appellants for representation provided that: after an agency of original jurisdiction has issued a decision[15] on a claim or claims or for an increase in rate of benefit, so long as the agent or attorney has complied with: (1) the power of attorney requirements of 38 C.F.R. § 14.631; and (2) the fee agreement requirements of 38 C.F.R. § 14.636(g).

158.  All agreements for the payment of any fees for services rendered in connection with Veteran's benefits must be in writing and signed by both the claimant or appellant and the accredited agent or attorney. To be valid and lawful, a fee agreement must: (1) name the veteran; (2) name the claimant or appellant if other than a veteran; (3) name any disinterested third-party payer and the relationship between the third-party payer and the veteran, claimant, or appellant; (4) set forth the applicable VA file number; and (5) contain the specific terms under which the amount to be paid for the services of the attorney or agent will be determined. 38 C.F.R. § 14.636(g)(1)(i-v).

---

[15] This means once the VA has made its initial claim decision or original claim decision.

159. Within thirty (30) days of the execution of a fee agreement between a veteran and representative, the representative must send a copy of their fee agreement to either the VA or Office of General Counsel ("OGC"). 38 C.F.R. 14.636(g)(3).

160. In connection with Plaintiff's Second Claim, Veterans Guardian never complied with any of the power of attorney requirements contained in 38 C.F.R. § 14.631 nor the fee agreement requirements of 38 C.F.R. § 14.636(g). Furthermore, Veterans Guardian is not an accredited agent of the VA, has never filed any direct-pay fee agreements with the VA, nor filed a direct-pay fee agreement with the OGC for any of the VA Disability Compensation Claims that it prepared and collected a fee on Plaintiff's First Claim.

161. Had a VA accredited agent or attorney prepared Plaintiff's Second Claim, their fee would have been limited to 33 1/3% of the retroactive award or back pay. The retroactive award for Plaintiff's Second Claim was roughly $1,620.00. In other words, the fees paid to a VA accredited agent or attorney for Plaintiff's Second Claim would have been capped at approximately $539.46.

162. Veterans Guardian's collection of fees for services provided in connection with Plaintiff's Second Claim violates 38 C.F.R. § 14.636(b).

163. The VA also prohibits agents and attorneys from charging or being paid for services with respect to services provided before the date on which a notice of the initial claim is issued. 38 U.S.C. § 5904(c)(1).

164. Moreover, the VA makes it unlawful for any individual or entity to charge

veterans for assisting with initial claims or the recovery of future VA benefits.

165.   Upon information and belief, Veterans Guardian collects fees related to representation when it prepares claims.

166.   Pursuant to 38 C.F.R. § 14.636(f), any fee that exceeds 33 1/3 percent of any past-due VA disability benefits awarded shall be presumed to be unreasonable by the VA.

167.   Here, Congress created the robust regulations for VA claim services in 38 U.S.C. § 59, *et seq.* and 38 C.F.R. § 14, *et seq.*, to protect veterans similarly situated to Plaintiff from predators like Veterans Guardian. The North Carolina Supreme Court has held "Violations of statutes designed to protect the consuming public and violations of established public policy may constitute unfair and deceptive practices." *Stanley v. Moore,* 339 N.C. 717, 723, 454 S.E.2d 225, 228 (N.C. 1995).

168.   As detailed herein, Veterans Guardian has repeatedly and systematically violated numerous provisions of 38 U.S.C. § 59, *et seq.* and 38 C.F.R. § 14, *et seq.*In total, Plaintiff paid Veterans Guardian $3,401.00 with respect to her two claims.

169.   Had a VA accredited agent or attorney assisted with Plaintiff's two claims, Plaintiff would have only been required to pay approximately $656.01.

170.   As a result of its unlawful fees, Plaintiff paid Veterans Guardian at least $2,744.99 more than is permitted by federal regulation.

171.   Veterans Guardian has employed similar practices to charge excessive fees to members of the Class.

172.   Veterans Guardian collects these amounts in open violation of the

41

restrictions, qualifications and regulations set forth in 38 C.F.R. § 14.

173.    Therefore, Defendant's acts violated federal regulations in the following ways:

    a.  Helping claimants prepare and present their VA benefits claims while being unaccredited;

    b.  Charging fees that exceeds the rates allowed by the VA regulations for helping with such claims and/or charging fees that exceeds what is charged by VA accredited and highly vetted agents and attorneys;

    c.  Exercising a claim over VA benefits in the form of "agreed-to" fees and imposing steep penalties for the non-payment of fees;

    d.  Charging fees that it knows exceed thirty-three-and-one-third of a veteran's retroactive award;

    e.  Charging fees for claims assistance when it is unaccredited;

    f.  Receiving fees for claims assistance when it is unaccredited; and

    g.  Emailing invoices to collect debts related to claims assistance provided by its unaccredited representatives.

174.    Emailing invoices to collect debts related to claims assistance whereby Defendant charges a fee that exceeds thirty-three-and-one-third percent, late fees, or interest. Accordingly, Defendant's violation of the federal regulations enacted to protect veterans, who are part of the consuming public, meets the three-part test under the UDTPA and thereby constitutes a *per* se violation of the UDTPA.

42

175. Veterans Guardian should not be permitted to keep any portion of its fees because it failed to submit its fee agreement in accordance with 38 C.F.R. § 14.636(f).

176. Veterans Guardian should not be permitted to keep any portion of its fees because it is not accredited and the collection of a fee by an unaccredited claims representative violates 38 C.F.R. § 14.636(b).

177. Plaintiff and Class members have been harmed and suffered actual damages (as defined by the UDTPA) by paying excessive fees under their Veterans Guardian standard form Consulting Service Agreements. See Exhibit A.

178. As a direct and proximate cause of Veterans Guardian's regulatory violations, Plaintiff and the Class are entitled to actual damages and compensatory damages along with injunctive relief pursuant to section N.C. Gen Stat § 75, *et seq*.

179. Plaintiff and the Class are entitled to treble damages pursuant to N.C. Gen Stat § 75-16.

180. Plaintiff and the Class are entitled to attorneys' fees and costs pursuant to N.C. Gen Stat § 75-16.1. Plaintiff and the Class have reason to believe that Defendant is violating and will continue to violate the Federal Regulations cited herein, and thereby are entitled to a declaration from the Court that the contracts with Defendant are void and unenforceable and any other concomitant equitable relief.

## COUNT II
### Violations of the North Carolina Debt Collection Act
### N.C. Gen Stat § 75-50, *et seq.*
### (NCDCA Class)

181. Plaintiff incorporates by reference each and every factual allegation set forth

43

in paragraphs 1 - 112 above.

182.    The North Carolina Debt Collection Act ("NCDCA") and the UDTPA are interrelated, and the NCDCA is essentially an extension of the UDTPA to debt collection practices. *See* Batten v. Panatte, LLC (In re Batten), No. 18-00256-5-DMW (Bankr. E.D.N.C. Feb. 22, 2019).

183.    Veterans Guardian is a debt collector as defined by the NCDCA, N.C.G.S. § 75.50(3).

184.    NCDCA applies to any person engaged in debt collection from a consumer, which includes a creditor collecting its own accounts. N.C.G.S. § 75-50(3).

185.    Plaintiff and the Class are consumers as defined by the NCDCA, N.C.G.S. § 75-50(1).

186.    Veterans Guardian attempted to collect a debt from Plaintiff when it emailed her two form invoices whereby it sought payment for an alleged debt from Plaintiff on her First Claim and her Second Claim.

187.    Upon information and belief, Veterans Guardian emailed other similarly situated veterans nearly identical form invoices whereby it attempted to collect substantially similar debts arising from unlawful and prohibited practices.

188.    As such, the Veterans Guardian's form invoices sent to Plaintiff and the Class seek to collect a "debt" within the meaning of N.C.G.S. § 75-50(2).

189.    "The collection letters need not have caused each class member a personal, factual injury based on his or her subjective reaction to it, but only an informational injury

44

based on alleged misrepresentations and misleading information contained in the letters, in violation of the statute." McMillan v. Blue Ridge Companies, Inc., 866 S.E.2d 700, 707, 379 N.C. 488, 497, 2021 -NCSC- 160, ¶ 21 (N.C., 2021)

190.    "[W]hen a statute creates a cause of action independent from a personal, factual, injury, 'the relevant questions are only whether the plaintiff has shown a relevant statute confers a cause of action and whether the plaintiff satisfies the requirements to bring a claim under the statute.' The NCDCA is one such statute." McMillan v. Blue Ridge Companies, Inc., 866 S.E.2d 700, 709, 379 N.C. 488, 500, 2021 -NCSC- 160, ¶ 34 (N.C., 2021)(internal citations omitted).

191.    The NCDCA prohibits any person collecting a debt from making deceptive or false representations about the debt being collected as follows:

> 75-54.  Deceptive representation.
>
> No debt collector shall collect or attempt to collect a debt or obtain information concerning a consumer by any fraudulent, deceptive or misleading representation. Such representations include, but are not limited to, the following:
> …
>          (4)        Falsely representing the character, extent, or amount of a debt against a consumer…
>
>          (7)        Falsely representing the status or true nature of the services rendered by the debt collector or his business.

192.    Veterans Guardian admits that it is not accredited. Exhibit A. The VA only permits accredited attorneys or agents to charge for assistance with VA Disability Claims. 38 C.F.R. § 14.636(b).

193.    Veterans Guardian knew that only accredited agents and attorneys may charge a fee to veterans for such services as provided in 38 C.F.R. § 14.636(b), and that even accredited agents may only charge a maximum of one-and-one-third percent of any back pay award pursuant to 38 C.F.R. § 14.636(f).

194.    By sending Collection Letters seeking payment for claim services that are prohibited by Chapter 38 CFR § 14 et seq and by charging amounts that exceed the limited amounts that can be charged for such services, by those accredited agents, Veterans Guardian falsely represented the legal status, character or "true nature" of the debt.  In truth, the debt is completely prohibited by Chapter 38.

195.    On Plaintiff's First Claim, Veterans Guardian charged Plaintiff $1,800.00 ($360.00 x 5), even though federal law capped fees on Plaintiff's First Claim at approximately $116.55.

196.    On Plaintiff's Second Claim, Veterans Guardian charged Plaintiff $1,500.00 ($300.00 x 5), even though federal law capped fees on Plaintiff's Second Claim at approximately $539.46.

197.    In total, Veterans Guardian charged Plaintiff $3,401.00 with respect to her two claims, even though it knew that federal law prohibited any fees higher than $656.01.

198.    To collect its unlawful fees, Veterans Guardian's emailed debt collection invoices to Plaintiff that did not disclose the unlawful nature of the agreement or the underlying debt stemming therefrom.  See Exhibit B.

199.    Upon information and belief, Veterans Guardian entered into thousands of

46

illegal standard form Consulting Service Agreement contracts with veterans across the United States similar to Exhibit A. Once a veteran receives an increase from the VA and is awarded additional monthly benefits, Veterans Guardian emails illegal standard form invoices, similar to Exhibit B.

200.    Any debts that Veterans Guardian collected under its standard form illegal Consulting Service Agreement and standard form invoices should be disgorged. Any outstanding debts related to any standard form illegal Consulting Service Agreement should be void.

201.    Defendant had actual knowledge that its fees are not authorized by federal law or North Carolina law, and therefore in charging the illegal fees Veterans Guardian knowingly violated N.C.G.S. § 75-55 by claiming and attempting to enforce a debt which was not legitimate and not lawfully due and owing.

202.    As a direct and proximate result of Defendant's NCDCA violations, Plaintiff and the Class have been harmed in the amount of fees collected and are entitled to actual damages, statutory damages of not less than $500 but no more than $4,000 for each violation, declaratory and injunctive relief, and attorney's fees and costs pursuant to N.C.G.S. § 75-56(a)-(d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter an Order:

Case 1:23-cv-00756-CCE-LPA   Document 1   Filed 09/01/23   Page 47 of 50

a.  Certifying this action as a class action as provided by Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as Class Representative, and appointing the undersigned attorneys and their firms as Class Counsel;

b.  That this Court enter judgment in favor of Plaintiff and the Class for Defendant's *per se* violations of N.C. Gen Stat § 75-1.1, *et seq.*;

c.  That this Court award actual damages sustained by Plaintiff and the Class in an amount to be proved at trial;

d.  That this Court award treble damages as required by 75-1.1, *et seq.*, for the harm caused by Defendant;

e.  That this Court enter judgment in favor of Plaintiff and the Class for Defendant's violations of N.C. Gen Stat § 75-50, *et seq.*;

f.  That this Court order the Defendant to pay civil penalties to Plaintiff and the Class worth not less than five hundred dollars ($500.00) nor greater than four thousand dollars ($4,000.00) for each violation N.C.G.S. § 75-56(b);

g.  That this Court assess punitive damages against the Defendant in accordance with N.C.G.S. § 75-56(c).

h.  That this Court order Defendant to disgorge profits received by Defendant from sales and revenue of any kind as a result of the actions complained of by Plaintiff and the Class;

i.  That this Court order that any outstanding debts still owed by the Class under Defendant's Contract are void.

48

j.      Awarding Plaintiff, and all those similarly situated, reasonable attorneys' fees and costs incurred in this action pursuant to N.C. Gen Stat § 75-16.1, *et seq.*

k.      Enjoin Defendant from further violations of 38 U.S.C. § 59, *et seq.* and 38 CFR 14, *et seq.*;

l.      Awarding Plaintiff, and all those similarly situated, any pre-judgment and post-judgment interest as may be allowed under the law; and

m.      Awarding such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all issues so triable.

Dated: September 1, 2023             **Varnell & Warwick, P.A.**

                              By:    /s/ Jeff Osterwise
                                     Jeff Osterwise; NC Bar No.: 39272
                                     Shanon J. Carson*
                                     **Berger Montague PC**
                                     1818 Market Street
                                     Philadelphia, PA 191013
                                     Telephone: (215) 875-4656
                                     Facsimile: (215) 875-4604
                                     *josterwise@bm.net*
                                     *scarson@bm.net*
                                     *rraghavan@bm.net*

                                     Janet R. Varnell; FBN: 0071072*
                                     Brian W. Warwick; FBN: 0605573*
                                     Christopher J. Brochu; FBN: 1013897*
                                     400 N Ashley Drive, Suite 1900
                                     Tampa, FL 33602
                                     Telephone: (352) 753-8600

49

Facsimile: (352) 504-3301
*jvarnell@vandwlaw.com*
*bwarwick@vandwlaw.com*
*c.brochu@brochulaw.com*
*ckoerner@vandwlaw.com*

*Attorneys for Plaintiff and the proposed Class*

*\*applications for pro hac vice forthcoming*