# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### GREENSBORO DIVISION

| | |
|---|---|
| **JENNIFER FORD, ERIC BEARD, and BRIAN OTTERS,**[1] individually and on behalf of all others similarly situated**,** | |
| Plaintiffs, | **Case No. 1:23-cv-756-CCE-LPA** |
| v. | **CLASS ACTION** |
| **VETERANS GUARDIAN VA CLAIM CONSULTING, LLC,** | **JURY TRIAL DEMAND** |
| Defendant. | |

## CONSOLIDATED CLASS ACTION COMPLAINT

Plaintiffs Jennifer Ford ("Ford"), Eric Beard ("Beard"), and Brian Otters ("Otters") (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, allege the following based on personal knowledge, as to themselves, and on the investigation of their undersigned counsel, as to all other matters, and bring this Consolidated Class Action Complaint against Defendant Veterans Guardian VA Claim Consulting, LLC ("Defendant" or "Veterans Guardian").

### I. NATURE OF THE ACTION

1.   This case is about illegal fees charged to disabled United States Military

---

[1] After further investigation, undersigned counsel determined that the Class would be adequately represented by Plaintiffs Ford, Beard, and Otters.

veterans by an unaccredited North Carolina-based company, Veterans Guardian. The fees are extracted from veterans' disability compensation benefits paid through the United States Department of Veterans Affairs (the "VA"). Despite its name, Veterans Guardian in fact preys on disabled veterans by unfairly and deceptively taking tens of millions of dollars of their disability benefits in violation of federal law. In doing so, Veterans Guardian has committed a *per se* violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA") and violated the North Carolina Debt Collection Act ("NCDCA").

2.     VA Disability Compensation provides a monthly tax-free payment to veterans who became sick or injured while serving in the military and to veterans whose service made an existing condition worse.[2]

3.     For VA Disability Compensation, the VA rates veterans' disabilities on a scale from 0% to 100% in 10% increments (*e.g.*, 10%, 20%, 30%).[3]

4.     VA Disability Compensation can be increased to compensate for dependents such as a spouse, parent, or children.[4] Depending on the circumstances, VA Disability Compensation can exceed $4,000 per month.

5.     To obtain VA Disability Compensation, veterans must file a claim with the VA. There are many Veteran Service Organizations ("VSOs") who assist veterans in filing their disability claims, *without charge*. Some of the most well-known VSOs include The

---

[2] *See* https://www.va.gov/disability/
[3] *See* https://www.benefits.va.gov/compensation/rates-index.asp#:~:text=VA%20rates%20disability%20from%200,disability%20percentage%20for%20multiple%20disabilities
[4] *See* https://www.va.gov/view-change-dependents/

American Legion, Veterans of Foreign Wars, Disabled American Veterans, among many other reputable organizations made up of VA accredited claims representatives.

6.     Each of these organizations were stakeholders in the implementation of the Veterans Appeals Improvement and Modernization Act of 2017 which helped to dramatically reform and simplify the processes and procedures involved in obtaining benefits or an increase in benefits.[5] Once a veteran receives an initial claim rating, they may continue with their VSO or, alternatively, may use a for-profit VA accredited agent or attorney. Like attorneys representing clients before the bar of a given state, Congress empowered the VA to regulate any and all individuals and entities assisting veterans with preparing, presenting, and/or prosecuting claims for VA Disability Compensation benefits.

7.     38 C.F.R. § 14.629 (b)(1) plainly states that "[n]o individual may assist claimants in the preparation, presentation, and prosecution of claims for VA benefits as an agent or attorney **unless** he or she has first been accredited by VA for such purpose."

8.     More importantly, VA accredited agents and attorneys may only charge claimants for representation provided **after** the VA has issued an **initial** decision on the claim or claims, and the agent or attorney has complied with the power of attorney requirements in § 14.631 and the fee agreement requirements in paragraph (g) of this section. 38 C.F.R. § 14.636(c)(1)(i).

9.     Despite these clear prohibitions that agents must be accredited and may not charge for initial claims preparation, Veterans Guardian, an unaccredited organization with

---

[5] https://news.va.gov/press-room/vas-appeals-modernization-act-takes-effect-today-new-law-streamlines-departments-current-claims-and-appeals-process-for-veterans/

unaccredited employees, routinely assists in the preparation, presentation, and prosecution of initial and non-initial disability claims *and* then charges veterans for these services. Defendant charges the veterans a contingency fee of five times the amount of any monthly VA Disability Compensation. This amount obviously exceeds the zero-charge prohibition set by the VA.

10. Veterans Guardian's uniform contract, also known as the Consulting Service Agreement ("Contract"), asserts that its services and fees are "in compliance with Chapter 59, United States Code and Title 38, Code of Federal Regulations § 14." Copies of Plaintiffs' Contracts with Defendant are attached hereto as Exhibit A.

11. There is no provision in Chapter 38 or Chapter 59 of the United States Code that allows any third-party, including Veterans Guardian, to prepare and present initial claims for submission to the VA and to be compensated for doing so.

12. All fees collected by Defendant for initial claims are unlawful as a matter of law as they stem from conduct strictly prohibited by federal law.

13. There is also no provision in Chapter 38 or Chapter 59 of the United States Code that allows for any unaccredited third-party, including Veterans Guardian, to charge its client for preparing, presenting and prosecuting non-initial VA claims.

14. Thus, Defendant routinely violates federal regulations in four ways: (1) being unaccredited, it charges fees to assist veterans in connection with non-initial claims for VA disability compensation; (2) it charges fees to assist veterans in connection with initial claims for VA disability compensation; (3) it does not comply with the power of attorney requirements established by the VA; and (4) it does not comply with the fee agreement

4

requirements established by the VA.

15.     Plaintiffs seek to represent all similarly situated veterans who paid Veterans Guardian a fee in connection with Veterans Guardian's unlawful Contract for any assistance with preparing, presenting, and/or prosecuting initial claims or non-initial claims for VA Disability Compensation.

## II.  JURISDICTION AND VENUE

16.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because there are at least 100 members in the proposed Class defined below, the combined claims of the proposed Class members exceed $5,000,000, exclusive of interest and costs, and as discovery will show, more than two-thirds of the proposed Class members are citizens of a state other than Defendant's state of citizenship, North Carolina.

17.     Alternatively, this Court has federal question jurisdiction over this action pursuant to 28. U.S.C. § 1331 as the foundation for the claims made arise under the Constitution, laws, or treaties of the United States, specifically Chapter 59, United States Code and Title 38, Code of Federal Regulations § 14 which prohibit non-accredited agents from aiding in the creation and/or submission of disability claims to the VA.

18.     This Court possesses personal jurisdiction because Veterans Guardian deliberately and regularly conducts business, marketing, claim distributing, promoting VA claims assistance and appeals, and/or collections, in North Carolina, and has its principal place of business in Pinehurst, North Carolina. The illegal fees at issue are issued, invoiced, processed, and collected from the State of North Carolina. Veterans Guardian has obtained

5

the benefits of the laws of North Carolina and profited handsomely from North Carolina commerce.

19.     The Defendant's Contract with Plaintiffs and the Class includes a Choice of Law and Venue provision stating: "This agreement is entered into and shall be governed by the laws of the State of North Carolina and said states courts shall have exclusive jurisdiction to adjudicate any dispute arising out of or relating to this agreement. …"

20.     Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because Veterans Guardian is a limited liability company subject to personal jurisdiction in this District and does business in this District. Additionally, venue is proper because a substantial portion of the acts, events, and/or unlawful activity giving rise to the claims asserted occurred in this District.

### III.  PARTIES

21.     Plaintiff Jennifer Ford is a United States Army Veteran and former Staff Sergeant who received an honorable discharge after her time in the military. Ms. Ford resides in Kilgore, Texas and is a Texas citizen.

22.     Plaintiff Eric Beard is a United States Army Veteran and former Specialist who received an honorable discharge after his time in the military. Mr. Beard resides in Sandusky, Erie County, Ohio and is an Ohio citizen.

23.     Plaintiff Brian Otters is a United States Navy Veteran and a former Gunner's Mate who received an honorable discharge after his time in the military. Mr. Otters resides in Southaven, Mississippi and is a Mississippi citizen.

24.     Defendant Veterans Guardian VA Claim Consulting, LLC is a North

6

Carolina Limited Liability Company with its principal place of business in Pinehurst, North Carolina. Membership in Veterans Guardian is as follows: (a) Member Scott Greenblatt is a natural person and resident of Pinehurst North Carolina, and a citizen of North Carolina; and (b) Member William Taylor is a natural person and resident of Pinehurst North Carolina, and a citizen of North Carolina. Accordingly, upon information and belief, all members of Defendant's limited liability company are residents and citizens of North Carolina.

25. Veterans Guardian is headquartered and has its principal place of business at 75 Trotter Hills Circle, Pinehurst, North Carolina 28374. Upon information and belief, Veterans Guardian's employees are employed and conduct the following business at its headquarters, without limitation: prepare VA Disability Compensation claims, receive clients' inbound calls, manage its website, discuss VA Disability Compensation claims with veterans, request medical records, request military records, review medical records and military records, place telephone calls to veterans to prepare veterans for private medical examination, place telephone calls to veterans to prepare veterans for the VA's C&P examination, email draft copies of completed VA Disability Compensation claims to veterans, mail hard copies of VA Disability Compensation claims to veterans, provide instructions on how to execute a VA Disability Compensation claim packet and the necessary attachments, place telephone calls to veterans to explain how to submit intent to file, send invoices to veterans to collect a debt, receive payments from veterans as a result of Defendant's debt collection activities, and other related activities.

26. Defendant prepares, presents, and/or prosecutes VA Disability

Compensations Initial Claims and Non-Initial Claims and Appeals in North Carolina. Defendant operates a brick-and-mortar location in Pinehurst, North Carolina. Upon information and belief, Defendant solicits and targets veterans from all 50 states and territories, and owns and operates the website: https://vetsguardian.com/.

## IV. FACTS

**A.    The History of VA Disability Compensation Benefits**

27.    The United States Department of Veterans Affairs ("VA") is organized into three administrations: (a) Veterans Benefits Administration ("VBA"); (b) Veterans Health Administration ("VHA"); and (c) National Cemetery Administration ("NCA"). The VBA provides a variety of disability compensation, pension, education, and more to veterans.[6] VBA is the administration responsible for approving and awarding VA Disability Compensation.

28.    The United States recognizes the effects of military service on veterans that result in disabilities that are service connected and secondary service connected, diseases, or injuries incurred or aggravated during active military service.[7] The VA's disability program provides monthly VA Disability Compensation payments to veterans who suffered injuries during their military service or secondary to their military service.

29.    In 2022, nearly 3.9 million veterans received monthly disability

---

[6] *See*
https://www.benefits.va.gov/benefits/about.asp#:~:text=Protects%20the%20benefits%20paid%20to,%2C%20Veterans%2C%20and%20their%20families
[7] *See* https://helpdesk.vetsfirst.org/index.php?pg=kb.page&id=1785

compensation payments for partial or complete disabilities.[8]

**B.      Federal Law Contains Strict Guidelines Governing the Challenged Conduct**

30.     Sections 14.626 through 14.637 of Title 38 of the Code of Federal Regulations, implement Chapter 59 of the United States Code governing the representation of claimants for veterans' benefits. There are very clear and strict dictates under this law including:

- Anyone assisting "in the preparation, presentation, and prosecution of claims for VA benefits" must be accredited by VA for that purpose. 38 C.F.R. § 14.629 (b)(1).

- Only accredited agents and attorneys may receive a fee from claimants or appellants for their services. 38 C.F.R. § 14.636(b).

- Fees charged by accredited agents and attorneys after an initial decision must comply with power of attorney requirements of 38 C.F.R. § 14.631 and the fee agreement requirements of 38 C.F.R. § 14.636(g).

- All agreements for fees for services must be in writing and signed by both the claimant or appellant and the accredited agent or attorney. Specifically, those agreements must contain: (1) name of the veteran; (2) name of the claimant or appellant, if other than a veteran; (3) name of any disinterested third-party payer and the relationship between the third-party payer and the veteran, claimant, or appellant; (4) the applicable VA file number; and (5) the specific terms under

---

[8] *See* https://www.census.gov/newsroom/press-releases/2021/veterans-report.html

which the amount to be paid for the services of the attorney or agent will be determined. 38 C.F.R. § 14.636(g)(1)(i-v).

31.     A copy of those signed written agreements must then be sent to either the VA or Office of General Counsel ("OGC") within 30 days. 38 C.F.R. § 14.636(g)(3).

32.     No money may ever be charged or paid before a notice of the initial claim is issued. 38 U.S.C. § 5904(c)(1).

33.     Fees exceeding 33 1/3 percent of past-due VA disability benefits awarded are presumed unreasonable. 38 C.F.R. § 14.636(f)

34.     It is unlawful to charge veterans for assisting with initial claims or non-initial claims paid from future VA disability benefits.

35.     Upon information and belief, Veterans Guardian is not an accredited agent of the VA, nor are any of its employees. Veterans Guardian has never filed any direct-pay fee agreements with the VA, nor filed a direct-pay fee agreement with the OGC for VA Disability Compensation Claims that it prepares and collects a fee from U.S. veterans. Veterans Guardian also charges fees for initial claims and for amounts that do not comply with the VA's strict limitations set forth above, in violation of 38 U.S.C. § 5904(c)(1).

**C.     *Per Se* Violation of the UDTPA by Defendant Veterans Guardian**

36.     Veterans Guardian's form Contracts falsely represent to its clients that it offers only pre-filing and post-filing consulting services in order "to assist clients in making decisions on the filing of VA benefit claims."

37.     Particularly, Veterans Guardian enumerates the following services to fall within the scope of its "pre-filing" consulting services:

10

b.    Conduct a full review of all pertinent documents related to the client's current VA benefit status as applicable to the individual client including the client's DD214, VA Rating Decision Letter(s), VA Rating Breakdown Letter(s) and any other correspondence with the VA to understand the status of your current VA benefit status.

c.    Conduct a full review of all pertinent military medical records from your time in service and current civilian medical records to determine all possible medical conditions that could qualify for service connection and a VA disability rating.

d.    Conduct research of current medical opinions to support medical condition claims and service connection.

e.    Conduct independent rating evaluations based on a knowledge of current VA regulations and statutes.

f.    Based on a synthesis of these assessments, research and knowledge identify medical conditions that are likely to qualify for service connection and a VA disability rating and develop an individual claim strategy to guide the client if they choose to submit a VA disability claim.

g.    Provide in depth online assessments for the client to complete to capture relevant information on the client's current medical condition to support development of additional medical evidence and supporting documents.

h.    Based on the Individual VA claim strategy, assist the client in further development of medical evidence to ensure that each individual medical condition has the medical evidence necessary to meet the VA regulatory and statutory requirements for a service connected disability rating.

        i.    Assist the client in obtaining independent medical opinions and ensure they provide the information necessary for a service connected disability rating.

11

> ii. Assist the client in development of Lay Statements in support of each individual condition claim.

*See* Exhibit A, Clause 2(a)(2).

38.     Further, Veterans Guardian defines "post-filing" consulting services as "service[s] that occur[] once the VA has made a final decisions on any claim and or appeal and is no longer active and the client is no longer a "claimant" as defined in 38 CFR § 14.627(h) and 38 CFR § 14.627(i)" and enumerates the following services to fall within the scope of its "post-filing" consulting services:

> c. Veterans Guardian will conduct a review of the VA decision letter and any other pertinent correspondence from the VA and provide an updated assessment of your new VA Benefit Status.
>
> d. Veterans Guardian will provide a recommendation as to eligibility for any additional claims and future actions with regard to VA benefits. If Veterans Guardian identifies possible additional claims and actions the client has the options to restart the Veterans Guardian process prior to making any decisions to pursue additional action and resume a status as a "claimant".
>
> e. After the client has received a service connected disability rating from the VA (based on Veterans Guardian assistance), Veterans Guardian will continue to provide advice and assessments of any action from the VA to help protect your rating from being incorrectly lowered for the lifetime of the client at NO ADDITIONAL CHARGE.

*See* Exhibit A, Clause 2(a)(3).

39.     However, in the list of services above, Veterans Guardian mischaracterizes several services to be "pre-filing" consulting and "post-filing" consulting services when in fact they are services that essentially prepare claims for veterans. Veterans Guardian also

12

omits to list several services it performs that directly indicates that it prepares claims for veterans, including drafting claims on behalf of veterans, which is prohibited under the law as discussed below.

40.     Further, notably, Veterans Guardian does not charge any money for its initial consultation call in which it advises veterans of their claims strategy, but charges a fee only if it is able to get a rating increase for the veterans as a result of its claims preparation service that it deceptively calls "pre-filing" and "post-filing" consulting services.

41.     Accordingly, by failing to first receive accreditation from the VA prior to assisting veterans in the preparation and presentation of their veterans' benefits claims and charging exorbitant fees that are contingent upon the success of veterans' claims, Defendant routinely violates federal regulations; and by violating regulations that were designed to protect veterans, Veterans Guardian has committed a *per se* violation of the unfair and deceptive trade practice law in North Carolina, N.C. Gen. Stat. § 75–1.1.

42.     Contrary to the specific prohibitions against unaccredited agents preparing VA Disability Compensation Claims, the Contract states that its services and fees are "in accordance with Chapter 59, Title 38, United States Code and Title 38, Code of Federal Regulations § 14." This is a false statement. Veterans Guardian and its employees are unaccredited agents and are therefore strictly prohibited, by federal law, from assisting in preparing, presenting, and/or prosecuting disability claims to the VA. Even though the Contract informs clients that Veterans Guardian is unaccredited, it takes advantage of veterans with its superior position of knowledge and sophistication. It deceptively characterizes its services as "pre-filing" and "post-filing" consulting services, making it

13

appear to its clients as if they were permissible under the law, when in fact those services are the precise kind that are prohibited under federal law.

43.     The purpose of the regulations *viz.* 38 U.S.C. Chapter 59 and 38 C.F.R. § 14 is to protect veterans from exploitation by the unlawful business practices as challenged here. For example, the purpose of enacting the law and regulations set forth above was to ensure that "claimants for Department of Veterans Affairs (VA) benefits have responsible, qualified representation in the preparation, presentation, and prosecution of claims for veterans' benefits." See 38 C.F.R. § 14.626.

44.     Veterans Guardian's unfair business practices have caused many veterans to hire Veterans Guardian believing it to be a legitimate provider of lawful VA claim services, when in fact the Contracts are unlawful due to the fact that Veterans Guardian is not accredited by the VA; Veterans Guardian's services are not permissible under the regulations; no person (accredited or unaccredited) is permitted to charge any fees on initial claims; no person (accredited or unaccredited) is permitted to charge fees that will be paid from future VA disability benefits; no unaccredited person is permitted to charge any fees on non-initial claims; and Veterans Guardian's claim over VA benefits in the form of "agreed-to" fees and the penalties imposed for the non-payment of fees are unlawful under the regulations. Thus, by violating regulations that were enacted by Congress to protect veterans from becoming victims of unlawful, unscrupulous, and unfair business practices, Veterans Guardian violates the UDTPA, § 75-1.1. Its unlawful and unfair business practices have proximately caused Plaintiffs damages in the form of unlawful payments made from their future monthly benefit payments.

14

**D.** **Investigations into Veterans Guardian and Other "*Claims Sharks*" in the Press**

45.     In the last few years, Veterans Guardian's practice of illegally preying on veterans rob them of their disability benefits has come under significant scrutiny by the media, veterans' advocacy groups and the VA itself.

46.     On April 1, 2022, WBTV a local television station Charlotte, North Carolina, ran a news segment warning veterans against Veterans Guardian after conducting a private investigation into its services. The news segment included interviews with veterans who had used their services and found that Veterans Guardian "asked veterans for their personal login credentials and submit[ted] claims in their name." WBTV also reported that it had seen an email from Veterans Guardian in which it coached a client on how to ask for documents from the VA and the client told WBTV that Veterans Guardian had warned him specifically not to mention to the VA that he was working with Veterans Guardian. Below is a snapshot from the news segment:[9]

---

[9] *See* https://www.wbtv.com/2022/04/01/pack-vultures-american-legion-warns-veterans-about-nc-company/

15

# 'A pack of vultures.' American Legion warns veterans about NC Company

Veterans Guardian previously the subject of WBTV investigation

To move along with the process, we need some additional information to continue developing your individual claim strategy. Once we receive your information, we will complete the assessment and get back to you quickly with an individual strategy to maximize your VA disability compensation!
?????
**Please provide the following documents to** matthew.brawn@vetsguardian.com **or by Fax to** (910) 493-3988.

1) DD214 - Certificate of Release or Discharge from Active Duty

2) VA Rating Decision Letter - If you have previously filed a claim the VA would have mailed you a letter with an explanation of their decision. If you do not have your Decision Letter, you can obtain this via the VA hotline.

Call the VA at 1-800-827-1000 - Request to speak to a representative and ask for the following "Please fax me my Rating Decision Letter to (910) 493-3988"
(Please have them send it in YOUR name on the cover letter, not Veterans Guardian)

**If you have a Rated Disability with the VA please also provide the following:**

3) VA Disability Rating Breakdown Letter - To obtain this letter please call the VA at 1-800-827-1000.

Request to s... **WBTV INVESTIGATES** ...ng B... 6:15 | 70°
with the lis... **AMERICAN LEGION WARNS VETERANS ABOUT NC COMPANY** ... 3 WBTV
(Please have... **CHARGING FOR HELP GETTING BENEFITS** ...ans Guardian) ON YOUR SIDE

1:45↑ ...u can contact me by respondi... 12:38 ...

47.     WBTV also reported that the American Legion was concerned with Veterans Guardian's services and fees, calling it a "a pack of vultures" and a "predatory claims company."

48.     On April 27, 2022, the United States House of Representatives, Committee on Veteran's Affairs, held an investigative hearing on the practices of unaccredited claims consultants. At this conference, several veterans' advocates such as the American Legion, National Organization of Veterans' Advocates ("NOVA") and Veteran of Foreign Wars ("VFW") testified on the predatory practices of unaccredited agencies such as Veterans Guardian. For example, the VFW, referred to non-accredited consulting groups as "Claim Sharks," and called out a few predatory practices employed by these companies such as "guaranteeing increases in benefits" and "promising no-cost consultations."

49.     More recently, CBS News and the Texas Tribune also brought to light the

16

predatory nature of unaccredited claims consultants such as Veterans Guardian.[10]

**E.    Veterans Guardian Submitted False or Misleading Statements to Congress**

      **i.    Veterans Guardian's First False Statement to Congress**

50.    On April 27, 2022, the House Committee on Veterans' Affairs Subcommittees on Disability Assistance and Memorial Affairs and Oversight and Investigations conducted an open session and joint oversight hearing entitled "At What Cost? – Ensuring Quality Representation in the Veteran Benefit Claims Process" (the "Hearing").

51.    Among the witnesses testifying was William Taylor ("Mr. Taylor"), co-founder and Chief Operating Officer of Veterans Guardian. When questioned during the hearing, Mr. Taylor testified under oath that "Veterans Guardian has not received a cease-and-desist letter from the VA."[11] The Hearing Committee later determined that the Letter sent by the VA OGC staff attorney was a cease-and-desist letter.

      **ii.    Veterans Guardian's Second False Statement to Congress**

52.    On May 9, 2022, Hearing Committee staff emailed Brian Johnson ("Mr. Johnson"), Veterans Guardian's Vice President of Government and Public Affairs seeking to confirm Mr. Taylor's testimony that Veterans Guardian "has not received a cease-and-

---

[10] *See* CBS News, "Some private companies charge hefty fees to help veterans with disability claims," May 11,2023 at https://www.cbsnews.com/news/veterans-disability-claims-companies-charge-fees/ (last visited on August 3, 2023); Texas Tribune, "As veteran disability claims soar, unaccredited coaches profit off frustration with VA system," July 5, 2023 at https://www.texastribune.org/2023/07/05/veterans-disability-benefits-brian-reese-va-claims-insider/ (last visited on August 3, 2023).
[11] *Id.*

desist letter from the VA." That same day, Veterans Guardian's through Mr. Johnson, falsely stated that Veterans Guardian had not received any cease-and-desist letter from VA OGC. *Id.*

### iii. Veterans Guardian's Third False Statement to Congress

53. On June 9, 2022, Hearing Committee staff met with Mr. Taylor, Mr. Greenblatt, Mr. Johnson and other representatives of Veterans Guardian to discuss its inaccurate statements regarding the cease and desist letter from the VA. When again asked about Mr. Taylor's testimony, Veterans Guardian officials stated that they did not recall receiving a cease-and-desist letter from the VA OGC. *Id.*

54. Following Veterans Guardian's third false or misleading statement and/or omission, the Hearing Committee staff explicitly referenced the Letter addressed to Mr. Greenblatt. At that time, after the Hearing Committee's fourth attempt to seek the truth from Veterans Guardian's officials, Veterans Guardian finally admitted that it had received the Letter, but did not believe that the Letter constituted a cease-and-desist letter.

### iv. Once Reminded that His False Statements to Congress Carry Five Years in Prison, Mr. Taylor Supplemented his False Testimony

55. On June 27, 2022, the Chairs and Ranking Members of the Subcommittees sent a letter to Mr. Prober and advised that Mr. Taylor's testimony was inaccurate because the VA OGC categorized the Letter to Veterans Guardian as a cease-and-desist letter. Notably, the Committee cited the June 27, 2022 letter, and reminded Mr. Taylor that it is a crime, punishable by fines and imprisonment of up to 5 years, to knowingly and willfully make a materially false, fictitious, or fraudulent statement or representation to Congress.

18

Subsequently, Mr. Taylor supplemented his testimony to Congress admitting to receipt of the letter from the VA.

56.     Despite the cease and desist letter from the VA, Veteran's Guardian continues to thwart Federal law to the detriment of Plaintiffs and the Class.

## F.     PLAINTIFF JENNIFER FORD'S FACTS

57.     Plaintiff Jennifer Ford was honorably discharged from the United States Army on August 18, 2009.

58.     Ford suffered from several service-connected injuries and secondary service-connected injuries as a result of her military service as a military police officer.

59.     Because her injuries were known and obvious, Ford knew that she had to file a claim for disability benefits with the VA.

60.     Prior to contacting Veterans Guardian, Ford received a 60% VA disability impairment rating as a result of her military service.   She received a monthly payment from the VA as a result of her disabilities.

### i.     Ford's First Claim

61.     In early 2022, Ford believed that the PTSD she suffered from due to her time in the military caused her to suffer a complete disability at a level higher than the 60% that had previously been determined by the VA.

62.     Ford went to the internet to gather information about filing a VA Disability Compensation Claim or appeal with the VA.

63.     Ford's internet search took her to the Veterans Guardian website.

64.     After spending time reading information on Veterans Guardian's website,[12] Ford used the website to contact the company directly about filing a claim with the VA for additional benefits.

65.     Thereafter, Ford received a call from a representative of Veterans Guardian that explained its representation and services.  Importantly, Veterans Guardian's representative assured Ford that its VA services were legal and in full compliance with federal law and that it would only charge Ford five (5) times any monthly VA Disability Compensation increase received by Ford, each time Veterans Guardian increased Ford's monthly VA Disability Compensation. After speaking with Defendant's representative, Ford signed the Contract and became a client of Veterans Guardian.

66.     Once it signed Ford as a client, Veterans Guardian solicited access to Ford's medical records and military records to review and develop a strategy to increase her VA Disability Compensation.

67.     Next, Veterans Guardian coordinated an outside private medical exam to assess Ford's post-traumatic stress disorder ("PTSD") symptoms.

68.     A representative of Veterans Guardian's prepared Ford for her PTSD private medical examination by explaining the PTSD examination and evaluation process.

69.     Once the private medical examination was complete and Ford received a medical opinion, Veterans Guardian drafted and prepared Ford's VA Disability Compensation Claim using official VA forms, including: (a) VA Application for Disability

---

[12] *See* https://vetsguardian.com/.

Compensation and Related Compensation Benefits Form – 21-526EZ; and (b) VA Statement in Support of Claim Form – 21-4138. Additionally, Veterans Guardian gathered the necessary attachments including Ford's DD214 and private medical opinion. All of the VA forms prepared by Veterans Guardian and the necessary attachments (the "Packet") were emailed by Veterans Guardian to Ford for her review. The Packet emailed was labeled "draft" as it was drafted and prepared by Veterans Guardian.

70.    Once Ford approved the Packet, Veterans Guardian then mailed the Packet to Ford with instructions, including that Veterans Guardian: (a) marked specific locations where Ford was required to sign and date the VA Disability Compensation Claim that it prepared; (b) pre-marked the Packet's envelope with the VA's mailing address that would receive the Packet; (3) pre-stamped the Packet's envelope; and (4) instructed Ford to place the Packet in the mail.

71.    Veterans Guardian's claim preparation continued even after mailing her Packet to the VA. Specifically, Veterans Guardian instructed Ford to notify its office if the VA sent correspondence that requested additional information so that Veterans Guardian could assist Ford with a response and provide advice on how to respond to the VA.

72.    Once Ford's Packet was submitted to the VA, Veterans Guardian provided additional instructions to Ford to present to the VA medical examiner and respond to the VA's questions.

73.    Ford thereafter received a call from the VA to schedule her VA

21

Compensation and Pension Examination ("C&P Exam").[13] A representative of Veterans Guardian prepared Ford for her C&P Exam and coached her on how to present her symptoms to the VA medical examiner.

74.     Contrary to Veterans Guardian's claims that it only offers "pre-filing" and "post-filing" claims assistance, Veterans Guardian assists veterans following their submission of the Packet when it assists with C&P Exams, simulated the C&P Exam, and prepared Ford and the Class members for the C&P Exam.

75.     In her First Claim in which Veterans Guardian's assisted Ford, her disability rating increased.

76.     Ford took no part in drafting her VA Disability Claim. Veterans Guardian and its employees are the only individuals that prepared Ford's First Claim and prepared Ford for her C&P examination upon filing her First Claim.

77.     Below is an email from Veterans Guardian's representative to Ford in which it admits to preparing Ford's First Claim:

---

[13] When a veteran files a claim for VA Disability Compensation with the VA, the VA may ask the veteran to appear at an examination as part of the VA claim process. This is known as a VA claim exam or a VA compensation and pension exam.

On Fri, Mar 25, 2022, 1:59 PM Samantha Kehoe <samantha.kehoe@vetsguardian.com> wrote:
Veteran Ford,

Attached you will find your VA claim packet for review. **The document is password protected.** The password is the **last six digits of your Social Security Number.**

Please thoroughly look over your claim, making sure all information listed throughout is correct. **If your claim needs corrections or revisions,** please let us know what needs to be corrected at your earliest convenience (call or email me). **If your claim is accurate and ready,** please reply with your approval to this

---
1
---

email, and we will then physically mail a copy of the complete claim to you at your mailing address. If you or someone you trust is not available to receive your claim by mail, **please tell us now.**

Once you've reviewed and approved your claim, we will provide you with:
1. A complete, printed copy of your claim
2. Instructions on where you'll need to add your signature and date throughout your packet
3. An addressed, stamped envelope to send your claim to the VA

You can expect your claim to be processed by the VA within 90-120 days after you mail in your claim, although it can certainly happen sooner than that. Please check your eBenefits account regularly – VA eBenefits accounts are updated by VA personnel, so it is not possible for us to predict when your claim submission will be reflected. Please also check your daily postal mail, which is still a common method of notification by the VA. Be sure to contact us if/when you receive *any* VA correspondence so we may help you respond to any requests for information in a timely manner, provide advice, or simply follow your claim progress moving forward.

It's been a pleasure working with you. We wish you the best with your VA claim.

--

Respectfully,

**Samantha Kehoe**
PTSD Team at Veterans Guardian VA Claim Consulting

78.     Upon clicking the link contained in the email above, Ford was routed to several VA claim forms that had been fully prepared by Veterans Guardian.

79.     Veterans Guardian completely prepared Ford's VA Disability Compensation Claim. It selected the appropriate forms, filled out all the necessary data for Ford's specific claim, printed the claim forms and supporting documents, and mailed the completed Packet in paper form to Ford's home address, along with a fully addressed envelope addressed to the VA, and instructions on where to add her signature and date on the claim form. Veterans Guardian even provided a pre-addressed and stamped envelope for mailing her claim submission to the VA.

80.     Veterans Guardian prepares and completes thousands of similar claim forms for submission to the VA every month.

23

81.    Moreover, Veterans Guardian also reminded Ford in no uncertain terms, "Be sure to contact us if/when you receive any VA correspondence so we may help you respond to any requests for information in a timely manner, provide advice, or simply follow your claim progress moving forward."

82.    Ford ultimately received a VA Disability Compensation increase of $360.00 per month.

83.    Pursuant to the fee agreement contained in Veterans Guardian's Contract, Veterans Guardian invoiced Ford for $1,880.00 ($377.92 x 5)[14].

84.    Ford paid Veterans Guardian $1,880.00 over the course of several monthly installment payments for preparing her VA Disability Compensation claim that was submitted to the VA.

85.    A VA accredited agent or attorney is not permitted to charge a fee based on increasing a veteran's monthly disability compensation. A VA accredited agent or attorney is only permitted to charge a percentage of the back pay or past due benefits capped at 33 1/3 percent, unless approved by the OGC.

86.    Ford's back pay or past due benefits resulting from her first claim total roughly $350.00. As a result, the maximum a VA accredited agent or attorney could have charged Ford regarding her first claim is approximately $116.55.

87.    In her first claim, Veterans Guardian charged Ford over fifteen times or over

---

[14] The Defendant's claim preparation fee calculations are rounded down to the nearest $10 increment.

24

1,500% the allowable fees permitted by federal law.

88.     Veterans Guardian never submitted a fee agreement to the VA or the OGC. Moreover, the OGC never approved of Veterans Guardian's fees that exceeded 33 1/3%.

**ii.     Ford's Second Claim**

89.     Following Ford's rating increase related to her PTSD, Ford believed that she had another viable disability claim related to her high blood pressure that would increase her VA Disability Compensation further.

90.     Ford again reached out to Veterans Guardian and had a telephone conversation to strategize about her Second Claim, and the representative of Veterans Guardian suggested that Ford file a second supplemental claim for additional benefits from the VA. .

91.     For Ford's Second Claim, Veterans Guardian focused on her high blood pressure/hypertension, scarring, tinnitus, and asthma.

92.     Again, Veterans Guardian solicited access to Ford's medical records to review and develop a strategy to attempt to increase her VA Disability Compensation.

93.     Veterans Guardian thereafter fully prepared Ford's Second Claim.

94.     Ford never drafted her Second VA Disability Claim that achieved an increase, nor did she receive assistance from any VSO or VA-accredited representative. Veterans Guardian and its employees are the only individuals that prepared and worked on Ford's Second Claim.

95.     A November 7, 2022 email from a Veterans Guardian's representative to Ford admits to fully preparing Ford's Second Claim:

25

From: **Samantha Mellon** <samantha.mellon@vetsguardian.com>
Date: Mon, Nov 7, 2022, 11:58 AM
Subject: Packet for Review
To: Jenn Ford <jenanderic1814@gmail.com>

Veteran Ford,

Attached you will find your VA claim packet for your review.

**The document is password protected.**

**The password is the last six digits of your Social Security Number.**
Please thoroughly review your claim, and make sure that your Social Security Number, home address and phone number listed throughout are correct.

If your claim is accurate and ready, **please tell us immediately.**

If corrections are needed, let us know what needs to be corrected. Once you are satisfied, we will **mail** you:

1. A complete, printed copy
2. Instructions on where to sign and date
3. A self-addressed, stamped envelope to mail your claim to the VA

If you, or someone you trust is not available to mail your claim, **please tell us now.**
**After 7 days if we do not get a response from you, your claim packet will automatically be sent to our mail team, and mailed out to you.**

Plan on your claim being processed by the VA within 90-120 days, though processing times can vary.

96.     Veterans Guardian also completely prepared Ford's Second VA Disability Claim. It selected the appropriate form, filled out all the necessary data for Ford's claim, printed the claim form and supporting documents, and mailed the completed package in paper form to Ford's home address along with a fully addressed envelope addressed to the VA and instructions on where to add her signature and date the claim form. Veterans Guardian even provided a pre-addressed and stamped envelope for mailing her claim submission to the VA.

97.     Veterans Guardian completes thousands of similar claim forms for submission to the VA every month.

98.     Veterans Guardian also reminded Ford in no uncertain terms that it would continue to assist in preparing and submitting her claim to the VA: "Be sure to contact us

26

if/when you receive any VA correspondence so we may help you respond to any requests for information in a timely manner, provide advice, or simply follow your claim progress moving forward."

99.    Ultimately, Ford received a monthly VA Disability Compensation increase worth $300.00.

100.    Thereafter, Veterans Guardian invoiced Ford under its Contract for $1,690.00 ($338.00 x 5, rounded down to the nearest $10 increment) or five times her monthly VA Disability Compensation increase.

101.    Had a VA accredited agent or attorney prepared Ford's second claim, their fee would have been limited to 33 1/3% of the retroactive award or back pay.

102.    The retroactive award for Ford's second claim was roughly $1,620.00. In other words, the fees paid to a VA accredited agent or attorney for Ford's second claim would have been roughly $539.46.

103.    Ford paid Veterans Guardian $1,521.00 in one lump sum on her Second Claim.

104.    In total, Ford has paid Veterans Guardian $3,401.00 with respect to her First Claim and Second Claim.

105.    Had a VA accredited agent or attorney assisted with Ford's two claims, Ford would have only been required to pay approximately $656.01.

106.    As a result of its unlawful fees, Ford paid Veterans Guardian at least $2,744.99 more than is permitted by federal law and could have been charged by Accredited Agents.

27

107. Veterans Guardian has employed similar excessive fees to members of the Class.

108. Veterans Guardian collects these amounts in open violation of the restrictions and qualifications set forth in 38 C.F.R. § 14, *et seq*.

109. Discovery will show that no individual at Veterans Guardian is licensed to practice medicine.

110. Discovery will show that no individual at Veterans Guardian is a VA accredited agent or attorney.

## G. PLAINTIFF ERIC BEARD'S FACTS

111. Plaintiff Eric Beard was honorably discharged from the United States Army on or around August 2009.

112. Beard suffered from several service-connected injuries and secondary service-connected injuries as a result of his military service as an intelligence analyst.

113. Because his injuries were known and obvious, Beard knew that he had to file a claim for disability benefits with the VA.

114. Prior to contacting Veterans Guardian, Beard had never filed any claim for VA disability compensation. His sole purpose in contacting Veterans Guardian was to obtain assistance filing his initial VA disability claim.

### i. Beard's Initial Claim

115. In or around August 2022, Beard believed that the PTSD he suffered from was due to his time in the military and caused him to suffer a complete disability.

116. Beard went to the internet to gather information about filing an initial VA

28

Disability Compensation Claim with the VA.

117.    Beard's internet search took him to the Veterans Guardian website.

118.    After spending time reading information on Veterans Guardian's website,[15] Beard used the website to contact the company directly about filing an initial claim with the VA.

119.    Thereafter, Beard received a call from a representative of Veterans Guardian that explained its representation and services.    Importantly, Veterans Guardian's representative assured Beard that its VA services were legal and in full compliance with Federal Law.  If he received any benefits from his initial claim filing with the VA, Veterans Guardian would charge Beard five (5) times any monthly VA Disability Compensation payment received by Beard.  Veterans Guardian's representative also sent Beard an email stating that their fees would be contingent on an increase. Particularly, the email stated:

> "To take the risk factor out of it for you. We don't charge any UPFRONT fees. And if we can't get you an increase, you owe us absolutely nothing… The fees always come from the increased amount, not your pocket. You will never be in a state of losing money... If you receive back pay from the VA, that is 100% YOUR money. We don't touch that or calculate any fees from YOUR back pay."

120.    After corresponding with Defendant's representative and believing its services to be legal and legitimate Beard signed the Contract and became a client of Veterans Guardian.

121.    Once it signed Beard as a client, Veterans Guardian solicited access to

---

[15] *See* https://vetsguardian.com/.

Beard's medical records and military records to review and develop a strategy to prepare Beard's initial claim for VA Disability Compensation.

122. Next, Veterans Guardian coordinated with an outside private medical provider to assess Beard's post-traumatic stress disorder ("PTSD") symptoms.

123. A representative of Veterans Guardian prepared Beard for his PTSD private medical examination by explaining the PTSD examination and evaluation process.

124. Once the private medical examination was complete and Beard received a medical opinion, Veterans Guardian completely drafted and prepared Beard's VA Disability Compensation Claim using official VA forms, including: (a) VA Application for Disability Compensation and Related Compensation Benefits Form – 21-526EZ; and (b) VA Statement in Support of Claim Form – 21-4138. Additionally, Veterans Guardian gathered the necessary attachments including Beard's DD214 (Certificate of Release or Discharge from Active Duty) and private medical opinion. All of the VA forms prepared by Veterans Guardian and the necessary attachments (the "Packet") were emailed by Veterans Guardian to Beard for his review. The Packet emailed was labeled "draft" as it was drafted and prepared by Veterans Guardian for ultimate submission to the VA.

125. Once Beard approved the Claim Packet via email, Veterans Guardian then sent by US Mail the physical documents in the Packet to Beard with instructions, including that Veterans Guardian: (a) marked specific locations where Beard was required to sign and date the initial VA Disability Compensation Claim that it prepared; (b) pre-marked the Packet's envelope with the VA's mailing address that would receive the Packet; (c) pre-stamped the Packet's envelope with postage paid for by Defendant; and (d) instructed

30

Beard to place the signed Packet in the US mail for delivery to the VA .

126.   Veterans Guardian's claim preparation of Beard's initial claim continued even after mailing Beard's Packet to the VA. Specifically, Veterans Guardian instructed Beard to notify its office if the VA sent correspondence that requested additional information so that Veterans Guardian could assist Beard with a response and provide advice on how to respond to the VA.

127.   Once Beard's Packet was submitted to the VA, Veterans Guardian provided additional instructions to Beard to present to the VA medical examiner and respond to the VA's questions.

128.   Beard thereafter received a call from the VA to schedule his VA Compensation and Pension Examination ("C&P Exam").[16] A representative of Veterans Guardian prepared Beard for his C&P Exam and coached him on how to present his symptoms to the VA medical examiner.

129.   Contrary to Veterans Guardian's statement that it only offers "pre-filing" and "post-filing" claims assistance, Veterans Guardian assisted veterans following their submission of the Packet when it assisted with C&P Exams, simulated the C&P Exam, and prepared Beard and the Class members for the C&P Exam.

130.   Following the submission of the Initial Claim drafted and prepared by Veterans Guardian; and its preparation of Beard for his medical exams, Beard received a

---

[16] When a veteran files a claim for VA Disability Compensation with the VA, the VA may ask the veteran to appear at an examination as part of the VA claim process. This is known as a VA claim exam or a VA compensation and pension exam.

100% disability rating for PTSD.

131. Beard took no part in drafting his initial VA Disability Claim. Veterans Guardian and its employees are the only individuals that prepared Beard's Initial Claim and prepared Beard for his private medical examination and C&P examination upon filing his Initial Claim.

132. Below is an email from Veterans Guardian's representative to Beard in which it admits to preparing Beard's Initial Claim:

Re: Veteran Beard: Your VA Claim Is Ready For Review

From: Eric Beard (ericm.beard@yahoo.com)

To:     samantha.kehoe@vetsguardian.com

Date:  Thursday, September 22, 2022 at 04:46 PM EDT

Good Afternoon,

There is one mistake that I can see. I did do about one year in the reserves rough estimate would have been 09/01/2012 to 08/31/2013. This was just a period of time I was missing the service and wanted to complete my last year of my 8 year obligation doing something, It was a terrible experience. That's located at 21A.

Eric Beard

Sent from Yahoo Mail for iPhone

> On Thursday, September 22, 2022, 2:58 PM, Samantha Kehoe
> <samantha.kehoe@vetsguardian.com> wrote:
>
> Veteran Beard,
>
> Attached you will find your VA claim packet for review. **The document is password protected.** The password is the **last six digits of your Social Security Number.**
>
> Please thoroughly look over your claim, making sure all information listed throughout is correct. **If your claim needs corrections or revisions,** please let us know what needs to be corrected at your earliest convenience (call or email me). **If your claim is accurate and ready,** please reply with your approval to this email, and we will then physically mail a copy of the complete claim to you at your mailing address. If you or someone you trust is not available to receive your claim by mail, **please tell us now.**
>
> Once you've reviewed and approved your claim, we will provide you with:
> 1. A complete, printed copy of your claim
> 2. Instructions on where you'll need to add your signature and date throughout your packet
> 3. An addressed, stamped envelope to send your claim to the VA
>
> You can expect your claim to be processed by the VA within 90-120 days after you mail in your claim, although it can certainly happen sooner than that. Please check your eBenefits account regularly - VA eBenefits accounts are updated by VA personnel, so it is not possible for us to predict when your claim submission will be reflected. Please also check your daily postal mail, which is still a common method of notification by the VA. Be sure to contact us if/when you receive *any* VA correspondence so we may help you respond to any requests for information in a timely manner, provide advice, or simply follow your claim progress moving forward.

about:blank                                                                                    1/2

133.    Beard ultimately received a VA Disability Compensation of $4,278.80 per month.

134.    Pursuant to the fee agreement contained in Veterans Guardian's Contract, Veterans Guardian invoiced Beard for $21,360 ($4,278.80 x 5, rounded down to the nearest $10 increment).

33

135. Beard paid Veterans Guardian over $19,000 through monthly installment payments for preparing his initial VA Disability Compensation claim and is still obligated under the unlawful Contract.

136. Had Beard known that charging for preparation of an initial claim was unlawful or that the services for any assistance on initial claims were free if provided by an accredited attorney, accredited agent, or a VSO, he would not have entered into the agreement.

137. Upon information and belief, Veterans Guardian prepares and completes hundreds of similar initial claim forms for submission to the VA each year.

## H. PLAINTIFF BRIAN OTTERS' FACTS

138. Plaintiff Brian Otters was honorably discharged from the United States Navy on or around January 2011.

139. Otters suffered from several service-connected injuries and secondary service-connected injuries as a result of his military service as an Gunner's Mate.

### i. Otters' Claim

140. In or around February 2023, Otters believed that he was entitled to additional VA disability benefits due to his time in the military.

141. Otters found out about Veterans Guardian through his brother, Joshua Otters.

142. After spending time reading information on Veterans Guardian's website,[17] Otters contacted the Defendant directly about filing a non-initial claim with the VA.

---

[17] *See* https://vetsguardian.com/.

34

143.    Thereafter, Otters received a call from a representative of Veterans Guardian that explained its representation and services.   Importantly, Veterans Guardian's representative assured Otters that its VA services were legal and in full compliance with Federal Law. If Otters received any benefits from his non-initial claim filing with the VA, Veterans Guardian would charge Otters five (5) times any monthly VA Disability Compensation payment received by him.

144.    After corresponding with Defendant's representative and believing its services to be legal and legitimate, Otters signed the Contract and became a client of Veterans Guardian.

145.    Once it signed Otters as a client, Veterans Guardian solicited access to Otters' medical records and military records to review and develop a strategy to prepare Otters' non-initial claim for VA Disability Compensation.

146.    Next, Veterans Guardian coordinated with an outside private medical provider to assess Otters' military stressors and military related injuries.

147.    A representative of Veterans Guardian prepared Otters for his private medical examination by explaining the examination and evaluation process.

148.    Once the private medical examination was complete and Otters received a medical opinion, Veterans Guardian completely drafted and prepared Otters' VA Disability Compensation Claim using official VA forms. Additionally, Veterans Guardian gathered the necessary attachments including Otters' DD214 (Certificate of Release or Discharge from Active Duty) and private medical opinion. All of the VA forms prepared by Veterans Guardian and the necessary attachments (the "Packet") were mailed by

35

Veterans Guardian to Otters for his review. The mailed Packet was drafted and prepared by Veterans Guardian for ultimate submission to the VA.

149. Moreover, Veterans Guardian sent the Packet to Otters by US Mail with instructions, including that Veterans Guardian: (a) marked specific locations where Otters was required to sign and date the non-initial VA Disability Compensation Claim that it prepared; (b) pre-marked the Packet's envelope with the VA's mailing address that would receive the Packet; (c) pre-stamped the Packet's envelope with postage paid for by Defendant; and (d) instructed Otters to place the signed Packet in the US Mail for delivery to the VA.

150. Veterans Guardian's claim preparation of Otters' non-initial claim continued even after Otters' Packet was mailed to the VA. Specifically, Veterans Guardian instructed Otters to notify its office if the VA sent correspondence that requested additional information so that Veterans Guardian could assist Otters with a response and provide advice on how to respond to the VA.

151. Once Otters' Packet was submitted to the VA, Veterans Guardian provided additional instructions to Otters to present to the VA medical examiner and respond to the VA's questions.

152. Otters thereafter received a call from the VA to schedule his VA Compensation and Pension Examination ("C&P Exam").[18] A representative of Veterans

---

[18] When a veteran files a claim for VA Disability Compensation with the VA, the VA may ask the veteran to appear at an examination as part of the VA claim process. This is known as a VA claim exam or a VA compensation and pension exam.

Guardian prepared Otters for his C&P Exam.

153.    Contrary to Veterans Guardian's statement that it only offers "pre-filing" and "post-filing" claims assistance, after Veterans Guardian drafted and prepared his non-initial VA Disability Compensation Claim, and following the submission of Otters' Packet when it assisted with him C&P Exam preparation.

154.    Following the submission of the Non-Initial Claim drafted and prepared by Veterans Guardian; and its preparation of Otters for his medical exams, Otters received a 90% disability rating.

155.    Otters took no part in drafting his non-initial VA Disability Claim. Veterans Guardian and its employees are the only individuals that prepared Otters' Non-Initial Claim and prepared Otters for his private medical examination, and prepared Otters for his C&P examination upon the filing of his Non-Initial Claim.

156.    Below is an email from Veterans Guardian's representative to Otters in which it admits to preparing Otter's Non-Initial Claim:

From: ashley.bennett@vetsguardian.com <ashley.bennett@vetsguardian.com>
Date: Mon, Apr 17, 2023 at 2:02 PM
Subject: Veterans Guardian VA Packet Update
To: <brianotters@gmail.com>

To view this email as a web page, go here.



Dear Veteran Otters,

We are currently in the process of mailing your VA claim packet for your careful review. Once reviewed, please make sure to sign all the notated areas. For your convenience, we have included an envelope and pre-paid mailing label for you to send your completed packet to the VA.

If you have any questions or issues, please contact our team.

Respectfully,

Very respectfully, Ashley Bennett Documentation Team | Veterans Spouse Direct: 919-867-2697 Office: 833-577-8387 Email: ashley.bennett@vetsguardian.com www.vetsguardian.com Address: 75 Trotter Hills Circle, Pinehurst, NC 28374 CONFIDENTIALITY NOTICE: The information contained in this e-mail and any accompanying documents may be confidential, may be proprietary or otherwise legally exempt from disclosure. If you are not the intended recipient, you are hereby notified that you are not authorized to read, print, use, copy or disseminate this message, or any part thereof, or any of its attachments. If you have received this message in error, please delete this message and any attachments from your system and devices without reading the content and notify the sender of the inadvertent transmission. Veterans Guardian VA Claim Consulting thanks you for your cooperation.

    157.   Otters ultimately received a VA Disability Compensation of $599.33 per month as a result of the VA claim prepared by Veterans Guardian.

158. Pursuant to the fee agreement contained in Veterans Guardian's Contract, Veterans Guardian invoiced Otters for $2,990 ($599.33 x 5).

159. Otters paid Veterans Guardian $2,990 through monthly installment payments for preparing his non-initial VA Disability Compensation Claim.

160. Had Otters known that charging for preparation of a Non-Initial Claim was unlawful or that the services for any assistance on non-initial claims must be provided by an accredited attorney, accredited agent, or a VSO, he would not have entered into Veterans Guardian's Contract.

161. Upon information and belief, Veterans Guardian prepares thousands of similar initial claim and non-initial VA Disability Compensation Claim forms for submission to the VA each year.

162. By preparing, presenting, and/or prosecuting initial and non-initial VA Disability Compensation Claims for veterans like Plaintiffs and the Class, Defendant acted as an agent.

## V. CLASS ALLEGATIONS

163. Plaintiffs bring this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. The proposed Classes (the "Class") are defined as:

> UDTPA Initial Claim Class: All veterans who paid Veterans Guardian in connection with an initial claim for VA Disability Compensation under a contract in substantially the same form as Exhibit A.

> UDTPA Non-Initial Claim Class: All veterans who paid Veterans Guardian a fee in connection with preparing claims for VA Disability Compensation under a contract in substantially the same form as Exhibit A.

39

> NCDCA Class: All veterans who received an invoice from Veterans Guardian in connection with preparing claims for VA Disability Compensation under an invoice in substantially the same form as Exhibit B.

164.    Expressly excluded from the Class are: (a) any Judge presiding over this action and members of their families; (b) Defendant and any entity in which Defendant has a controlling interest, or which has a controlling interest in Defendant, and its legal representatives, assigns and successors; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

165.    The Class Period is four (4) years prior to the original filing date of this action through the date of the Court's order certifying the class.

166.    Plaintiffs reserve the right to amend the Class definitions if warranted as a result of further investigation and discovery.

### Rule 23(a) Criteria

167.    <u>Numerosity</u>. Veterans Guardian's scheme has harmed and continues to harm veterans and their dependents. The members of the Class are so numerous that joinder of all members is impracticable. Veterans Guardian's written graphic that it emailed to Plaintiffs on May 16, 2023, states that it has "a success rate of over 90%" and has "processed over 25,000 disability claims in the last two (2) years."[19] The sheer volume of its VA Disability Claim business supports a finding of numerosity.

168.    The exact number of Class members is unknown as such information is in the exclusive control of Veterans Guardian. Veterans Guardian, however, has prepared,

---

[19] Exhibit C.

40

prosecuted, and/or presented tens of thousands of VA Disability Claims on behalf of veterans disguised as *pro se* VA claims and where it charged veterans a contingent fee equivalent to five (5) times the monthly VA Disability Compensation increase that the veteran receives as a result of Veterans Guardian's preparation, presentation, and/or prosecution of his/her VA Disability Claim.

169.    Due to the nature of the VA Disability Claims involved and the fact that Veterans Guardian assists veterans in all 50 states and online around the globe, Plaintiffs reasonably believe the Class easily consists of thousands of veterans. Defendant's online ads are geographically dispersed throughout the U.S. and internationally making joinder of all Class members impracticable.

170.    <u>Commonality</u>. Common questions of law and fact affect the rights of each Class member and common relief by way of damages is sought for Plaintiffs and the Class.

171.    The harm that Veterans Guardian has caused is substantially uniform with respect to Class members. Common questions of law and fact that affect the Class members include, but are not limited to:

a.      Whether Defendant is subject to the limitations of 38 U.S.C. Chapter 59 and 38 CFR § 14, *et seq.*;

b.      Whether Defendant's business practices are in violation of 38 U.S.C. Chapter 59 and 38 C.F.R. § 14;

c.      Whether Defendant's business practice of charging veterans for preparing, presenting, and/or prosecuting initial VA disability claims violates 38 C.F.R. § 14.636 (c)(1)(i);

41

d. Whether Defendant's violations of 38 U.S.C. Chapter 59 and 38 C.F.R. § 14 are *per se* violations of the North Carolina Unfair and Deceptive Practices Act ("UDTPA");

e. Whether the Defendant is a debt collector as defined by the NCDCA (N.C.G.S. § 75-50(3));

f. Whether Defendant's invoices were sent in violation of NCDCA (N.C.G.S. § 75-50(2));

g. Whether Defendant's violations of NCDCA are *per se* violations of the UDTPA; and

h. Whether members of the Class have sustained damages and, if so, the proper measure of such damages provided by N.C. Gen Stat § 75-16 and NCDCA § 75-56.

172. <u>Typicality</u>. Plaintiffs' claims are typical of the claims (and defenses that will be asserted) of the Class because they are veterans of the United States Military and their VA disability compensation claims that were prepared, presented, and/or prosecuted by Defendant were typical of the type of assistance that Defendant provides to veterans following uniform practices, procedures, and policies. The documents involved in the transaction were standard form documents and the violations are statutory and regulatory in nature. Plaintiffs suffered damages of the same type and in the same manner as the Class they seek to represent. There is nothing unique about Plaintiffs' claims.

173. <u>Adequacy</u>. Plaintiffs will fairly and adequately assert and protect the interests of the Class. Plaintiffs have hired attorneys who are experienced in prosecuting class action

42

claims and will adequately represent the interests of the Class and Plaintiffs have no conflict of interest that will interfere with maintenance of this class action.

## Rule 23(b) Criteria

174.  <u>Predominance and Superiority</u>. Pursuant to FED. R. CIV. P. 23(b)(3), a class action provides a fair and efficient method for the adjudication of this controversy for the following reasons:

a.  The common questions of law and fact set forth herein predominate over any questions affecting only individual Class members.

b.  The statutory claims under the N.C. Gen. Stat. § 75-1 require a simple identification of those veterans who are covered under the statute, and an act in violation of N.C. Gen. Stat. § 75-1.1, *et seq.*

c.  The statutory claims under the N.C. Gen. Stat. § 75-50 require a simple identification of those veterans who are covered under the statute, and an act in violation of N.C. Gen. Stat. § 75-51(8).

d.  Plaintiffs can easily identify members of each Class using Defendant's business records, once Defendant produces a list of all veterans that entered into a Contract, similar to Exhibit A, and paid money to Veterans Guardian and/or received a standard form invoice similar to Exhibit B.

e.  The veterans who paid Veterans Guardian's fees related to preparation, presentation, and prosecution of initial disability claims in violation of 38 C.F.R. § 14.636(c)(1)(i) is a predominant common question that will turn on the language of the contract.

43

f.     The number of veterans who paid Veterans Guardian's fees that exceed 33

1/3 percent of the increased award as governed by 38 CFR § 14.636(f)(1) is a predominant

common question that will turn on the language of the contract.

g.     There are no unusual legal or factual issues that would create manageability

problems;

h.     Prosecution of thousands of separate actions by individual members of the

Class would create a risk of inconsistent and varying adjudications against Defendant and

could create incompatible standards of conduct;

i.     Adjudications with respect to individual members of the Class could, as a

practical matter, be dispositive of any interest of other members not parties to such

adjudications, or substantially impair their ability to protect their interests; and

j.     The claims of the individual Class members are small in relation to the

expenses of litigation, making a Class action the only procedural method of redress in

which Class members can, as a practical matter, recover.

175.    Moreover, Veterans Guardian has acted and refused to act on grounds

generally applicable to the Class, thereby making declaratory relief and corresponding final

injunctive relief under Rule 23(b)(2) appropriate with respect to the Class as a whole.

Veterans Guardian should be enjoined from preparing, presenting, and/or prosecuting VA

Disability Claims in violation of N.C. Gen Stat § 75-1.1, *et seq.*, N.C. Gen Stat § 75-50, *et

seq.*, 38 U.S.C. Chapter 59, *et seq.*, and 38 CFR § 14, *et seq.*, and a declaration should be

issued that Defendant disgorge its ill-gotten gains and void the invoices with any

outstanding debt.

44

## COUNT I
## Violation of the N.C. Gen Stat § 75-1.1, *et seq.*
## (UDTPA Initial Claim Class)

176. Plaintiffs incorporate by reference each and every factual allegation set forth in paragraphs 1-175 above.

177. Veterans Guardian's Contract states that North Carolina law applies to the agreement between the parties regarding compensation to Veterans Guardian for preparing the VA Disability Compensation claim packet to be submitted to the VA.

178. The North Carolina UDTPA prohibits businesses from engaging in unfair and deceptive acts or practices. The UDTPA largely mirrors the Federal Trade Commission Act and states that "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat § 75-1.1.

179. The UDTPA provides a four-year statute of limitations.

180. The purpose of the UDTPA is "to declare, and to provide civil legal means to maintain, ethical standards of dealings between persons engaged in business and between persons engaged in business and the consuming public within this State to the end that good faith and fair dealings between buyers and sellers at all level[s] of commerce be had in this State." *Bhatti v. Buckland*, 328 N.C. 240, 400 S.E.2d 440 (1991).

181. Courts have used many standards to determine whether an act or practice is "unfair," including:

(1) If the act violates industry standards

(2) Violates public policy

(3)     Immoral, unethical, or unscrupulous

(4)     Substantially injures consumers

(5)     Inequitable assertion of the party's power or position

(6)     Has the tendency to deceive

182.    "Commerce" includes all business activities, however, denominated, but does not include professional services rendered by a member of a learned profession. N.C. Gen. Stat § 75-1.1(b).

183.    Veterans Guardian charged fees to veterans for preparing initial claims for disability benefits with the VA which constitutes "commerce" under the UDTPA, as such services were rendered by unaccredited claims representatives, not a member of a learned profession.

184.    Veterans Guardian's business activities, at all times relevant to this Complaint, are considered "commerce" as defined in N.C. Gen. Stat. § 75-1.1(b).

185.    Veterans Guardian's business practices occurred almost exclusively in North Carolina and violate the UDTPA because they violated public policy and were unethical, unscrupulous, illegal, and substantially injured veterans.

186.    The UDTPA was created to provide an additional remedy apart from those less adequate remedies afforded under common law causes of action for fraud, breach of contract, or breach of warranty.

187.    North Carolina courts have held that a violation of a regulatory statute that is designed to prevent unfair or deceptive conduct can constitute a *per se* violation of the UDTPA.

46

188.    Veterans Guardian's violation of 38 U.S.C. § 59, *et seq.* and/or 38 C.F.R. § 14, *et seq.*, constitutes a violation of regulations designed to prevent unfair and or deceptive conduct against our nation's veterans and therefore is a *per se* violation of N.C. Gen. Stat. § 75-1.1.

189.    Moreover, North Carolina appellate courts have held that violations of regulatory statutes that are designed to protect consumers are *per se* violations of N.C. Gen. Stat. § 75-1.1.

190.    Federal law established under 38 U.S.C. Chapter 59, *et seq.* and/or 38 C.F.R. § 14, *et seq.*, are regulations that are designed to protect veterans against unfair and deceptive conduct with respect to the preparation presentation of VA disability claims. These regulations govern who can prepare these claims and how much can be charged for such services.  Accordingly, the violation of these regulations constitutes a *per se* violation of N.C. Gen. Stat. § 75-1.1.

191.    Specifically, Veterans Guardian violated sections 38 C.F.R. § 14.629 (b)(1) and § 14.636(c)(1)(i) as discussed below:

**Violation of 38 C.F.R. § 14.629:**

192.    38 C.F.R. § 14.629 (b)(1) states: "No individual may assist claimants in the preparation, presentation, and prosecution of claims for VA benefits as an agent or attorney unless he or she has first been accredited by VA for such purpose." By admittedly preparing Beard's Initial Claim for VA benefits without first receiving accreditation by the VA, Veterans Guardian violated § 14.629(b)(1). Veterans Guardian prepared or aided in the preparation of Beard's initial VA claim as evidenced by this communication:

47

Re: Veteran Beard: Your VA Claim Is Ready For Review

From:  Eric Beard (ericm.beard@yahoo.com)

To:    samantha.kehoe@vetsguardian.com

Date:  Thursday, September 22, 2022 at 04:46 PM EDT

Good Afternoon,

There is one mistake that I can see. I did do about one year in the reserves rough estimate would have been 09/01/2012 to 08/31/2013. This was just a period of time I was missing the service and wanted to complete my last year of my 8 year obligation doing something. It was a terrible experience. That's located at 21A.

Eric Beard

Sent from Yahoo Mail for iPhone

> On Thursday, September 22, 2022, 2:58 PM, Samantha Kehoe
> <samantha.kehoe@vetsguardian.com> wrote:
>
> Veteran Beard,
>
> Attached you will find your VA claim packet for review.  **The document is password protected.**  The password is the **last six digits of your Social Security Number.**
>
> Please thoroughly look over your claim, making sure all information listed throughout is correct.  **If your claim needs corrections or revisions,** please let us know what needs to be corrected at your earliest convenience (call or email me).  **If your claim is accurate and ready,** please reply with your approval to this email, and we will then physically mail a copy of the complete claim to you at your mailing address.  If you or someone you trust is not available to receive your claim by mail, **please tell us now.**
>
> Once you've reviewed and approved your claim, we will provide you with:
>
> 1. A complete, printed copy of your claim
> 2. Instructions on where you'll need to add your signature and date throughout your packet
> 3. An addressed, stamped envelope to send your claim to the VA
>
> You can expect your claim to be processed by the VA within 90-120 days after you mail in your claim, although it can certainly happen sooner than that.  Please check your eBenefits account regularly - VA eBenefits accounts are updated by VA personnel, so it is not possible for us to predict when your claim submission will be reflected. Please also check your daily postal mail, which is still  a common method of notification by the VA.  Be sure to contact us if/when you receive *any* VA correspondence so we may help you respond to any requests for information in a timely manner, provide advice, or simply follow your claim progress moving forward.

193.    Upon clicking the link contained in the email above, Beard was routed to several VA claim forms that had been fully prepared by Veterans Guardian.

48

194.   Defendant prepared Beard's Initial Claim by selecting the initial forms, filling out the forms with necessary data for Beard's specific initial claim, printing the initial claim forms and supporting documents, and mailing the completed claim packet in paper form to Beard's home address, along with a fully addressed envelope to the VA with instructions on where to add his signature and date on the initial claim form. Veterans Guardian even provided a pre-addressed and stamped envelope for mailing his initial claim submission to the VA.

195.   Moreover, Defendant also reminded Beard in no uncertain terms, "Be sure to contact us if/when you receive any VA correspondence so we may help you respond to any requests for information in a timely manner, provide advice, or simply follow your claim progress moving forward."

196.   Once Veterans Guardian drafted and prepared Beard's Initial Claim, it prepared Beard for his private medical exam, instructed Beard to submit his Initial Claim, prepared Beard for his C&P medical exam administered by the VA, and Veterans Guardian instructed Beard to notify its office if the VA sent correspondence that requested additional information so that Veterans Guardian could assist Beard with a response and provide advice on how to respond to the VA, in violation of 38. C.F.R. § 14.629(b)(1).

197.   Pursuant to this common business practice, Beard received a disability determination on his Initial Claim worth roughly $4,278.80 per month.

198.   38 U.S.C. § 5904(c)(1) prohibits VA agents and attorneys from charging or being paid for services with respect to services provided before the date on which a notice of the initial claim is issued.

49

199.    In direct contravention of this provision, Veterans Guardian, being unaccredited, charged and collected a fee for the preparation of Beard's Initial Claim despite having never filed any direct-pay fee agreements with the VA nor a direct-pay fee agreement with the OGC for the initial VA Disability Compensation Claim that it prepared.

200.    Further, 38 C.F.R. § 14.636(c)(1)(i) provides that *only* VA accredited agents and attorneys may charge claimants or appellants for representation provided after an agency of original jurisdiction has issued notice of an initial decision on the claim or claims for an increase in rate of benefit, and the agent or attorney has complied with (1) the power of attorney requirements of 38 C.F.R. § 14.631; and (2) the fee agreement requirements of 38 C.F.R. § 14.636(g).

201.    All agreements for the payment of any fees for services rendered in connection with Veteran's benefits must be in writing and signed by both the claimant or appellant and the accredited agent or attorney. To be valid and lawful, a fee agreement must: (1) name the veteran; (2) name the claimant or appellant if other than a veteran; (3) name any disinterested third-party payer and the relationship between the third-party payer and the veteran, claimant, or appellant; (4) set forth the applicable VA file number; and (5) contain the specific terms under which the amount to be paid for the services of the attorney or agent will be determined. 38 C.F.R. § 14.636(g)(1)(i-v).

202.    Within thirty (30) days of the execution of a fee agreement between a veteran and representative, the representative must send a copy of their fee agreement to either the VA or Office of General Counsel ("OGC"). 38 C.F.R. § 14.636(g)(3).

203.    Veterans Guardian violated these provisions as well by charging a fee for

50

assisting on claims filed before an agency of original jurisdiction had issued notice of an initial decision (i.e. an initial claim). Veterans Guardian was also not an accredited claims representative and did not comply with any of the power of attorney requirements under § 14.631 and fee agreement requirements under § 14.636 (g).

204.    Pursuant to the language contained in Veterans Guardian's Contract, Veterans Guardian emailed Beard an invoice charging him $21,394.00 ($4,278.80 x 5) for its services in preparing Beard's Initial Claim. Over the course of several months, Beard paid Veterans Guardian over $19,000 in several installment payments.

205.    Thus, Veterans Guardian's action of collecting fees for services provided in connection with Beard's Initial Claim violated 38 C.F.R. § 14.636(b), (c), (f), (g) and § 14.631; and 38 U.S.C. § 5904(c)(1).

206.    While there was no lawful charge in connection with Beard's Initial Claim, 38 C.F.R § 636(f) establishes the maximum amount that a VA accredited agent or attorney could have charged Beard if it were in connection with an increase in benefits (non-initial claim) at 33 1/3%. The amount paid by Beard is far more than any allowable amount under that standard as well.

207.    Here, Congress created the robust regulations for VA claim services in 38 U.S.C. § 59, *et seq.* and 38 C.F.R. § 14, *et seq.*, to protect veterans similarly situated to Beard from predators like Veterans Guardian. The North Carolina Supreme Court has held "Violations of statutes designed to protect the consuming public and violations of established public policy may constitute unfair and deceptive practices." *Stanley v. Moore,* 339 N.C. 717, 723, 454 S.E.2d 225, 228 (N.C. 1995).

51

208.    Therefore, Defendant violated federal regulations and the UDTPA in the following ways:

a.    Preparing and presentation of VA benefits claims while its employees are unaccredited;

b.    Charging a fee to assist with an initial VA disability compensation claim;

c.    Charging fees that exceeds the rates allowed by the VA regulations for helping with such claims;

d.    Exercising a claim over VA benefits in the form of "agreed-to" fees and imposing steep penalties for the non-payment of fees;

e.    Charging fees that are clearly excessive;

f.    Charging fees on initial claims that it knows are not permitted by federal law;

g.    Emailing invoices to collect debts related to initial-claims assistance provided by its unaccredited representatives; and

h.    Emailing invoices to collect debts related to initial-claims assistance whereby Defendant charges a fee for such services related to initial claims, late fees related to an initial claim, or interest on fees related to an initial claim.

209.    Beard and Class members have been harmed and have suffered actual damages (as defined by the UDTPA) by paying illegal fees under Veterans Guardian's standard form Contract. See Exhibit A.

210.    As a direct and proximate cause of Veterans Guardian's regulatory violations, Beard and the Class are entitled to actual damages and compensatory damages along with injunctive relief pursuant to section N.C. Gen. Stat. § 75, *et seq*.

52

211.   Beard and the Class are entitled to treble damages pursuant to N.C. Gen. Stat. § 75-16.

212.   Beard and the Class are entitled to attorneys' fees and costs pursuant to N.C. Gen. Stat. § 75-16.1. Beard and the Class have reason to believe that Defendant is violating and will continue to violate the federal regulations cited herein, and thereby are entitled to a declaration from the Court that the contracts with Defendant are void and unenforceable and any other concomitant equitable relief.

**<u>COUNT II</u>**
**Violation of the N.C. Gen Stat § 75-1.1, *et seq.***
**(UDTPA Non-Initial Claim Class)**

213.   Plaintiffs incorporate by reference each and every factual allegation set forth in paragraphs 1-175 above.

214.   Veterans Guardian's Contract states that North Carolina law applies to the agreement between the parties regarding compensation to Veterans Guardian for preparing the VA Disability Compensation claim packet to be submitted to the VA.

215.   The North Carolina UDTPA prohibits businesses from engaging in unfair and deceptive acts or practices. The UDTPA largely mirrors the Federal Trade Commission Act and states that "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen Stat § 75-1.1.

216.   The UDTPA provides a four-year statute of limitations.

217.   The purpose of UDTPA is "to declare, and to provide civil legal means to maintain, ethical standards of dealings between persons engaged in business and between

53

persons engaged in business and the consuming public within this State to the end that good faith and fair dealings between buyers and sellers at all level[s] of commerce be had in this State." *Bhatti v. Buckland*, 328 N.C. 240, 400 S.E.2d 440 (1991).

218. Courts have used many standards to determine whether an act or practice is "unfair," including:

    (1)    If the act violates industry standards

    (2)    Violates public policy

    (3)    Immoral, unethical, or unscrupulous

    (4)    Substantially injures consumers

    (5)    Inequitable assertion of the party's power or position

    (6)    Has the tendency to deceive

219. "Commerce" includes all business activities, however, denominated, but does not include professional services rendered by a member of a learned profession. N.C. Gen Stat § 75-1.1(b).

220. Veterans Guardian charged fees to veterans for preparing claims for disability benefits with the VA which constitutes commerce under the UDTPA as such services were rendered by unaccredited claims representatives, not a member of a learned profession.

221. Veterans Guardian's business activities, at all times relevant to this Complaint, are considered "commerce" as defined in N.C. Gen Stat § 75-1.1(b).

222. Veterans Guardian's business practices occurred almost exclusively in North Carolina and violate the UDTPA because they violated public policy, were unethical and

unscrupulous, and substantially injured veterans.

223. The UDTPA was created to provide an additional remedy apart from those less adequate remedies afforded under common law causes of action for fraud, breach of contract, or breach of warranty.

224. North Carolina courts have held that a violation of a regulatory statute that are designed to prevent unfair or deceptive conduct can constitute a per se violation of the UDTPA.

225. Veterans Guardian's violation of 38 U.S.C. § 59, *et seq.* and/or 38 C.F.R. § 14, *et seq.*, constitutes a violation of regulations designed to prevent unfair and or deceptive conduct and therefore can act as a per se violation of N.C. Gen. Stat. 75-1.1.

226. Moreover, North Carolina appellate courts have held that violations of regulatory statutes that are designed to protect consumers are *per se* violations of N.C.G.S. 75-1.1.

227. Federal law established under 38 U.S.C. Chapter 59, *et seq.* and/or 38 C.F.R. § 14, *et seq.*, are regulations governing who can prepare and present claims for disability benefits to the VA and how much can be charged to the veteran in connection with such services. Because these regulations were designed to protect veterans, Veterans Guardian's business practice of routinely violating these regulations constitutes a *per se* violation of N.C.G.S. § 75-1.1. Specifically, sections 14.626 through 14.637 of Title 38 of the Code of Federal Regulations, implement Chapter 59 of the United States Code governing the representation of claimants for veterans' benefits.

228. 38 C.F.R. § 14.629 (b)(1) states: "No individual may assist claimants in the

55

preparation, presentation, and prosecution of claims for VA benefits as an agent or attorney unless he or she has first been accredited by VA for such purpose."

## 1. Ford's First Claim

229. Veterans Guardian is in violation of 38. C.F.R. § 14.629(b)(1) because it admittedly prepared Ford's First Claim for VA benefits without first receiving accreditation by the VA:



On Fri, Mar 25, 2022, 1:59 PM Samantha Kehoe <samantha.kehoe@vetsguardian.com> wrote:
Veteran Ford,

Attached you will find your VA claim packet for review. **The document is password protected.** The password is the **last six digits of your Social Security Number.**

Please thoroughly look over your claim, making sure all information listed throughout is correct. **If your claim needs corrections or revisions,** please let us know what needs to be corrected at your earliest convenience (call or email me). **If your claim is accurate and ready,** please reply with your approval to this

1

email, and we will then physically mail a copy of the complete claim to you at your mailing address. If you or someone you trust is not available to receive your claim by mail, **please tell us now.**

Once you've reviewed and approved your claim, we will provide you with:
1. A complete, printed copy of your claim
2. Instructions on where you'll need to add your signature and date throughout your packet
3. An addressed, stamped envelope to send your claim to the VA

You can expect your claim to be processed by the VA within 90-120 days after you mail in your claim, although it can certainly happen sooner than that. Please check your eBenefits account regularly - VA eBenefits accounts are updated by VA personnel, so it is not possible for us to predict when your claim submission will be reflected. Please also check your daily postal mail, which is still a common method of notification by the VA. Be sure to contact us if/when you receive *any* VA correspondence so we may help you respond to any requests for information in a timely manner, provide advice, or simply follow your claim progress moving forward.

It's been a pleasure working with you. We wish you the best with your VA claim.

--

Respectfully,

**Samantha Kehoe**
PTSD Team at Veterans Guardian VA Claim Consulting

230. Upon clicking the link contained in the email above, Ford was routed to several VA claim forms that had been fully prepared by Veterans Guardian.

231. Veterans Guardian completely prepared Ford's First Claim. It selected the appropriate forms, filled out all the necessary data for Ford's specific claim, printed the claim forms and supporting documents, and mailed the completed Packet in paper form to

56

Ford's home address, along with a fully addressed envelope addressed to the VA, and instructions on where to add her signature and date on the claim form. Veterans Guardian even provided a pre-addressed and stamped envelope for mailing her claim submission to the VA.

232. Upon information and belief, Veterans Guardian prepares and completes thousands of claim forms for submission to the VA every month that are substantially similar to Ford's First Claim.

233. Moreover, Veterans Guardian also reminded Ford in no uncertain terms, "Be sure to contact us if/when you receive any VA correspondence so we may help you respond to any requests for information in a timely manner, provide advice, or simply follow your claim progress moving forward."

234. Once Ford's First Claim was submitted, Veterans Guardian prepared Ford for her private medical exam, C&P medical exam administered by the VA, and Veterans Guardian instructed Ford to notify its office if the VA sent correspondence that requested additional information so that Veterans Guardian could assist Ford with a response and provide advice on how to respond to the VA, in violation of 38. C.F.R. 14.629(b)(1).

235. Ford received an increase related to her First Claim worth roughly $360.00 per month.

236. Only accredited agents and attorneys may receive a fee from claimants or appellants for their services provided in connection with representation, however, even as an unaccredited claims representative, Veterans Guardian charged and collected a fee related to Ford's First Claim in violation of 38 C.F.R. § 14.636(b).

57

237. Pursuant to the language contained in Veterans Guardian's Contract, Veterans Guardian emailed Ford an invoice charging her $1,800.00 ($360.00 x 5) for its services in preparing Ford's First Claim.

238. Over the course of several months, Ford paid Veterans Guardian $1,800.00 in several installment payments.

239. Veterans Guardian collection of fees for services provided in connection with Ford's First Claim representation violates 38 C.F.R. § 14.636(b).

240. Further, 38 C.F.R. § 14.636(c)(1)(i) provides that *only* Agents and attorneys may charge claimants or appellants for representation provided that: after an agency of original jurisdiction has issued a decision[20] on a claim or claims or for an increase in rate of benefit, so long as the agent or attorney has complied with: (1) the power of attorney requirements of 38 C.F.R. § 14.631; and (2) the fee agreement requirements of 38 C.F.R. § 14.636(g).

241. All agreements for the payment of any fees for services rendered in connection with veteran's benefits must be in writing and signed by both the claimant or appellant and the accredited agent or attorney. To be valid and lawful, a fee agreement must: (1) name the veteran; (2) name the claimant or appellant if other than a veteran; (3) name any disinterested third-party payer and the relationship between the third-party payer and the veteran, claimant, or appellant; (4) set forth the applicable VA file number; and (5) contain the specific terms under which the amount to be paid for the services of the attorney

_____

[20] This means once the VA has made its initial claim decision or original claim decision.

or agent will be determined. 38 C.F.R. § 14.636(g)(1)(i-v).

242.    Within thirty (30) days of the execution of a fee agreement between a veteran and representative, the representative must send a copy of their fee agreement to either the VA or Office of General Counsel ("OGC"). 38 C.F.R. 14.636(g)(3).

243.    In connection with Ford's First Claim, Veterans Guardian never complied with any of the power of attorney requirements contained in 38 C.F.R. § 14.631 nor the fee agreement requirements of 38 C.F.R. § 14.636(g). Furthermore, Veterans Guardian is not an accredited agent of the VA, has never filed any direct-pay fee agreements with the VA, nor filed a direct-pay fee agreement with the OGC for any of the VA Disability Compensation Claims that it prepared and collected a fee on Ford's First Claim.

244.    Ford's back pay or past due retroactive benefits resulting from her First Claim is roughly $350.00. As a result, the maximum amount that a VA accredited agent or attorney could have charged Ford for the increase of her First Claim would have been capped at approximately $116.55.

245.    In her First Claim, Veterans Guardian charged Ford fifteen times or over 1,500% the allowable fees permitted by federal regulations when Veterans Guardian charged $1,800.00 to Ford.

246.    In Ford's First Claim, Veterans Guardian never submitted a fee agreement to the VA or the OGC. Moreover, the OGC never approved of Veterans Guardian's fees.

2.    **Ford's Second Claim**

247.    As for Ford's Second Claim, Veterans Guardian is in violation of 38. C.F.R. 14.629(b)(1) because it admittedly prepared Ford's Second Claim for VA benefits without

59

first receiving accreditation by the VA:

From: **Samantha Mellon** <samantha.mellon@vetsguardian.com>
Date: Mon, Nov 7, 2022, 11:58 AM
Subject: Packet for Review
To: Jenn Ford <jenanderic1814@gmail.com>

Veteran Ford,

Attached you will find your VA claim packet for your review.

**The document is password protected.**

**The password is the last six digits of your Social Security Number.**
Please thoroughly review your claim, and make sure that your Social Security Number, home address and phone number listed throughout are correct.

If your claim is accurate and ready, **please tell us immediately.**

If corrections are needed, let us know what needs to be corrected. Once you are satisfied, we will **mail** you:
1. A complete, printed copy
2. Instructions on where to sign and date
3. A self-addressed, stamped envelope to mail your claim to the VA

If you, or someone you trust is not available to mail your claim, **please tell us now.**
**After 7 days if we do not get a response from you, your claim packet will automatically be sent to our mail team, and mailed out to you.**

Plan on your claim being processed by the VA within 90-120 days, though processing times can vary.

248. Upon clicking the link contained in the email above, Ford was routed to several VA claim forms that had been fully prepared by Veterans Guardian.

249. Veterans Guardian completely prepared Ford's VA Second Claim. It selected the appropriate forms, filled out all the necessary data for Ford's specific claim, printed the claim forms and supporting documents, and mailed the completed Packet in paper form to Ford's home address, along with a fully addressed envelope addressed to the VA, and instructions on where to add her signature and date on the claim form. Veterans Guardian even provided a pre-addressed and stamped envelope for mailing her claim submission to the VA.

250. Veterans Guardian prepares and completes thousands of similar claim forms for submission to the VA every month.

251. Again, Veterans Guardian also reminded Ford in no uncertain terms, "Be sure to contact us if/when you receive any VA correspondence so we may help you respond to any requests for information in a timely manner, provide advice, or simply follow your claim progress moving forward."

252. Once Ford's Second Claim was submitted, Veterans Guardian prepared Ford for her C&P medical exam administered by the VA and Veterans Guardian instructed Ford to notify its office if the VA sent correspondence that requested additional information so that Veterans Guardian could assist Ford with a response and provide advice on how to respond to the VA, in violation of 38. C.F.R. 14.629(b)(1).

253. Ford received an increase related to her Second Claim. Ford received a VA Disability Compensation increase worth roughly $300.00 per month.

254. Only accredited agents and attorneys may receive a fee from claimants or appellants for their services provided in connection with representation, however, even as an unaccredited representative, Veterans Guardian charged and collected a fee related to Ford's Second Claim in violation of 38 C.F.R. § 14.636(b).

255. Pursuant to the language contained in Veterans Guardian's Contract, Veterans Guardian charged Ford an invoice ($300.00 x 5) for its services in preparing Ford's Second Claim.

256. For Ford's Second Claim, she paid Veterans Guardian $1,500.00 in one lump sum payment.

3.      Otters' Claim

257. Veterans Guardian is in violation of 38. C.F.R. § 14.629(b)(1) because it

admittedly prepared Otters' Claim for VA benefits without first receiving accreditation by

the VA:



From: ashley.bennett@vetsguardian.com <ashley.bennett@vetsguardian.com>
Date: Mon, Apr 17, 2023 at 2:02 PM
Subject: Veterans Guardian VA Packet Update
To: <brianotters@gmail.com>

258.    After receiving his Claim Packet via US Mail above, Otters was asked to

review several VA claim forms that had been fully prepared by Veterans Guardian.

259.    Veterans Guardian completely prepared Otters' Claim. It selected the

appropriate forms, filled out all the necessary data for Otters' specific claim, printed the

claim forms and supporting documents, and mailed the completed Packet in paper form to Otters' home address, along with a fully addressed envelope addressed to the VA, paid for the postage, and provided instructions on where to add his signature and date on the claim form. Veterans Guardian even provided a pre-addressed and stamped envelope for mailing his claim submission to the VA.

260. Upon information and belief, Veterans Guardian prepares and completes hundreds of VA Disability Compensation Claim forms for submission to the VA every month that are substantially similar to Otters' Claim.

261. Moreover, Veterans Guardian also reminded Otters in no uncertain terms, to contact them if Otters received any VA correspondence so that Veterans Guardian could help him respond to any requests for information in a timely manner, provide advice, or simply follow the progress of his VA claim moving forward.

262. Once Otters' Claim was submitted, Veterans Guardian prepared Otters for C&P medical exam administered by the VA, and Veterans Guardian instructed Otters to notify its office if the VA sent correspondence that requested additional information so that Veterans Guardian could assist Otters with a response and provide advice on how to respond to the VA, in violation of 38. C.F.R. 14.629(b)(1).

263. Following his assistance from Veterans Guardian, Otters' disability rating percentage increased from 70% to 90%. Otters received an increase related to his Claim worth roughly $599.33 per month.

264. Only accredited agents and attorneys may receive a fee from claimants or appellants for their services provided in connection with representation, however, even as

63

an unaccredited claims representative, Veterans Guardian charged and collected a fee related to Otters' Claim in violation of 38 C.F.R. § 14.636(b).

265. Pursuant to the language contained in Veterans Guardian's Contract, Veterans Guardian emailed Otters an invoice charging him $2,990.00 ($599.33 x 5) for its services in preparing Otters' Claim.

266. Over the course of several months, Otters paid Veterans Guardian $2,990.00 in several installment payments.

267. Veterans Guardian collection of fees for services provided in connection with Otters' Claim representation violates 38 C.F.R. § 14.636(b).

268. Further, 38 C.F.R. § 14.636(c)(1)(i) provides that *only* Agents and attorneys may charge claimants or appellants for representation provided that: after an agency of original jurisdiction has issued a decision[21] on a claim or claims or for an increase in rate of benefit, so long as the agent or attorney has complied with: (1) the power of attorney requirements of 38 C.F.R. § 14.631; and (2) the fee agreement requirements of 38 C.F.R. § 14.636(g).

269. All agreements for the payment of any fees for services rendered in connection with veteran's benefits must be in writing and signed by both the claimant or appellant and the accredited agent or attorney. To be valid and lawful, a fee agreement must contain: (1) name the veteran; (2) name the claimant or appellant if other than a veteran; (3) name any disinterested third-party payer and the relationship between the third-

---

[21] This means once the VA has made its initial claim decision or original claim decision.

party payer and the veteran, claimant, or appellant; (4) the applicable VA file number; and (5) specific terms under which the amount to be paid for the services of the attorney or agent will be determined. 38 C.F.R. § 14.636(g)(1)(i-v).

270. Within thirty (30) days of the execution of a fee agreement between a veteran and representative, the representative must send a copy of their fee agreement to either the VA or Office of General Counsel ("OGC"). 38 C.F.R. 14.636(g)(3).

271. In connection with Otters' Claim, Veterans Guardian never complied with any of the power of attorney requirements contained in 38 C.F.R. § 14.631 nor the fee agreement requirements of 38 C.F.R. § 14.636(g). Furthermore, Veterans Guardian is not an accredited agent of the VA, has never filed any direct-pay fee agreements with the VA, nor filed a direct-pay fee agreement with the OGC for any of the VA Disability Compensation Claims that it prepared and collected a fee on Otters' Claim.

272. The VA also prohibits agents and attorneys from charging or being paid for services with respect to services provided before the date on which a notice of the initial claim is issued. 38 U.S.C. § 5904(c)(1).

273. Moreover, the VA makes it unlawful for any individual or entity to charge veterans for assisting with initial claims or the recovery of future VA benefits.

274. Upon information and belief, Veterans Guardian collects fees related to representation when it prepares claims.

275. Pursuant to 38 C.F.R. § 14.636(f), any fee that exceeds 33 1/3 percent of any past-due VA disability benefits awarded shall be presumed to be unreasonable by the VA.

276. Here, Congress created the robust regulations for VA claim services in 38

U.S.C. § 59, *et seq.* and 38 C.F.R. § 14, *et seq.*, to protect veterans similarly situated to Ford from predators like Veterans Guardian. The North Carolina Supreme Court has held "Violations of statutes designed to protect the consuming public and violations of established public policy may constitute unfair and deceptive practices." *Stanley v. Moore,* 339 N.C. 717, 723, 454 S.E.2d 225, 228 (N.C. 1995).

277. As detailed herein, Veterans Guardian has repeatedly and systematically violated numerous provisions of 38 U.S.C. § 59, *et seq.* and 38 C.F.R. § 14, *et seq.* In total, Ford paid Veterans Guardian $3,401.00 with respect to her two claims.

278. Had a VA accredited agent or attorney assisted with Ford's two claims, Ford would have only been required to pay approximately $656.01.

279. Ford disputes whether Veterans Guardian could charge her any fee as an unaccredited agent. Even if Veterans Guardian were permitted to assist with VA claims as an unaccredited agent, Ford paid Veterans Guardian at least $2,744.99 more than is permitted by federal regulation.

280. Veterans Guardian has employed similar practices to charge excessive fees to members of the UDTPA Non-Initial Claim Class.

281. Veterans Guardian collects these amounts in open violation of the restrictions, qualifications and regulations set forth in Chapter 59 and 38 of the United States Code and 38 C.F.R. § 14.

282. Therefore, Defendant's acts violated federal regulations in the following ways:

    a.    Helping claimants prepare and present their VA benefits claims while being

66

unaccredited;

b.     Charging fees that exceeds the rates allowed by the VA regulations for helping with such claims and/or charging fees that exceeds what is charged by VA accredited and highly vetted agents and attorneys;

c.     Exercising a claim over VA benefits in the form of "agreed-to" fees and imposing steep penalties for the non-payment of fees;

d.     Charging fees that it knows exceed thirty-three-and-one-third of a veteran's retroactive award;

e.     Charging fees for claims assistance when it is unaccredited;

f.     Receiving fees for claims assistance when it is unaccredited; and

g.     Emailing invoices to collect debts related to claims assistance provided by its unaccredited representatives.

283.     Preparing, presenting, and/or prosecuting VA disability claims without accreditation violates federal law. Additionally, emailing invoices to collect debts related to claims assistance whereby Defendant charges a fee that exceeds thirty-three-and-one-third percent, late fees, or interest is illegal. Accordingly, Defendant's violation of the federal regulations enacted to protect veterans, who are part of the consuming public, meets the three-part test under the UDTPA and thereby constitutes a *per* se violation of the UDTPA.

284.     Veterans Guardian should not be permitted to keep any portion of its fees because it failed to submit its fee agreement in accordance with 38 C.F.R. § 14.636(f).

285.     Veterans Guardian should not be permitted to keep any portion of its fees

because it is not accredited and the collection of a fee by an unaccredited claims representative violates 38 C.F.R. § 14.636(b).

286.    Ford, Otters, and the Class members have been harmed and suffered actual damages (as defined by the UDTPA) by paying excessive fees under the Veterans Guardian standard form Contract. *See* Exhibit A.

287.    As a direct and proximate cause of Veterans Guardian's regulatory violations, Ford, Otters, and the Class are entitled to actual damages and compensatory damages along with injunctive relief pursuant to section N.C. Gen Stat § 75, *et seq.*

288.    Ford, Otters, and the Class are entitled to treble damages pursuant to N.C. Gen Stat § 75-16.

289.    Ford, Otters, and the Class are entitled to attorneys' fees and costs pursuant to N.C. Gen Stat § 75-16.1. Ford, Otters, and the Class have reason to believe that Defendant is violating and will continue to violate the federal regulations cited herein, and thereby are entitled to a declaration from the Court that the contracts with Defendant are void and unenforceable and any other concomitant equitable relief.

<u>COUNT III</u>
**Violations of the North Carolina Debt Collection Act**
**N.C. Gen Stat § 75-50,** *et seq.*
**(NCDCA Class)**

290.    Plaintiffs incorporate by reference each and every factual allegation set forth in paragraphs 1-175 above.

291.    The NCDCA and the UDTPA are interrelated, and the NCDCA is essentially an extension of the UDTPA to debt collection practices. *See Batten v. Panatte, LLC (In re.*

68

*Batten)*, No. 18-00256-5-DMW (Bankr. E.D.N.C. Feb. 22, 2019).

292.    Veterans Guardian is a "debt collector" as defined by the NCDCA. *See* N.C.G.S. § 75.50(3).

293.    NCDCA applies to any person engaged in debt collection from a consumer, which includes a creditor collecting its own accounts. N.C.G.S. § 75-50(3).

294.    Plaintiffs and the Class are "consumer[s]" as defined by the NCDCA. *See* N.C.G.S. § 75-50(1).

295.    Veterans Guardian attempted to collect a debt from Plaintiffs when it emailed them form invoices seeking payment for an alleged debt from Plaintiffs on their claims.

296.    Upon information and belief, Veterans Guardian emailed other similarly situated veterans nearly identical form invoices whereby it attempted to collect substantially similar debts arising from unlawful and prohibited practices.

297.    As such, the Veterans Guardian's form invoices sent to Plaintiffs and the Class seek to collect a "debt" within the meaning of N.C.G.S. § 75-50(2).

298.    "The collection letters need not have caused each class member a personal, factual injury based on his or her subjective reaction to it, but only an informational injury based on alleged misrepresentations and misleading information contained in the letters, in violation of the statute." *McMillan v. Blue Ridge Companies, Inc.*, 866 S.E.2d 700, 707, 379 N.C. 488, 497, 2021 -NCSC- 160, ¶ 21 (N.C., 2021)

299.    "[W]hen a statute creates a cause of action independent from a personal, factual, injury, 'the relevant questions are only whether the plaintiff has shown a relevant statute confers a cause of action and whether the plaintiff satisfies the requirements to bring

69

a claim under the statute.' The NCDCA is one such statute." *McMillan v. Blue Ridge*

*Companies, Inc.*, 866 S.E.2d 700, 709, 379 N.C. 488, 500, 2021 -NCSC- 160, ¶ 34 (N.C.,

2021)(internal citations omitted).

300.    The NCDCA prohibits any person collecting a debt from making deceptive

or false representations about the debt being collected. *See* N.C.G.S § 75-54.

> 75-54.  Deceptive representation.
>
> No debt collector shall collect or attempt to collect a debt or
> obtain information concerning a consumer by any fraudulent,
> deceptive or misleading representation. Such representations
> include, but are not limited to, the following:
> …
>         (4)        Falsely representing the character, extent, or
> amount of a debt against a consumer…
>
>         (7)        Falsely representing the status or true nature of
> the services rendered by the debt collector or his business.

301.    Veterans Guardian admits that it is not accredited. Exhibit A. The VA only

permits accredited attorneys or agents to charge for assistance with VA Disability Claims.

38 C.F.R. § 14.636(b).

302.    Veterans Guardian knew that only accredited agents and attorneys may

charge a fee to veterans for such services as provided in 38 C.F.R. § 14.636 (b), and that

even accredited agents may only charge a maximum of one-and-one-third percent of any

back pay award pursuant to 38 C.F.R. § 14.636 (f).

303.    By sending collection letters seeking payment for claim services that are

prohibited by Chapter 38 C.F.R. § 14 *et. seq.* and by charging amounts that exceed the

limited amounts that can be charged for such services, Veterans Guardian falsely

70

represented the legal status, character or "true nature" of the debt. In truth, the debt is completely prohibited by Chapter 38.

304. On Ford's First Claim, Veterans Guardian charged her $1,800.00 ($360.00 x 5), even though federal law prohibited any fee to unaccredited agents or capped fees on Ford's First Claim at approximately $116.55.

305. On Ford's Second Claim, Veterans Guardian charged her $1,500.00 ($300.00 x 5), even though federal law prohibited any fee for unaccredited agents or capped fees on Ford's Second Claim at approximately $539.46.

306. In total, Veterans Guardian charged Ford $3,401.00 with respect to her two claims, even though it knew that federal law prohibited any fees higher than $656.01.

307. On Beard's Initial Claim, Veterans Guardian charged him $21,394 ($4,278.80 x 5), even though federal law completely prohibited fees on Beard's Initial Claim.

308. In total, Veterans Guardian charged Beard $21,394 with respect to his Initial Claim, even though it knew that federal law prohibited the collection of any fee on an initial claim.

309. On Otters' Claim, Veterans Guardian charged him $2,990.00 (599.33 x 5), even though federal law even though federal law prohibited any fee for unaccredited agents.

310. To collect its unlawful fees, Veterans Guardian's emailed debt collection invoices to Plaintiffs that did not disclose the unlawful nature of the agreement or the underlying debt stemming therefrom. *See* Exhibit B.

71

311.    Upon information and belief, Veterans Guardian entered into thousands of illegal standard form Contracts with veterans across the United States similar to Exhibit A. Once a veteran receives an increase from the VA and is awarded additional monthly compensation, Veterans Guardian emails illegal standard form invoices to them, similar to Exhibit B.

312.    Any debts that Veterans Guardian collected under its standard form illegal Contract and standard form invoices should be disgorged. Any outstanding debts related to any standard form illegal Contract should be cancelled.

313.    Defendant had actual knowledge that its fees are not authorized by federal law or North Carolina law, and therefore in charging the illegal fees Veterans Guardian knowingly violated N.C.G.S. § 75-55 by claiming and attempting to enforce a debt which was not legitimate and not lawfully due and owing.

314.    As a direct and proximate result of Defendant's NCDCA violations, Plaintiffs and the Class have been harmed in the amount of fees collected and are entitled to actual damages; statutory damages of not less than $500 but no more than $4,000 for each violation; declaratory and injunctive relief; and attorney's fees and costs pursuant to N.C.G.S. § 75-56(a)-(d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court enter an Order:

a.    Certifying this action as a class action, as provided by Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as Class Representatives, and appointing the undersigned attorneys and their firms as Class Counsel;

72

b. In favor of Plaintiffs and the Class for Defendant's *per se* violations of N.C. Gen Stat § 75-1.1, *et seq.*;

c. In favor of Plaintiffs and the Class for Defendant's violations of N.C. Gen Stat § 75-50, *et seq.*;

d. Awarding actual damages sustained by Plaintiffs and the Class in an amount to be proved at trial;

e. Awarding treble damages as required by 75-1.1, *et seq.*, for the harm caused by Defendant;

f. Directing the Defendant to pay civil penalties to Plaintiffs and the Class not less than five hundred dollars ($500.00) nor greater than four thousand dollars ($4,000.00) for each violation of N.C.G.S. § 75-56(b);

g. Assessing punitive damages against the Defendant in accordance with N.C.G.S. § 75-56(c).

h. Directing Defendant to disgorge profits received by Defendant from sales and revenue of any kind as a result of the actions complained of by Plaintiffs and the Class in this Action;

i. Directing any outstanding debts still owed by the Class under Defendant's Contract as void;

j. Awarding Plaintiffs, and all those similarly situated, reasonable attorneys' fees and costs incurred in this action pursuant to N.C. Gen Stat § 75-16.1, *et seq.*;

k. Enjoining Defendant from further violations of 38 U.S.C. § 59, *et seq.* and 38 CFR 14, *et seq.*;

l.　　　Awarding Plaintiffs, and all those similarly situated, any pre-judgment and post-judgment interest as may be allowed under the law; and

m.　　　Awarding such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiffs demand a jury trial on all issues so triable.

Dated:　December 13, 2024

**VARNELL & WARWICK P.A.**

/s/ Christopher J. Brochu
Christopher J. Brochu; FBN: 1013897*
Janet R. Varnell; FBN: 0071072*
Brian W. Warwick; FBN: 0605573*
Pamela G. Levinson; FBN: 538345*
400 N Ashley Drive, Suite 1900
Tampa, FL 33602
Telephone: (352) 753-8600
Facsimile: (352) 504-3301
*cbrochu@vandwlaw.com*
*jvarnell@vandwlaw.com*
*bwarwick@vandwlaw.com*
*plevinson@vandwlaw.com*

**BERGER MONTAGUE PC**

/s/ Jeffrey Osterwise
Jeff Osterwise; NC Bar No.: 39272
Shanon J. Carson*
Radha Nagamani Raghavan*
1818 Market Street
Philadelphia, PA 191013
Telephone: (215) 875-4656
Facsimile: (215) 875-4604
*josterwise@bm.net*
*scarson@bm.net*
*rraghavan@bm.net*

***Appointed as Interim Lead Class Counsel for Plaintiffs and the Putative Class***

74

**FITZGERALD HANNA &
SULLIVAN, PLLC**
Andrew Fitzgerald; NC Bar No.: 31522
119 Brookstown Ave, Suite 402
Winston-Salem, NC 27101
Telephone: (336) 793-4696
Facsimile: (336) 793-4696
*andy@fhslitigation.com*

**THE PELS LAW FIRM, LLC**
Jon Pels*
4845 Rugby Ave, Ste 3rd Floor
Bethesda, MD 20814
Telephone: (301) 986-5570
Facsimile: (301) 986-5571
*jpels@pelslaw.com*

***Attorneys for Otters***

*\* admitted pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on December 13, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Christopher J. Brochu
Christopher J. Brochu