IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

|  |  |
|---|---|
| **JENNIFER FORD, ERIC BEARD,** and **BRIAN OTTERS**, individually and on behalf of all others similarly situated**,**<br><br>                    Plaintiffs,<br><br>v.<br><br>**VETERANS GUARDIAN VA CLAIM CONSULTING, LLC,**<br><br>                    Defendant. | **Case No. 1:23-cv-756-CCE-LPA**<br><br>**CLASS ACTION** |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL
BETTER DISCOVERY RESPONSES FROM DEFENDANT**

Plaintiffs, Jennifer Ford, Eric Beard, and Brian Otters (altogether, "Plaintiffs"), move for an Order pursuant to Fed.R.Civ.P. 33, 34, and 37, compelling Defendant Veterans Guardian VA Claim Consulting, LLC ("Defendant") to (1) provide better responses to Plaintiffs' August 23, 2024, First Requests for Production of Documents to Defendant, ("RFPs") (Exhibit A), and Plaintiffs' August 23, 2024, First Set of Interrogatories to Defendant, ("Interrogatories") (Exhibit B); and (2) compensate Plaintiffs for fees and expense of the present Motion to Compel (the "Motion").

**I.      Statement of the Nature of the Matter and Concise Statement of the Facts**

This case is about illegal fees charged to disabled U.S. Military veterans, like Plaintiffs, by Defendant, an unaccredited North Carolina-based company who charges veterans to prepare VA disability claims. However, 38 CFR 14.629 (b)(1), plainly

states that "[n]o individual may assist claimants in the preparation, presentation, and prosecution of claims for VA benefits as an agent or attorney unless he or she has first been accredited by VA for such purpose." Despite this prohibition, unaccredited Veterans Guardian routinely assisted claimants like Plaintiffs in the preparation, presentation, and/or prosecution of their VA benefits claims, charging a substantial fee for doing so.

Plaintiffs' Consolidated Complaint alleges violations of the North Carolina Unfair and Deceptive Trade Practices Act (UDTPA), N.C. Gen Stat § 75-1.1, et seq.; and the North Carolina Debt Collection Act (NCDCA), N.C. Gen Stat § 75-50, et seq.

Plaintiffs seek to represent two Classes (altogether, the "Class"):

UDTPA Class: All veterans who paid Veterans Guardian a fee in connection with preparing claims for VA Disability Compensation under a contract in substantially the same form as attached as Exhibit A to the Consolidated Complaint.

NCDCA Class: All veterans who received an invoice from Veterans Guardian in connection with preparing claims for VA Disability Compensation in substantially the same form as attached as Exhibit B to the Consolidated Complaint.

[ECF No. 52, ¶ 163]

Plaintiffs submitted discovery requests seeking information necessary to meet their class certification burdens under Rule 23.

## II. Specific Discovery Requests[1]

The RFPs at issue are:

---

[1] Defendant has served amended responses and they are addressed in the arguments section.

**Request No. 1:** Produce every Consulting Service Agreement ("CSA") entered into between VETERANS GUARDIAN and veterans that are similar to the CSA attached as Exhibit A to the COMPLAINT during the CLASS PERIOD.

**Response:** Defendant objects to Request No. 1 as overly broad and unduly burdensome in seeking tens of thousands of CSAs that are identical except for client name, initials, signatures, and minor variations among versions of the CSA, and where a sampling of such documents would suffice as contemplated in paragraph 3 of the parties' Rule 26(f) Report, ECF No. 34. Defendant believes that the CSAs of the named Plaintiffs in this action, Beard v. Veterans Guardian, No. 23-cv-1080 (M.D.N.C.), and Patterson v. Veterans Guardian, No. 23-cv-762 (M.D.N.C.), provide an appropriate sample, and is willing to confer with Plaintiff if Plaintiff believes another sample is necessary. Defendant will withhold responsive documents based on this objection.

**Request No. 2:** Documents sufficient to IDENTIFY all veterans who entered into a CSA with VETERANS GUARDIAN as referred to in Request 1, the date of their CSA, their VA disability rating percentage prior to working with VETERANS GUARDIAN, their rating increase, if any, after working with VETERANS GUARDIAN, the services that were provided by VETERANS GUARDIAN, the number of hours expended by VETERANS GUARDIAN for the services, the fee that was charged by VETERANS GUARDIAN, the amount that the veteran paid VETERANS GUARDIAN, any amount that remains outstanding, and the dates on which VETERANS GUARDIAN initiated any form of COMMUNICATION (including email, call, text, etc.) with the veteran attempting to collect on any outstanding invoice and the number of attempts to collect on any invoice for each of YOUR veteran clients during the CLASS PERIOD.

**Response:** Defendant objects to Request No. 2 as not relevant to any claim or defense insofar as it seeks the dates of CSAs, number of hours expended by Veterans Guardian for services to clients, the amounts paid by clients, outstanding payment amounts, dates of communication attempting to collect on outstanding invoices, and numbers of attempts to collect on outstanding invoices. None of those facts relate to the elements of Plaintiff's claim of a per se violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), her claim of violation of the North Carolina Debt Collection Act ("NCDCA"), or any of Defendant's affirmative defenses. Further, Defendant does not track the number of hours expended assisting each client. Defendant additionally objects to Request No. 2 as overly broad and unduly burdensome on the grounds that the information it seeks, to the extent it exists, is located in individual case file documents for tens of thousands of clients, searching those

3

documents would take thousands of hours, and a sampling of individual case files would suffice as contemplated in paragraph 3 of the parties' Rule 26(f) Report, ECF No. 34. Defendant believes that the case files of the named Plaintiffs in this action, Beard v. Veterans Guardian, No. 23-cv-1080 (M.D.N.C.), and Patterson v. Veterans Guardian, No. 23-cv-762 (M.D.N.C.), provide an appropriate sample, and is willing to confer with Plaintiff if Plaintiff believes another sample is necessary. Defendant will withhold responsive documents based on these objections.

Defendant will produce its case files for Plaintiff, Eric Beard, Abigayle Patterson, Brian Otters, Christopher Iturbe, Donald King, Larry Powell, and Catherine Perkins, in accordance with the timing established by the parties' ESI protocol.

**Request No. 20:** **Produce all COMMUNICATIONS between VETERANS GUARDIAN and its clients which include any VA form as an attachment.**

**Response:** Defendant objects to Request No. 20 as overly broad and unduly burdensome on the grounds that all or nearly all of Defendant's tens of thousands of individual client files include communications with clients that include VA forms as an attachment, reviewing those files would take thousands of hours, and a sampling of such communications would suffice as contemplated in paragraph 3 of the parties' Rule 26(f) Report, ECF No. 34. Defendant believes that the communications between Veterans Guardian and the named Plaintiffs in this action, Beard v. Veterans Guardian, No. 23-cv-1080 (M.D.N.C.), and Patterson v. Veterans Guardian, No. 23-cv-762 (M.D.N.C.), provide an appropriate sample, and is willing to confer with Plaintiff if Plaintiff believes another sample is necessary. Defendant will withhold responsive documents based on these objections. Defendant will produce the requested communications between Veterans Guardian and Plaintiff, Eric Beard, Abigayle Patterson, Brian Otters, Christopher Iturbe, Donald King, Larry Powell, and Catherine Perkins, in accordance with the timing established by the parties' ESI protocol.

**Request No. 21:** **Produce all COMMUNICATIONS between VETERANS GUARDIAN and its clients which include an invoice and any attachment.**

**Response:** Defendant objects to Request No. 21 as overly broad and unduly burdensome on the grounds that tens of thousands of Defendant's individual client files include communications with clients that include an invoice, reviewing those files would take thousands of hours, and a sampling of such communications would suffice as contemplated in paragraph 3 of the parties' Rule 26(f) Report, ECF No. 34. Defendant believes that the communications

4

between Veterans Guardian and the named Plaintiffs in this action, Beard v. Veterans Guardian, No. 23-cv-1080 (M.D.N.C.), and Patterson v. Veterans Guardian, No. 23-cv-762 (M.D.N.C.), provide an appropriate sample, and is willing to confer with Plaintiff if Plaintiff believes another sample is necessary. Defendant will withhold responsive documents based on these objections. Defendant will produce a sampling of the requested communications between Veterans Guardian and Plaintiff, Eric Beard, Abigayle Patterson, Brian Otters, Christopher Iturbe, Donald King, Larry Powell, and Catherine Perkins, in accordance with the timing established by the parties' ESI protocol.

**Request No. 32:** Produce a call log of all outbound calls that YOU made to telephone number (1-800-827-1000) during the CLASS PERIOD.

**Response:** Defendant has no responsive documents.

The Interrogatory at issue is:

**Interrogatory No. 3:** IDENTIFY the total number of veterans that YOU have assisted with VA claims, the amount of money that YOU charged to assist with each VA claim, the number of hours that YOU spent assisting with each VA claim, the amount of money paid by veterans to YOU for each VA claim, and any amounts that remain outstanding to YOU during the CLASS PERIOD.

**Response:** Defendant objects to Interrogatory No. 3, except insofar as it requests the total number of Defendant's veteran clients assisted and the amount Defendant charges to assist with each VA claim, as overly broad and unduly burdensome, on the ground that Defendant does not maintain those statistics and attempting to generate them would entail reviewing tens of thousands of individual client records and would require thousands of hours. Further, Defendant does not track the number of hours it spends assisting each client. Defendant additionally objects to Interrogatory No. 3, except insofar as it requests the total number of Defendant's veteran clients assisted and the amount Defendant charges to assist with each VA claim, as not relevant to any party's claim or defense. Neither Plaintiff's claim of a per se violation of the North Carolina Unfair Debt Collections Practices Act, nor her claim of violation of the North Carolina Debt Collection Act, nor any of Defendant's defenses implicates the number of hours spent assisting each client, the amounts paid by clients, or any amounts that remain outstanding. Defendant also objects to Interrogatory No. 3 on the ground that it constitutes multiple interrogatories by virtue of its subparts. Defendant responds that, since its founding in 2017, Defendant has assisted approximately 74,800 clients with VA disability benefits claims and

5

charges clients whose claims are successful a fee of five times the monthly benefits increase Defendant helps the client achieve.

## III. Defendant's Objections are meritless.

Defendant makes unsupported objections that producing basic class member information, class damages, class standing, communications Defendant made on veterans' behalf to the VA, or communications Defendant received directly from the VA on veterans' behalf would be highly burdensome and not proportional to the needs of this litigation. Defendant asserted this in Response to Plaintiffs' RFPs 1, 2, 20, 21, 32. Defendant also asserted this objection to Interrogatory 3.

All the above discovery seeks information on the identity of veterans who had their VA disability claims drafted by Defendant; the veterans' rating percentage, if any, when they engaged Defendant; the veterans' rating increase, if any, after Defendants' claim assistance; identification of veterans who received an invoice from Defendant after receiving a VA disability rating increase; and identification of veterans who paid money and/or still owe money to Defendant under the invoice. It benefits both parties and the Court to know who falls within the UDTPA and NCDCA Classes. While the information is not easy to produce, it is proportional to the needs of the case, particularly if sampling can be used.

## IV. Argument

"The purpose of discovery is to provide a mechanism for making relevant information available to the litigants." Fed. R. Civ. P. 26 advisory committee's notes, 1983 Amendment. Parties generally "may obtain discovery regarding any

6

nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case ...." Fed. R. Civ. P. 26(b)(1). The party opposing discovery bears the burden in a discovery dispute. *Hughes v. Research Triangle Inst.*, 2014 WL 4384078, at *2 (M.D.N.C. Sept. 3, 2014) (*citing Kinetic Concepts, Inc. v. ConvaTecInc.*, 268 F.R.D. 226, 243–M4) (M.D.N.C. 2010) ("District judges and magistrate judges in the Fourth Circuit…have repeatedly ruled that the party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion.")).

Relevancy "essentially involves a determination of how substantively the information requested bears on the issues to be tried." *Mills v. East Gulf Coal Preparation Co., LLC*, 259 F.R.D. 118, 131 (S.D.W. Va. 2009) (cleaned up); *Cook v. Howard*, 484 F. App'x 805, 812 (4th Cir. 2012) ("Relevance is thus the foundation for any request for production, regardless of the individual to whom a request is made."). "On relevancy matters, the trial court has broad discretion." *Watson v. Lowcountry Red Cross*, 974 F.2d 482, 489 (4th Cir. 1992). Indeed, "[d]istrict courts enjoy nearly unfettered discretion to control the timing and scope of discovery." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 426 (4th Cir. 1996); *Cook*, 484 F. App'x at 812 ("[d]istrict courts are afforded broad discretion with respect to discovery").

For the discovery requests at issue in this motion, Defendant asserts three objections: (1) overbroad, (2) unduly burdensome, and (3) relevance. But Defendant provides no specifics as to why Plaintiffs' discovery requests are burdensome, instead simply asserting boilerplate objections. This will not suffice. *Walls v. Ford Motor Co.*, 2021 WL 1723154 at *4 ("Mere recitation of the familiar litany that an interrogatory

7

…. is overly broad, burdensome, oppressive and irrelevant will not suffice.") (cleaned up). "While it is not *per se* unreasonable for a party to object on the basis that a request is overly broad, burdensome, or seeks irrelevant information, the objecting party has an obligation to show specifically why responding to the request would create a burden or how the request is overly broad in relation to the claims and defenses presented in the litigation." *Walls*, 2021 WL 1723154, at *5 (M.D.N.C. Apr. 30, 2021) (emphasis added); *see also, e.g., Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 249 (M.D.N.C. 2010) (Finding party's response offered no argument (let alone supporting documentation) for any objections as to which they claimed their document production remained "subject" (*i.e.*, overbreadth, burdensomeness, and relevance.)).

Moreover, Defendant's boilerplate relevance objections are likewise improper because Defendant fails to explain why the information requested is irrelevant. *Ford Motor Co.*, 2021 WL 1723154, at *4; *Dillon v. BMO Harris Bank, N.A.*, 2015 WL 6619972, at *12 (M.D.N.C. Oct. 30, 2015) (overruling party's relevance objections "[i]n the absence of a meaningfully developed opposition"); *ATI Indus. Automation, Inc. v. Applied Robotics, Inc.*, 2014 WL 3729408, at *4 (M.D.N.C. July 25, 2014) ("[R]elevancy at discovery is a far different matter from relevancy at trial," and a party cannot withhold requested information merely because it does not agree with opposing party's theory of case).

*TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2212 (U.S., 2021), placed a new burden on class action plaintiffs to establish standing for the class – standing must now be shown for all putative class members. The Supreme Court clarified that "[a]s the

8

party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing." *Id.* at 2207–08 (U.S., 2021) (citing *Lujan v. Defenders of Wildlife*, 112 S. Ct. 2130 (1992). The Court explained that "[e]very class member must have Article III standing in order to recover individual damages" because "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *Id.* at 2208 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036 (2016) (ROBERTS, C. J., concurring). "Plaintiffs must maintain their personal interest in the dispute at all stages of litigation." *Id.* (citing *Davis v. Federal Election Comm'n*, 128 S.Ct. 2759 (2008). "A plaintiff must demonstrate standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" *Id.* (citing *Lujan*, *supra*). Because class certification is one of the "successive stages" of the litigation, Plaintiff requires evidence for all class members prior to class certification in order be able to show standing under Art. III with specificity.

The *TransUnion* Court provided a methodology for class action plaintiffs to reach out to absent class members when necessary:

> The plaintiffs had the burden to prove at trial that their reports were actually sent to third-party businesses. The inferences on which the argument rests are too weak to demonstrate that the reports of any particular number of the 6,332 class members were sent to third-party businesses. **The plaintiffs' attorneys could have attempted to show that some or all of the 6,332 class members were injured in that way. They presumably could have sought the names and addresses of those individuals, and they could have contacted them.**

*Id.* at 2212 (emphasis added).

Accordingly, Supreme Court precedent states plainly that Plaintiffs can seek "the names and addresses" of class members to establish standing, contacting them if necessary in connection with the claims being advanced. Defendant has delayed long enough. It is time to produce the information Plaintiffs require to pursue class certification. Defendant's stonewalling is unacceptable.

1.  **The class data is necessary to prove putative class members have standing and to meet Rule 23 elements; relates to the claims and defenses; and there is no basis for Defendant's refusal to produce class data.**

RFP's 1, 2, 20, and 21 seek information about putative class members to show that their claims are substantially similar to the claims of named plaintiffs in order to satisfy Rule 23's requirements of commonality, typicality and predominance. For example, copies of all Consulting Service Agreements (RFP 1) will show whether Plaintiffs and all members of the class are subject to the same contract terms, the same fees, and the same services or whether there are differences between the contracts that could create individual issues.

Defendant objected to producing crucial class data sought in RFPs 1, 2, 20, and 21 on grounds that the requests are overly broad and unduly burdensome. In response to Request 2, Defendant claimed that "the information it seeks, to the extent it exists, is located in individual case file documents for tens of thousands of clients, searching those documents would take thousands of hours." *See* Exhibit A. Defendant's Responses dated October 4, 2024. Similar objections were entered for requests 1, 20, and 21. Thus, Defendant implied that responsive information could only be found

through a manual search of individual case files and could not be generated by any other means. Plaintiff subsequently attempted to negotiate a sampling methodology, often used in class actions prior to certification. Plaintiffs agreed to an initial sample of 500 complete client files, to include all the information sought in all four RFPs.

However, following the Defendant's refusal to agree to Plaintiffs' sampling protocol, Plaintiffs deposed Defendant's Director of Finance and Accounting, Melanie Johnson and learned that Defendant would be able to produce information requested in RFP 2 in a very simple, quick, and streamlined way by generating reports through software used by Defendant called "Salesforce." When Plaintiffs' counsel asked how long it would take to generate a report of the information sought in RFP No. 2, Ms. Johnson testified "It could be, depending on the amount of data." Exhibit C, p. 72, ln. 19-20. Ms. Johnson confirmed, even though she is unsophisticated with technology, that she herself could generate these reports with the assistance of Defendant's IT Director (Terri Mundy) in likely less than an hour.[2] Exhibit C, p. 71, ln. 10-16, 21-23.

Even after this testimony, Defendant has continued to maintain that this class discovery (including that sought in RFP 2) is overly broad, unduly burdensome and not relevant to any claim or defense. Moreover, on January 28, 2025, Defendant served its Amended Objections and Responses to Plaintiffs' First Requests for

---

[2] Ms. Johnson testified that she could generate the veterans' name, date of birth, social security number, mailing address, email, telephone number, rating percentage when the veterans engaged Defendant, rating percentage after veterans received assistance from Defendant, amount that Defendant invoiced to veterans, amount of money that Defendant received from veterans, and amount that remains outstanding under any invoice. Exhibit C, p. 22-24; 79, ln 4-17; p. 67, ln 14-25; p. 68, ln. 1-5.

11

Production and Interrogatories. Exhibits D–E. In its Amended Responses, Defendant changed its position again and now only agrees to a 300-client sample of client files. *Id., See Amended Responses to RFP Nos. 1, 2, 20, 21.* However, Defendant provided no explanation for why the larger sample size is unduly burdensome.

<u>Request for Production No. 2 and Interrogatory No. 3:</u>

As described above, Plaintiffs have reason to believe that Defendant can produce a substantial portion of this class discovery information in response to Request No. 2 in under an hour by generating reports from Salesforce. Alternatively, Defendant also has a spreadsheet that contains putative class members' information from August 23, 2019 through summer 2021 and can provide this information to Plaintiffs. *See* Exhibit C, Deposition of Melanie Johnson at p. 22, ln. 17-20.

Contrary to Defendant's objection that Request No. 2 is not relevant to any claim or defense, the information sought is relevant to show article III standing for each member of the class, as well as to Rule 23's numerosity, commonality, and/or typicality requirements for both the UDTPA and NCDCA classes. The information is likewise necessary to combat Defendant's Seventh Affirmative Defense: "[t]o the extent that Plaintiffs and/or the putative class members purport to bring this case as a class action, they cannot satisfy the requirements for a class action." [DE 53].

When Plaintiffs brought Ms. Johnson's deposition testimony regarding Salesforce reports to Defendant's attention, Defendant belatedly, and *for the very first time*, disclosed to Plaintiffs that they were able to generate most of the information

12

sought in RFP 2 and Interrogatory No. 3 using Salesforce.[3] Particularly, Defendant has admitted that the following information fields are available on Salesforce: (i) name of the veteran clients; (ii) veteran clients' VA disability rating percentage prior to working with Defendant, (iii) veteran clients' rating increase, if any, after working with Defendant, (iv) the fee that was charged by Defendant, (v) the amount that the veteran paid Defendant, and (vi) any amount that remains outstanding. As recently as January 17, 2025, Defendant agreed to produce this information by generating a salesforce report, but *only for 500 clients* and only if Plaintiff would agree to specific conditions.

Defendant continues to object to providing this information for the entire class on grounds that it is "overly burdensome" without explaining how generating Salesforce reports for approximately 70,000 clients[4] adds any meaningful burden. Indeed, based Ms. Johnson's testimony, the report can be run for any time period – meaning there is no additional or significant "burden" in running the report for 500 persons as opposed to 70,000 persons. Given the importance of the class data sought and insubstantial increase in burden on Defendant to produce this information,

---

[3] To be clear, Plaintiffs sought this information from Defendant, which Defendant avoided providing and instead insisted on providing a sampling of files as responsive information. Not once, until the deposition of Ms. Johnson, did Defendant acknowledge that data sought could easily be pulled from Salesforce. The fact that Defendant preferred to search each veteran file individually to assist it with asserting a burden objection is disingenuous - it is time better spent taking an hour to efficiently generate a report of this class information. *See* Plaintiffs letter dated October 31, 2024 ("we await your response on which of the information sought in RFP #2 can easily be queried and pulled without having to go through individual case files.").
[4] *See* Exhibit E, Defendant's Amended Response to Plaintiffs' Interrogatory Number 3.

Plaintiffs seek an order from this Court directing Defendant to produce this information for the entire class.

Moreover, Plaintiffs seek an order from this Court compelling Defendant to provide Plaintiffs with all relevant Salesforce data fields that can be generated, specifically, whether the following information sought in RFP #2 and Interrogatory No. 3 *can be* generated through a SalesForce report: (i) date of clients' CSAs; (ii) the dates on which Veterans Guardian initiated any form of communication (including email, call, text, etc.) with the veteran attempting to collect on any outstanding invoice; and (iii) the number of attempts to collect on any invoice for each veteran client during the Class Period.

*Request Nos. 1, 20, and 21:*

These requests seek data and documents for class members to discover Defendant's role in preparing disability claims submitted to the VA and Defendant's role communicating with the VA on behalf of veterans. Because these requests seek potentially voluminous data, Plaintiffs agreed to a sampling of documents for Requests Nos. 1, 20, and 21. As a compromise, Plaintiffs engaged with Defendant in a constructive discussion. Particularly, Plaintiffs agreed to receiving a sample of only 500 client files (out of a universe of 70,000 client files) and proposed:

> Defendant produces a sampling of 500 client files on a rolling basis, producing approximately 75-100 client files a week and provide all by February 14, 2025.
>
> As to the selection process, in order to ensure randomization, Plaintiffs propose that Defendant will select for each month, (starting August 23, 2019) client files of (A) the first 5 veterans who came to Defendant with

14

no disability rating, fully executed a Consulting Service Agreement, succeeded in obtaining an increase, and paid money to Defendant and (B) the first 5 veterans who came to Defendant with a prior disability rating, fully executed a Consulting Service Agreement, succeeded in obtaining an increase, and paid money to Defendant.

In total, 500 veteran files to be produced by Defendant. Regarding the content of the client files, Plaintiffs seek all responsive documents pertaining to a client, including any hard copy files, internal VG communications, irrespective of whether they have been saved in the client's Salesforce profile or elsewhere. And Plaintiff reserves the right to compel.

(Exhibit F).

While Defendant initially agreed to produce 500 veteran client files, and they now only agree to produce 300 veteran client files, they would only do so with certain restrictive qualifiers: (1) Defendant will only produce documents stored in its Salesforce database via integration with Box.com; (2) Defendant will not agree to produce internal Veterans Guardian communications regarding a veteran as part of the client files because they are not stored in Salesforce and searching for them would entail burdensome searches; (3) conditioning the production of the 500 client files on Plaintiffs not compelling internal Veterans Guardian communications that are not stored in the Salesforce database; and (4) not agreeing to the sampling parameter "veteran who paid money to Veterans Guardian.

Plaintiffs could not agree to these conditions because doing so will substantially diminish the scope of responsive documents and render the sample much less useful. With respect to the first qualifier: Documents (including emails) in salesforce are stored in PDF form. That means that all emails and their attachments are stored as

15

separate PDF attachments and will be produced as separate pages, making it nearly impossible for the Plaintiffs to connect attachments to the emails they were attached to. This information is crucial particularly in the context of RFPs 20 and 21 which specifically request communications "which include any VA form" or "which include an invoice" *as an attachment*. This means that Defendant's production must identify the parent email along with its attachments.

Prior discovery produced by Defendant indicates that a "Salesforce Only" qualifier will exclude relevant information. For example, Defendant produced documents from Plaintiff Ford's file which are purported to be from Ford but because the Defendant produced in pdf and failed to provide meta data, it is impossible to know whether Ms. Ford received her rating decision letter from the Department of Veterans Affairs and then provided it to Defendant or whether Defendant received Ford's letter directly from the Department of Veterans Affairs. Because a central issue in this case is whether Defendant is representing veterans before the VA, the origin of VA communication is highly relevant. As a result, Plaintiffs could not agree to this condition on the sample protocol.

The second and third qualifiers are also unacceptable qualifiers because they would exclude from production all internal communications about veteran class members. For example, internal emails between employees about the benefits the veteran would qualify for or which documents would be necessary for their VA disability claim, would be relevant to Plaintiff's contention that Defendant routinely prepares claims for money in violation of Federal law and to Defendant's assertion

16

that it does not prepare claims for money but only renders medical advice. The reason that Plaintiffs agreed to a limited 500 person sample was because they believed they would receive the entire file for each of the 500 veterans, including internal communications. But the restrictions placed on the sample by Defendant would exclude too much of the relevant information.

Finally, Defendant's fourth criteria would include within the limited sample veterans who never paid any money to VG. It is not clear at this stage whether Veterans who have been invoiced but not paid for VG's services have Article III standing, it is clear that those who have paid money do have standing. See, *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2204, 594 U.S. 413, 425 (2021) ("If a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III."). Thus, for the sample to be useful for class certification purposes, Plaintiffs believe that it should include only those veterans who are sure to have standing.

Plaintiffs are entitled to this class information, and it is relevant to their claims. Despite Defendant's unilateral decision to limit the parameters of the search or impose certain qualifiers on Plaintiffs' discovery requests, Plaintiff has made simple requests and for reasons only known to Defendant, it continues to refuse to produce documents or amend its responses without some of the burdensome qualifiers mentioned above.

Plaintiffs would still agree to a sampling for Request Nos. 1, 20, and 21. However, in light of Ms. Johnson's testimony that a Salesforce report for all class members would be easy to generate, Plaintiff does not agree to a sampling for Request

17

No. 2. During the Parties' recent meet and confer regarding Request No. 2, Plaintiffs agreed to narrow the request to only the following class information: the name of all veterans who entered into a CSA their VA disability rating percentage prior to working with Veterans Guardian, their rating increase, if any, after working with Veterans Guardian, the fee that was charged by Veterans Guardian, the amount that the veteran paid Veterans Guardian, and any amount that remains outstanding during the Class Period (August 23, 2019).

Defendant's refusal to perform any document collection and production other than engaging in what is an obviously inefficient method does not absolve Defendant of producing this relevant class information so that Plaintiffs can ascertain who falls within their class definitions. On the parties' final meet and confer zoom call on January 16, 2025, Plaintiffs' counsel volunteered to have their expert generate the reports in Salesforce to assist the Defendant. Defendant declined this invitation.

Accordingly, Plaintiffs request an order from this Court which either orders Defendant to produce complete 500-person sample under the methodology and limitations set forth in plaintiff counsel's email above and without any of the limitations set forth by Defendant.

### 2. This Court should compel Defendant to amend its answer to RFP No. 32 to identify the corresponding bates stamped documents responsive to Request No. 32 by February 14, 2025.

*Request No. 32:*

Plaintiff respectfully moves the Court to compel Defendant to comply with Request No. 32, which seeks the production of call logs illustrating when Veterans

18

Guardian's employees directly called the VA. Defendant's inconsistent responses and lack of transparency have significantly obstructed the discovery process. Over the last five months, Defendant has repeatedly changed its positions regarding the requested discovery, providing conflicting answers at every step as described below. This pattern of behavior suggests a disingenuous approach to discovery, as Defendant appears to be strategically withholding information rather than engaging in a good-faith effort to provide complete and accurate responses.

On October 4, 2024, Defendant in its responses to Plaintiff's First RFPs asserted that it does not have responsive documents in response to Request No. 32. Notably, Defendant served no objections to Request No. 32.

However, on December 17, 2024, Ms. Johnson testified (to Plaintiffs' surprise given Defendant's response to Request No. 32) that she, along with 20 other employees in her department, have called the Department of Veterans Affairs, on behalf of a veteran, numerous times. Exhibit C, p. 191, ln. 12-19. Ms. Johnson confirmed that her telephone call log is available and will show at least one call that she placed directly to the VA (without the veteran present on the call) in December 2024. Exhibit C, P. 192, ln. 7-12.

In light of this revelation, on December 24, 2024, Plaintiffs sent a letter to Defendant highlighting the testimony of Ms. Johnson and formally requesting the production of responsive documents without further delay. Exhibit G. However, Defendant has continued to obstruct discovery by asserting, in a reply letter, that it

19

"would be unduly burdensome [to produce the requested discovery] where a sample of client files …would show the calls that relate to those clients." Exhibit H.

There are several problems with this response: First, Defendant did not assert this objection in its formal discovery responses served on October 4, 2024, and has thereby waived the burdensome objection entirely. Second, Defendant's burdensome position directly contradicts its prior position *that there were no responsive documents*. And third, Plaintiffs are not requesting that the Defendant manually review each call placed by its employees. Plaintiffs are simply seeking a copy of each employees' outbound call log to the VA's 1-800 number. In fact, to aid in the process, Plaintiffs' counsel, on the parties' final meet and confer zoom call on January 16, 2025, offered to have their expert generate the call logs. Defendant declined this invitation.

Fourth, Plaintiffs note that after all the above conflicting stances adopted by Defendant, Defendant's January 16, 2025, production consists of a call logs with over 200,000 outbound calls placed by the Defendant directly to the Department of Veterans Affairs, which directly conflicts with the positions Defendant has taken so far regarding call logs.

On January 28, 2025, the Defendant Amended its Response to Request Number 32 stating "Defendant produced responsive documents that it was able to obtain." *See* Exhibit D. Accordingly, Plaintiffs seek the intervention of this Court to compel Defendant to provide better responses to this Request and to produce all documents responsive to this Request.

The question of whether Veterans Guardian is directly communicating with the Department of Veterans Affairs ("VA") and the question of whether the VA, knowingly or unknowingly, is providing veterans' disability information directly to Veterans Guardian is relevant to whether Veterans Guardian is acting as an agent on behalf of veterans because if that is the case then veterans are surrendering a large percentage of their disability benefits in violation of the law. The Defendant's Eleventh Affirmative Defense asserts that it is not acting as an agent. However, whether or not Veterans Guardian places calls directly to the Department of Veterans Affairs is directly relevant to this disputed issue. The fact that these calls are made directly to Veterans Guardian is pertinent, as it could suggest a level of agency or representation that the Defendant seeks to deny. Defendant is clearly aware of the relevance and is deliberately avoiding production to shield information that may harm their case.

Accordingly, Plaintiffs request the intervention of this Court to compel a call log of all outbound calls placed by the Defendant to the Department of Veterans Affairs.

## V.      Conclusion

For the reasons discussed herein, Plaintiffs respectfully request that this Court compel Defendant Veterans Guardian to answer Plaintiffs' Request Nos. 1, 2, 20, 21, and 32, and Interrogatory No. 3 and produce responsive documents by February 14, 2025, award sanctions, and for all other relief the Court deems just and proper.

21

Date: January 31, 2025                    Respectfully submitted,

**VARNELL & WARWICK P.A.**
/s/ Brian W. Warwick
Brian W. Warwick; FBN: 0605573*
Janet R. Varnell; FBN: 0071072*
Christopher J. Brochu; FBN: 1013897*
Pamela G. Levinson; FBN: 538345*
400 N Ashley Drive, Suite 1900
Tampa, FL 33602
Telephone: (352) 753-8600
Facsimile: (352) 504-3301
*cbrochu@vandwlaw.com*
*jvarnell@vandwlaw.com*
*bwarwick@vandwlaw.com*
*plevinson@vandwlaw.com*

**BERGER MONTAGUE PC**
/s/ Jeffrey Osterwise
Jeff Osterwise; NC Bar No.: 39272
Shanon J. Carson*
Radha Nagamani Raghavan*
1818 Market Street
Philadelphia, PA 191013
Telephone: (215) 875-4656
Facsimile: (215) 875-4604
*josterwise@bm.net*
*scarson@bm.net*
*rraghavan@bm.net*

*Pro Hac Vice

*Appointed as Interim Lead Class Counsel for Plaintiffs and the Putative Class*

## CERTIFICATE OF WORD COUNT AND
## MEET AND CONFERRAL COMPLIANCE

I hereby certify pursuant to Local Rule 7.3(d)(1) of the Middle District of North Carolina, that the foregoing Brief complies with the 6,250 word limit according to the word processing system used to process this brief.

In addition, I hereby certify that the parties have held several meet and confer Zoom calls, exchanged dozens of emails, and exchanged several letters in their attempts to narrow this discovery dispute. After a diligent attempt to resolve their dispute, the parties were unable to reach an agreement. The parties held a discovery teleconference on January 16, 2025, which was attended by Christopher Brochu and Radha Raghavan for Plaintiffs and Caroline Wolverton for the Defendant. The parties discussed the Defendant's responses to Plaintiff's above-mentioned discovery requests, and the resolution was that the issues presented required briefing and court intervention.

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2025, a copy of the foregoing document was filed using CM/ECF which will serve an electronic copy on all counsel of record.

/s/ Brian W. Warwick
Brian W. Warwick

23