IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JENNIFER FORD, ERIC BEARD,          )
and BRIAN OTTERS, individually       )
and on behalf of all others similarly  )
situated,                            )
                                     )
                     Plaintiffs,     )
                                     )
        v.                           )          1:23-CV-756
                                     )
VETERANS GUARDIAN VA                 )
CLAIM CONSULTING, LLC,               )
                                     )
                     Defendant.      )

**<u>MEMORANDUM OPINION AND ORDER</u>**

Catherine C. Eagles, Chief District Judge.

Plaintiffs Jennifer Ford, Eric Beard, and Brian Otters are disabled military veterans who retained the defendant, Veterans Guardian VA Claim Consulting LLC, to assist them in obtaining or increasing their disability compensation. Federal law restricts those who may assist veterans in preparing, presenting, and prosecuting claims for benefits before the Veterans Administration to persons or entities meeting specific qualifications and accreditation requirements.

The plaintiffs contend that Guardian violates federal law by offering these services without accreditation and that it charges illegal fees in violation of the North Carolina Unfair and Deceptive Trade Practices Act and the North Carolina Debt Collection Act. The plaintiffs move for certification of three classes. Because the plaintiffs have satisfied the Rule 23 requirements for each class, the motion will be granted.

# I.     Facts As Alleged

Veterans may receive VA disability compensation, via a monthly payment, if they became sick or injured while serving in the military or if their service made an existing condition worse.  38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.4(a), (b)(1).  To receive these benefits, veterans must file a claim with the VA.  38 C.F.R. § 3.151(a).

Federal regulations provide that "[n]o individual may assist claimants in the preparation, presentation, and prosecution of claims for VA benefits as an agent or attorney unless he or she has first been accredited by VA for such purpose."  *Id*. § 14.629(b)(1).  Federal regulations govern and limit the services for which an accredited agent or attorney may charge fees and the amount of such fees.  *See id*. § 14.636.  By statute, charging a fee is prohibited in connection with the filing of an initial claim.  *See* 38 U.S.C. § 5904(c)(1).

Multiple veteran service organizations assist veterans in filing their disability claims without charge.  *See Arnesen v. Principi*, 300 F.3d 1353, 1360 (Fed. Cir. 2002) (citing *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 311 (1985)).  Many veterans use these free services to help with their initial claims, while others file their own initial claims.  If a claim is denied or if a veteran believes the initial claim disability rating is too low, they may seek further review of that decision.  Veterans may also seek an increase in their disability rating and, thus, an increase in their monthly benefits, if their service-related health problems worsen.  Some veterans continue through this process on their own, others use a veteran service organization, and still others use a for-profit VA accredited agent or attorney.

2

Guardian is not an accredited agent of the VA. It assists veterans in applying for disability compensation and for increases in compensation, and it charges five times the monthly compensation increase that its clients receive as a fee for its services. Doc. 52-1 at 9, 19, 29. This is substantially higher than fees an accredited agent can charge.

Ms. Ford suffered several service-connected injuries and secondary service-connected injuries because of her military service. Doc. 52 at ¶¶ 57–58. Before contacting Guardian, she received a 60% VA disability impairment rating. *Id*. at ¶ 60. In 2022, she contacted Guardian about filing a claim for additional benefits. *Id*. at ¶¶ 61–64. She signed a contract with Guardian. *Id*. at ¶ 65; Doc. 52-1 at 3–11. Guardian accessed her medical and military records, coordinated a private medical exam, and drafted and prepared her VA disability compensation claim with attachments. Doc. 52 at ¶¶ 66–69. Guardian continued working with her in compiling her claim packet, submitting her claim, and providing post-filing instructions for submitting additional materials. *Id*. at ¶¶ 69–81. She received a VA disability compensation increase of $360 per month, and pursuant to her contract with Guardian, it billed her $1,880. *Id*. at ¶¶ 82–83; Doc. 52-2 at 3–4. She paid Guardian $1,880 over multiple monthly payments. Doc. 52 at ¶ 84. She later worked with Guardian in a similar manner to file a second claim for increased benefits due to a different medical condition. *Id*. at ¶¶ 89–98. She received a monthly VA disability compensation increase of $300 a month, and pursuant to her contract with Guardian, it billed her $1,690. *Id*. at ¶¶ 99–100; Doc. 52-2 at 5–6. She paid Guardian $1,521 in one lump sum. Doc. 52 at ¶ 103.

3

Mr. Beard suffered from several service-connected injuries and secondary service-connected injuries because of his military service. *Id*. at ¶¶ 111–12. Unlike Ms. Ford, Mr. Beard had never filed a VA benefits claim before contacting Guardian around August 2022. *Id*. at ¶¶ 114–16. He signed a contract with Guardian. *Id*. at ¶ 120; Doc. 52-1 at 13–21. Guardian accessed his medical and military records, coordinated a private medical exam, and drafted and prepared his VA disability compensation claim with attachments. Doc. 52 at ¶¶ 121–25. Guardian continued working with him in compiling his claim packet, submitting his claim, and providing post-filing instructions for submitting additional materials. *Id*. at ¶¶ 125–32. He received VA disability compensation of $4,278.80 per month, and pursuant to his contract with Guardian, it billed him $21,360. *Id*. at ¶¶ 133–34; Doc. 52-2 at 8–9. He has paid Guardian over $19,000 in monthly installments, and Guardian contends he still owes it money on the contract. Doc. 52 at ¶ 135.

Mr. Otters suffered from several service-connected injuries and secondary service-connected injuries because of his military service. *Id*. at ¶¶ 138–39. In 2023, he contacted Guardian about filing a non-initial claim for additional benefits. *Id*. at ¶¶ 140–42. He signed a contract with Guardian. *Id*. at ¶ 144; Doc. 52-1 at 23–31. Guardian accessed his medical records and military records, coordinated a private medical exam, and drafted and prepared his VA disability compensation claim with attachments. Doc. 52 at ¶¶ 145–48. Guardian continued working with him in compiling his claim packet, submitting his claim, and providing post-filing instructions for submitting additional materials. *Id*. at ¶¶ 149–53. He received a 90% disability rating and VA disability

4

compensation of $599.33 per month, and, pursuant to his contract with Guardian, it billed him $2,990. *Id.* at ¶¶ 154, 157–58; Doc. 52-2 at 11–12. He paid Guardian $2,990 over multiple monthly payments. Doc. 52 at ¶ 159.

## II.     The Plaintiffs' Claims and Requested Classes

In 2023, Ms. Ford filed this putative class action, which was later consolidated with cases filed by Mr. Beard and Mr. Otters. Docs. 1, 44. The plaintiffs allege that Guardian acted as an agent in the preparation of their claims for veterans' benefits in violation of federal law, 38 U.S.C. § 5904. Doc. 52 at ¶¶ 35, 205.

In Counts I and II, the plaintiffs assert that Guardian's actions of charging fees and preparing claim packets without being accredited constitute *per se* unfair trade practices prohibited by the North Carolina Unfair Trade Practices Act ("UDTPA").[1] *Id.* at ¶¶ 187–289; Doc. 73 at 14–15. They contend that even if the actions are not *per se* unfair trade practices, its actions still constitute unfair trade practices. Doc. 52 at ¶¶ 187–289; Doc. 73 at 14–15. The plaintiffs request two classes for the UDTPA claims: those who used Guardian's services to prepare initial claims and those who used Guardian's services to prepare non-initial claims. Doc. 52 at ¶¶ 187–289; Doc. 73 at 14–15. Specifically, they propose the following classes:

> **(1) UDTPA Initial Claim Class**: All veterans who paid
> Veterans Guardian in connection with preparing an initial
> claim for VA Disability Compensation under a contract in
> substantially the same form as the Consulting Service

---

[1] The plaintiffs contend that North Carolina law applies based on the choice of law provision in their contracts with Guardian stating such. Doc. 52 at ¶¶ 177, 214; Doc. 52-1 at 11, 21, 31; Doc. 73 at 7, 14.

5

Agreement attached as Exhibit A to the Consolidated Complaint.

> **(2) UDTPA Non-Initial Claim Class**: All veterans who paid Veterans Guardian a fee in connection with preparing a non-initial claim for VA Disability Compensation under a contract in substantially the same form as the Consulting Service Agreement attached as Exhibit A to the Consolidated Complaint.

Doc. 70 at 1.

Under Count III, they assert that Guardian violated the North Carolina Debt Collection Act ("NCDCA") by sending invoices to collect its unlawful fees. They ask that a class be certified of people who paid Guardian after being sent an invoice for its services. Doc. 52 at ¶¶ 292–314; Doc. 73 at 16. Specifically, they propose the following class:

> **(3) NCDCA Class**: All veterans who paid money to Defendant after being sent an email invoice from Veterans Guardian in connection with a claim for VA Disability Compensation that is in substantially the same email invoice attached as Exhibit B to the Consolidated Complaint.

Doc. 100 at 17 (amending proposed class definition).

Guardian opposes certification of all three classes. Doc. 94. Each party filed briefs with evidentiary support, Docs. 73, 94, 100, and the motion is ripe for decision.

## III.    Class Certification

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (cleaned up). To qualify for the exception, the plaintiffs "must affirmatively demonstrate their compliance" with Federal Rule of Civil Procedure 23.

6

*1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 521 (4th Cir. 2022) (cleaned up).  District courts must rigorously assess the proffered evidence, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011), but they have "wide discretion" in evaluating whether the Rule 23 requirements have been met, in light of their experience and expertise in managing complex litigation.  *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 179 (4th Cir. 2010); *see Carolina Youth Action Project v. Wilson*, 60 F.4th 770, 780 (4th Cir. 2023); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 345 (1979) (noting that district courts "have broad power and discretion vested in them" as to the "certification and management of potentially cumbersome" class actions).

There are a number of requirements a plaintiff must meet to obtain class certification.  As a threshold requirement, the class representative must be a member of the class she seeks to represent.  The plaintiff must also meet the requirements of Rule 23(a):  numerosity, commonality, typicality, and adequacy of representation.  Finally, the plaintiff must meet one set of requirements under Rule 23(b).  Here, the plaintiffs proceed under Rule 23(b)(3) for all three classes, so they must show that the class members are readily identifiable and must meet the predominance and superiority requirements.

## IV. The Proposed UDTPA Classes

### A. Threshold Requirements

The proposed class representatives must be members of the proposed class.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997); *see also* Fed. R. Civ. P. 23(a). As noted *supra*, the proposed UDTPA classes consist of:

> **UDTPA Initial Claim Class**: All veterans who paid Veterans Guardian in connection with preparing an initial claim for VA Disability Compensation under a contract in substantially the same form as the Consulting Service Agreement attached as Exhibit A to the Consolidated Complaint.
>
> **UDTPA Non-Initial Claim Class**: All veterans who paid Veterans Guardian a fee in connection with preparing a non-initial claim for VA Disability Compensation under a contract in substantially the same form as the Consulting Service Agreement attached as Exhibit A to the Consolidated Complaint.

Doc. 70 at 1.

During the relevant time, Mr. Beard retained Guardian to assist him in obtaining VA disability compensation, signed a contract with Guardian, and paid for those services. Doc. 73-9 at 3–4, 6. He is thus a member of the UDTPA initial claim class, and Guardian does not contend otherwise. During the relevant time, Ms. Ford and Mr. Otters retained Guardian to assist in increasing their disability compensation, signed contracts for those services, and paid for those services. Doc. 73-8 at 3–4, 6, 8; Doc. 73-10 at 3–4, 6. Mr. Beard, Ms. Ford, and Mr. Otters all made their first payments to Guardian within the class period provided *infra* at pp. 24-25. *See* Doc. 73-8 at 3, 6, 8; Doc. 73-9 at 3, 6; Doc. 73-10 at 3, 6. They are thus members of the UDTPA non-initial claim class, and Guardian does not contend otherwise.

Plaintiffs pursuing class certification under Rule 23(b)(3) must also demonstrate that members of the class are readily identifiable or ascertainable. *Peters v. Aetna Inc.*, 2 F.4th 199, 241–42 (4th Cir. 2021). To be readily identifiable, plaintiffs need not be able to "identify every class member at the time of certification." *Krakauer v. Dish Network,*

*LLC* ("*Krakauer II*"), 925 F.3d 643, 658 (4th Cir. 2019) (cleaned up). Rather, a class need only be defined "in such a way as to ensure that there will be some administratively feasible way for the court to determine whether a particular individual is a member at some point." *Id.* (cleaned up).

The members of these putative classes are ascertainable. They can be identified based on the "objective criteria," *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014), of whether they signed written contracts with Guardian during the relevant period for either initial claims (for Class 1) or non-initial claims (for Class 2) of veterans' disability compensation and whether they paid Guardian in connection with those services. Guardian maintains records of its clients' names, contact information, contracts, claims, invoices, and payment amounts, Doc. 75-1; Doc. 75-2 at 237-38; Doc. 52-1; Doc. 55-3 at 23, so those qualifications for class membership can be readily determined through common records Guardian itself maintains.

### B. Rule 23(a) Requirements

#### 1. Numerosity

There are thousands of members in each putative UDTPA class. Doc. 75-1. Guardian does not dispute numerosity. Doc. 94 at 11 n.2.

Joinder of that many parties would be impracticable, raising the specter of many lawsuits. As these proceedings show, there have already been three different lawsuits in this court alone. Some class members would also be economically unmotivated to litigate their claims or face challenges doing so because of their disabilities. Doc. 73-8 at

8; Doc. 73-9 at 6; Doc. 73-10 at 6.  And judicial economy favors a class action over joinder.  *See In re Zetia (Ezetimibe) Antitrust Litig.*, 7 F.4th 227, 235 (4th Cir. 2021).

The plaintiffs have satisfied the numerosity requirement.

## 2. Commonality

To satisfy the commonality requirement, there must be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  To establish commonality, "the plaintiff [must] demonstrate that the class members have suffered the same injury."  *Wal-Mart*, 564 U.S. at 349–50 (cleaned up).  "Even a single common question will do," *id.* at 359 (cleaned up), "but it must be of such a nature that its determination will resolve an issue that is central to the validity of each one of the claims in one stroke."  *EQT*, 764 F.3d at 360 (cleaned up); *see also Carolina Youth*, 60 F.4th at 780 ("Commonality requires [that] an entire set of claims depend upon a common contention that is capable of classwide resolution." (cleaned up)).

The plaintiffs identify several common legal and factual questions that will drive the liability decision in the putative UDTPA classes.  Doc. 73 at 19–20. [2]  The key initial question for all three requested classes requires statutory interpretation to determine whether Guardian acts as an "agent" for the veterans who retain their services.  Among other key questions common to both UDTPA classes are:  (1) whether Guardian is acting

---

[2] "In a class action brought under Rule 23(b)(3), the commonality requirement of Rule 23(a)(2) is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class predominate over other questions."  *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 n.4 (4th Cir. 2001) (cleaned up); *accord Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006).  The common questions will be discussed in more detail *infra* in connection with the predominance requirement.

10

in violation of the accreditation statute when it prepares and presents claim packets to the VA in exchange for compensation as an unaccredited company; and (2) whether a violation of the accreditation statute constitutes a per se violation of the UDTPA. The plaintiffs have satisfied the commonality requirement for the UDTPA classes.

### 3. Typicality

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality requirement is met where the claims asserted by the named plaintiffs arise from the same course of conduct and are based on the same legal theories as the claims of the unnamed class members." *Tatum v. R.J. Reynolds Tobacco Co.*, 254 F.R.D. 59, 65 (M.D.N.C. 2008) (cleaned up). This requirement "goes to the heart of a representative parties' ability to represent a class," and the named plaintiff's interest in prosecuting its case "must simultaneously tend to advance the interests of the absent class members." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). The claims of the class representative and the claims of the class need not "be perfectly identical or perfectly aligned." *Id.* at 467.

As to the typicality requirement, all the class members allege the same injury: imposition of illegal fees by an unaccredited agent. The named plaintiffs each base their claims on violations of the UDTPA through violation of the federal accreditation statute. Doc. 52 at ¶¶ 188, 225; *see Lienhart*, 255 F.3d at 146 ("Typicality requires that the . . . class representative . . . be part of the class and possess the same interest and suffer the same injury as the class members." (cleaned up)). Guardian followed consistent

11

procedures with each of its clients in contracting with them and filing claims. *See* Docs. 52-1, 61, 73-8, 73-9, 73-10, 123. For example, the parties' joint stipulation states:

> each VA Claim Packet produced as part of the sampled client files was sent by Defendant to the respective client via email. Defendant confirms that the produced VA Claim Packet was attached to Defendant's email to each client stating that the VA claim is attached for the client's review. Defendant confirms this practice is standard for all Veterans Guardian clients during the Class Period.

Doc. 61 at 1.

The Claim Packet prepared for Mr. Beard is for an Initial Claim, and he can adequately represent all members of the UDTPA Initial Claim Class. Doc. 73-9 at 4–6. The Claim Packets prepared for Ms. Ford and Mr. Otters were for Non-Initial claims, and they can adequately represent the UDTPA Non-Initial Claim Class. Doc. 73-8 at 3–4; Doc. 73-10 at 3–4.

### 4. Adequacy of Representation

Rule 23(a) requires that the class representatives "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625; *accord Carolina Youth*, 60 F.4th at 780. It also serves to assess "competency and conflicts of class counsel." *Amchem*, 521 U.S. at 626 n.20; *accord Wal-Mart*, 564 U.S. at 349 n.5.

The plaintiffs have satisfied the adequacy requirement. Ms. Ford, Mr. Beard, and Mr. Otters have been active participants in this litigation. Each has assisted counsel in the litigation, provided declarations, and participated in depositions. Docs. 94-1, 94-2,

12

94-3; 73-8; 73-9; 73-10. They are motivated to pursue the case because each is directly affected by the alleged illegal fees they paid Guardian. *See* Docs. 73-8; 73-9; 73-10. Interim lead class counsel has adequately represented the class to date, complying with court-imposed deadlines and filing appropriate motions. The Court has independently reviewed the qualifications, experience, knowledge of the law, and resources of Plaintiffs' Counsel. They have extensive experience in consumer class litigation actions. *See* Docs. 51; 43-1; 43-2. Plaintiffs' Counsel's qualifications will be discussed in more detail *infra* at 26 when addressing appointment of class counsel.

Guardian asserts that the named plaintiffs are not adequate representatives because their interests may conflict with the interests of some putative class members who, it asserts, benefited from Guardian's services and want to use those services. Doc. 94 at 26–27. The argument that some class members would like to use those services, even if illegal, is not persuasive. *See Laumann v. Nat'l Hockey League*, 105 F. Supp. 3d 384, 404 (S.D.N.Y. 2015). "[I]t confuses the question of whether a common injury unites the class with the distinct question of whether all class members agree about how best to *respond* to the injury." *Id.* at 400; *see also Howell v. Advantage RN, LLC*, No. 17-CV-883, 2018 WL 3437123, at *7 (S.D. Cal. July 17, 2018) ("[The named plaintiff's] interest is in determining whether Defendant is employing an unlawful policy . . . . [She] is therefore an adequate representative."). And the broad freedom to contract does not include services that are illegal. *See Bicycle Transit Auth., Inc. v. Bell*, 314 N.C. 219, 228, 333 S.E.2d 299, 305 (1985). Any class member who does not want to participate in the class or receive any benefits from the class can opt out.

## C. Rule 23(b)(3) Requirements

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one . . . [that] is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (cleaned up). "[C]ommon issues of liability may still predominate even when some individualized inquiry is required." *Ealy v. Pinkerton Gov't Servs., Inc.*, 514 F. App'x 299, 305 (4th Cir. 2013); *see also Krakauer v. Dish Network L.L.C.* ("*Krakauer I*"), 311 F.R.D. 384, 399 (M.D.N.C. 2015) ("Predominance . . . does not require all issues to be common." (cleaned up)); *Gunnells v. Healthplan Servs. Inc.*, 348 F.3d 417, 429 (4th Cir. 2003) ("[T]he need for individualized proof of damages alone will *not* defeat class certification."). "Predominance applies to damages because the efficiencies of the class action mechanism would be negated if questions of individual damage calculations overwhelm questions common to the class," but "this does not mean that damages must be susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *In re Zetia*, 7 F.4th at 237 (cleaned up).

The superiority requirement looks at whether the class action "would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated." *Amchem*, 521 U.S. at 615 (cleaned up). Superiority reflects the policy at the core of class actions, which were designed to overcome the problem that "small recoveries do not provide the incentive for any individual to bring a solo action

14

prosecuting his or her rights." *Cal. Pub. Emps' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497, 513 (2017). Class actions address "this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Amchem*, 521 U.S. at 617 (cleaned up).

Rule 23(b)(3) provides a non-exclusive list of factors for courts to consider in deciding whether a class action meets the predominance and superiority requirements:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3); *accord Thorn*, 445 F.3d at 319.

### 1. Predominance

Courts look to the elements of the cause of action to decide if common questions of law and fact predominate. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). The elements of a UDTPA claim are: "(1) [the] defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Nobel v. Foxmoor Grp., LLC*, 380 N.C. 116, 120, 868 S.E.2d 30, 33 (2022); *accord Custer v. Dovenmuehle Mortg., Inc.*, No. 24-CV-306, 2024 WL 4528187, at *4 (M.D.N.C. Oct. 18, 2024).

Here, there is one overarching common question of fact and law: whether Guardian acts as an "agent." There are two more overarching common questions of law: (1) whether Guardian is acting in violation of the accreditation statute when it prepares

and presents claim packets to the VA in exchange for compensation as an unaccredited company; and (2) whether a violation of the accreditation statute constitutes a *per se* violation of the UDTPA. If the case goes to trial, whether the facts found by the jury constitute an unfair trade practice will be a common question of law. *See Fortson v. Garrison Prop. & Cas. Ins. Co.*, No. 19-CV-294, 2022 WL 198782, at *2 (M.D.N.C. Jan. 13, 2022).

These questions can be answered with common evidence of Guardian's processes for filing clients' claims (both initial and non-initial), working with clients, and billing clients. The evidence tends to show that Guardian follows uniform procedures and uses similar contracts with all its clients such that answers to these questions will be applicable to all putative class members. Docs. 52-1, 61, 73-8, 73-9, 73-10, 123. The case also has a common defense, because Guardian claims that it does not act as an agent for any client. Doc. 75-2 at 38–39, 73–75; *see e.g.*, Doc. 53 at ¶¶ 35, 121, 154.

Guardian identifies several individual issues that it contends defeat predominance. First, it points to the common law definition of agency and the need for individual determinations on agency. Doc. 94 at 13. But the plaintiffs' evidence shows that Guardian interacted with and worked for the putative class members in a uniform manner throughout the relationships based on its standard practices. Docs. 123, 61, 73-8, 73-9, 73-10. Guardian stipulates as much. Doc. 61. And the plaintiffs' theory is based on these common practices, not on proof that will vary from individual to individual. The standard practices bear on the central issues of the litigation: whether Guardian's actions of charging fees and preparing claim packets without being accredited constitutes a

16

UDTPA violation. *See EQT*, 764 F.3d at 366 (stating that common practices that bear on the central issue in the litigation support a finding of predominance).

Second, Guardian asserts that individual questions exist about whether the UDTPA applies to each putative class member. Doc. 94 at 16–17. It contends that North Carolina law will not govern the damages determination for out-of-state class members and that it is questionable such out of state class members can even assert a UDTPA claim. *Id*. at 17–19. Whether North Carolina law will apply is another common question. Should Guardian prevail on its argument that North Carolina law will not apply across the board, the Court can revisit whether to modify the class definition.[3]

Third, Guardian contends, relying on terms in the contracts with putative class members, that questions about whether the voluntary payment doctrine bars individual putative class members' damages defeat commonality and predominance. *Id*. at 19–22. "Under the North Carolina doctrine of voluntary payment, a payment cannot be recovered if it is voluntarily made by a person with full knowledge of all facts relevant to the payment." *Boydell v. Wells Fargo Bank, N.A.*, 12-CV-35, 2013 WL 5462255, at *1 (W.D.N.C. Sept. 30, 2013). The doctrine serves as an affirmative defense. *Id*. But Guardian does not explain how the evidence might differ from class member to class

---

[3] As the plaintiffs point out, the choice of law provision in the contracts at issue is broad. Moreover, Guardian has relied on terms in the contracts in its defenses and yet it now is saying the terms of the contract do not matter. At some point, Guardian will have to choose whether to rely on the contract terms or not. *Am. Bankers Ins. Grp., Inc. v. Long*, 453 F.3d 623, 627 (4th Cir. 2006) ("Equitable estoppel rests on a simple proposition: it is unfair for a party to rely on a contract when it works to its advantage, and repudiate it when it works to its disadvantage.") (cleaned up).

member and, as already discussed, the contracts included the same language and the interactions between Guardian and its clients followed the same standard practices. Docs. 52-1, 73-8, 73-9, 73-10. It seems likely that this will also raise a common question of fact or law, not a raft of individual issues.

Fourth, Guardian contends that calculating damages will require a complicated economic analysis that will significantly differ for each class member. Doc. 94 at 22–24. But that argument assumes the Court will reject the plaintiffs' proposed method of damage calculation, by which a class member's damages would be the amount the class member paid or was obligated to pay Guardian. That is a straightforward and simple formula that is unlikely to raise many individual disputes. *See Gunnells*, 348 F.3d at 429; *Ward*, 595 F.3d at 180 (affirming class certification despite some individual damages inquiries when "the formula for damages was identical for all class members"). Whether the plaintiffs' method of calculating damages is appropriate is another common question. Even if the Court were to find the plaintiffs' proposed method of calculating damages inappropriate, that does not mean that Guardian's complicated counter-proposal is the only alternative. Actual damages need not be proven with mathematical certainty, *Ridley v. Wendel*, 251 N.C. App. 452, 460, 795 S.E.2d 807, 814 (2016) (cleaned up), and there are several uncomplicated class-wide possibilities for damage calculation that occur to the Court. Any individual questions arising from the determination of damages can likely be managed.

The plaintiffs have satisfied the predominance requirement.

18

## 2.  Superiority

A class action is the superior method to resolve the plaintiffs' UDTPA claims.  The type of injury the putative class members allegedly suffered is not a personal injury or death of a loved one, where a plaintiff will ordinarily have "a substantial stake in making individual decisions on whether and when to settle."  *Amchem*, 521 U.S. at 616.  Here, "the class members likely have little interest in controlling the litigation."  *See Krakauer I*, 311 F.R.D. at 400.

Given the large number of class members, class-wide adjudication will be more efficient.  *See Gunnells*, 348 F.3d at 432–33; *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004).  Adjudicating these claims in one forum will provide flexibility, control, and consistency that would not exist with individual litigation.  *See* Fed. R. Civ. P. 23(b)(3)(C); *Gunnells*, 348 F.3d at 425, 433.  And, as discussed *supra*, the potential individual issues do not present great difficulties in managing the class.  *See* Fed. R. Civ. P. 23(b)(3)(D).

Absent a class action, each veteran who paid Guardian and wanted to challenge its fees must bring an individual case or be joined in this action.  These options are onerous, inefficient, and a waste of court resources.  A class action will allow finality for all members of the UDTPA classes.  Guardian also benefits, because without class certification it faces the possibility of conflicting verdicts on what is essentially the same issue.

Guardian does not raise any new superiority objections, instead contending that its commonality and predominance objections on individual issues also show a lack of

19

superiority.  Doc. 94 at 24–25.  As already discussed, individual questions do not predominate.

The Court has overseen many class actions.  As these cases go, this one is pretty simple.  It has discrete dispositive common questions, and many of those questions are likely to be resolved at summary judgment.  If and when individual questions arise, it is likely they can be managed fairly and efficiently.

The plaintiffs have satisfied the superiority requirement.

## V.      The Proposed NCDCA Class

### A. Threshold Requirements

As noted *supra*, the proposed NCDCA class consists of:

> **NCDCA Class**: All veterans who paid money to Defendant after being sent an email invoice from Veterans Guardian in connection with a claim for VA Disability Compensation that is in substantially the same email invoice attached as Exhibit B to the Consolidated Complaint.

Doc. 100 at 17 (amending proposed class definition).

During the relevant time, Ms. Ford, Mr. Beard, and Mr. Otters received invoices demanding payment for Guardian's services, and they each paid Guardian some of the amount owed.  Doc. 52-2; Doc. 73-8 at 6, 8; Doc. 73-9 at 6–7; Doc. 73-10 at 6–7.  Guardian sent Mr. Beard, Ms. Ford, and Mr. Otters at least one invoice during the class period provided below.  *See* Doc. 52-2.  The plaintiffs are all members of the NCDCA class, and Guardian does not contend otherwise.

The members of this putative class are ascertainable.  They can be identified based on the "objective criteria," *EQT*, 764 F.3d at 358, of whether they were billed and then

20

paid at least a portion of the amount assed by Guardian for its services in on their claims of VA disability compensation. Guardian maintains records of its clients' names, contact information, contracts, claims, invoices, and payment amounts, Doc. 75-1; Doc. 75-2 at 237-38; Doc. 52-1; Doc. 55-3 at 23, so those qualifications for class membership can be readily determined through common records Guardian itself maintains.

Guardian contends that the original proposed NCDCA class includes members who lack Article III standing, because putative class members who have not made any payment lack a concrete injury. Doc. 94 at 28. But the plaintiffs have revised their proposed NCDCA class definition to solve this potential problem, and the proposed class now includes only those who have paid Guardian money. That change removes any Article III standing concern. Doc. 100 at 17.

### B. Rule 23(a) Requirements

#### 1. Numerosity

There are thousands of members of the putative NCDCA class. Doc. 75-1. Guardian does not dispute numerosity. Doc. 94 at 11 n.2.

Joinder of that many parties would be impracticable, raising the specter of many lawsuits with individuals asserting different claims under different state or even federal laws. Many class members would also be economically unmotivated to litigate their claims or face challenges doing so because of their disabilities. Doc. 73-8 at 8; Doc. 73-9 at 6; Doc. 73-10 at 6. And judicial economy favors a class action over joinder. *See In re Zetia*, 7 F.4th at 235.

The plaintiffs have satisfied the numerosity requirement.

21

### 2. Commonality

The plaintiffs identify several common questions that will drive the liability decision in the putative NCDCA class.  Doc. 73 at 20, 23.  Just as with the UDTPA classes, the key initial question requires statutory interpretation to determine whether Guardian acts as an "agent" and thus must be accredited.  If Guardian is an agent, another common question follows:  whether invoicing and collecting fees that violate the Accreditation Statute constitutes a violation of the NCDCA.[4]  The plaintiffs have satisfied the commonality requirement for the NCDCA class.

### 3. Typicality

All the class members have the same injury:  imposition of illegal fees by an unaccredited agent.  The named plaintiffs each base their claims on violations of the NCDCA through violation of the federal accreditation statute.  Doc. 52 at ¶ 303; *see Lienhart*, 255 F.3d at 146.  Guardian followed consistent procedures with each of its clients in billing them for the services.  *See* docs. 52-2, 61, 73-8, 73-9, 73-10, 123.  Ms. Ford, Mr. Beard, and Mr. Otters each received invoices in the same manner and paid Guardian at least some amount of money, and they can adequately represent all members of the NCDCA Class.  Doc. 52-2; Doc. 73-8 at 6–9; Doc. 73-9 at 6–7; Doc. 73-10 at 6–7.

### 4. Adequacy of Representation

The plaintiffs and their lawyers are adequate to represent the putative NCDCA class for the reasons discussed above.  *See* discussion *supra* at 12–13.

---

[4] For the reasons stated in note 2, the common questions will be discussed in more detail *infra* in connection with the predominance requirement.

## C. Rule 23(b)(3) Requirements

### 1. Predominance

"All NCDCA claims require: (1) a consumer; (2) that owes a debt; (3) to a debt collector." *Onnipauper LLC v. Dunston*, 290 N.C. App. 486, 490, 892 S.E.2d 487, 491 (2023). The plaintiff must then establish the three general requirements for a Chapter 75 claim: "(1) an unfair act (2) in or affecting commerce (3) proximately causing injury." *Davis Lake Cmty. Ass'n v. Feldmann*, 138 N.C. App. 292, 296, 530 S.E.2d 865, 868 (2000); *see* N.C. Gen. Stat. § 75-1.1.

Here, there are two overarching common questions of law: (1) whether Guardian acts as an "agent," and thus must be accredited to legally act for veterans, and (2) whether the action of invoicing and collecting fees that violate the Accreditation Statute constitutes a violation of the NCDCA.

The first question is the same question that must be asked and answered in connection with the UDTPA claims and will be answered with common evidence. *See* discussion *infra*. So too is the second question: the evidence tends to show that Guardian follows uniform procedures and uses similar invoices with all its clients such that answers to these questions will be applicable to all putative class members. Docs. 52-2, 73-8, 73-9, 73-10. If one veteran is a consumer that owes a debt to a debt collector, that answer will be the same for other veterans in the class. The case also has a common defense, because Guardian claims it does not act as an agent for any client. Doc. 75-2 at 38–39, 73–75; *see e.g.*, Doc. 53 at ¶¶ 35, 121, 154. Plaintiffs' request for statutory

damages under the NCDCA also supports predominance. Doc. 52 at ¶ 314; N.C. Gen. Stat. § 75-56(b); *Krakauer II*, 925 F.3d at 658.

Guardian makes the same arguments against commonality and predominance for the NCDCA claim as they do for the UDTPA claim. Those arguments are not persuasive for the reasons outlined above.

The plaintiffs have satisfied the predominance requirement.

### 2. Superiority

The plaintiffs have satisfied the superiority requirement on the NCDCA class for the same reasons discussed in connection with the UDTPA claim.

### VI. Class Definitions

The plaintiffs' proposed class definitions did not include class periods with beginning and ending dates. *See* Doc. 70 at 1; Doc. 100 at 17. The Court issued a text order directing the parties to meet and confer about appropriate modifications to the class definitions to include dates clarifying the class period in consideration of the statute of limitations. Text Order 11/21/2025.

The parties submitted amended class definitions agreeing on the language except as to the class period end-date. The parties agree that the four-year statute of limitations applies to both the NCDCA and UDTPA claims and thus to the claims asserted by all three classes. Doc. 129 at 3; Doc. 130 at 2–3; *see also* N.C. Gen. Stat. § 75-16.2. Thus they agree that the classes should include persons who made payments to Guardian on or after August 23, 2019, four years before the filing of the first complaint by Mr. Otters.

24

Doc. 129 at 3; Doc. 130 at 2–3; *see also Patterson v. Veterans Guardian VA Claim Consulting, LLC*, No. 23-CV-762, Doc. 1-1 at 2.

The parties disagree on the end date. The plaintiff suggests the date the Court enters the order approving class notice. Doc. 129 at 2. Guardian suggests the date the Court enters the order granting class certification. Doc. 130 at 3.

The class period end date will be the date the Court enters the order approving class notice because that date will include a larger group of those allegedly harmed and will make it less likely another lawsuit is filed. "Terminating a class period on the date of class notice is a common approach." *Heredia v. Sunrise Senior Living, LLC*, No. 18-CV-1974, 2024 WL 6910417, at *1 (C.D. Cal Feb. 12, 2024) (collecting cases).

The Court will certify the following classes:

> **(1) UDTPA Initial Claim Class**: All veterans who made their first payment to Veterans Guardian in connection with an initial claim for VA Disability Compensation under a consulting contract substantially similar to Exhibit A to the Consolidated Complaint between August 23, 2019, and the date of this Court's order approving class notice.

> **(2) UDTPA Non-Initial Claim Class**: All veterans who made their first payment to Veterans Guardian in connection with a non-initial claim for VA Disability Compensation under a consulting contract substantially similar to Exhibit A to the Consolidated Complaint between August 23, 2019, and the date of this Court's order approving class notice.

> **(3) NCDCA Class**: All veterans who, between August 23, 2019, and the date of this Court's order approving class notice, were sent an invoice by Veterans Guardian in connection with a claim for VA Disability Compensation in substantially the same form as Exhibit B to the Consolidated Complaint and who made a payment to Veterans Guardian.

25

## VII. Appointment of Class Representatives and Class Counsel

The plaintiffs move to be appointed as class representatives, and they move for appointment of the interim lead class counsel as class counsel. Doc. 70 at 2. As stated *supra* at 8, 12–13, Mr. Beard is an adequate representative of the UDTPA initial claim class, and Ms. Ford and Mr. Otters are adequate representatives of the UDTPA non-initial claim class. And, as stated *supra* at 22, all three plaintiffs are adequate representatives of the NCDCA class. Mr. Beard will be appointed class representative of the UDTPA initial claim class, Ms. Ford and Mr. Otters will be appointed class representatives of the UDTPA non-initial claim class, and all three plaintiffs will be appointed representatives of the NCDCA class.

Plaintiffs' interim lead class counsel, attorneys with Varnell & Warwick P.A. and Berger Montague PC, are adequate representatives of the classes and are capable of proceeding as class counsel. Mr. Otters and his individual counsel make no argument to the contrary. Guardian makes no argument to the contrary. Plaintiffs' interim lead class counsel have extensive experience in consumer class actions, Doc. 51 at 3; Doc. 43-1 at 42-43, Doc. 43-2 at 4–8, and several among them have served as class counsel in other cases in federal courts. *See* Doc. 43-1 at 42-43, Doc. 43-2 at 4, 7–8. The Court will appoint Plaintiffs' interim lead class counsel as class counsel for all three classes.

## VIII. Conclusion

In its discretion, the Court will certify the three classes with the added class period dates. Mr. Beard Ms. Ford, and Mr. Otters have met the threshold requirements. All three classes are sufficiently numerous, and there are common questions likely to be

26

dispositive. The plaintiffs' claims are typical of those of the class members, and they and their counsel are adequate representatives. In all three classes, common questions predominate, and a class action is the superior method of adjudication. Mr. Beard will be appointed class representative of the UDTPA initial claim class, Ms. Ford and Mr. Otters will be appointed class representatives of the UDTPA non-initial claim class, and all three plaintiffs will be appointed representatives of the NCDCA class. Plaintiffs' interim lead class counsel will be appointed as class counsel for all three classes.

It is **ORDERED** that:

1. The plaintiffs' motion for class certification, Doc. 70, is **GRANTED**.

2. The following classes are **CERTIFIED**:

   a. **UDTPA Initial Claim Class**: All veterans who made their first payment to Veterans Guardian in connection with an initial claim for VA Disability Compensation under a consulting contract substantially similar to Exhibit A to the Consolidated Complaint between August 23, 2019, and the date of this Court's order approving class notice.

   b. **UDTPA Non-Initial Claim Class**: All veterans who made their first payment to Veterans Guardian in connection with a non-initial claim for VA Disability Compensation under a consulting contract substantially similar to Exhibit A to the Consolidated Complaint between August 23, 2019, and the date of this Court's order approving class notice.

   c. **NCDCA Class**: All veterans who, between August 23, 2019, and the date of this Court's order approving class notice, were sent an invoice by Veterans Guardian in connection with a claim for VA Disability Compensation in substantially the same form as Exhibit B to the Consolidated Complaint and who made a payment to Veterans Guardian.

27

3. Eric Beard is **APPOINTED** class representative of the initial UDTPA claim class.

4. Jennifer Ford and Brian Otters are **APPOINTED** class representatives of the non-initial UDTPA claim class.

5. Jennifer Ford, Eric Beard, and Brian Otters are **APPOINTED** class representatives of the NCDCA class.

6. Plaintiffs' interim lead class counsel, Christopher J. Brochu, Brian W. Warwick, Janet R. Varnell, Pamela G. Levinson, and Varnell & Warwick P.A. and Jeff Osterwise, Shanon J. Carson, Radha Nagamani Raghavan, and Berger Montague PC are **APPOINTED** as class counsel for all three classes.

7. The parties **SHALL** meet and confer about an appropriate class notice, any needed modifications to the trial schedule, and any other logistical or housekeeping matters raised as a result of this Order. No later than January 15, 2026, the parties **SHALL** file a Joint Submission on Class Notice and Trial containing their joint proposal or, if they do not agree in full, dueling proposals with short briefs directed to items of disagreement.

This the 30th day of December, 2025.

UNITED STATES DISTRICT JUDGE