| | | |
|---|---|---|
| JENNIFER FORD, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:23cv756 |
| | ) | |
| VETERANS GUARDIAN VA CLAIM | ) | |
| CONSULTING, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on Plaintiffs' "Motion to Seal" (Docket Entry 68) (the "Motion"). For the reasons that follow, the Court will grant in part and deny in part the Motion.

## BACKGROUND

Plaintiffs Jennifer Ford, Brian Otters, and Eric Beard (collectively, the "Plaintiffs") move to seal Plaintiffs' motion for leave to amend a consolidated class-action complaint (Docket Entry 77) (the "Amendment Motion") and supporting documents, including: Plaintiffs' proposed amended complaint (Docket Entry 77-1), Plaintiffs' memorandum supporting the Amendment Motion (Docket Entry 78), and an accompanying deposition transcript (Docket Entry 78-1).

Although Plaintiffs filed the Motion, Defendant Veterans Guardian VA Claim Consulting, LLC (the "Defendant") asserts confidentiality. (See, e.g., Docket Entry 68 at 2 ("Plaintiffs are not the designating party claiming confidentiality and do not

support [ ] Defendant's assertions that the materials are confidential.").)[1]  Those assertions principally concern the purportedly confidential deposition testimony of Defendant's co-owner, William Taylor ("Taylor"), and apply to the Amendment Motion and its supporting documents to the extent those materials quote or rely on Taylor's testimony.  (<u>See</u> Docket Entry 80 at 1-2.)

More specifically, Defendant "agrees with Plaintiffs' proposed redactions [to] the[ Amendment] Motion" (<u>id.</u> at 2; <u>see also</u> Docket Entry 77, ¶¶ 3-4 (highlighting proposed redactions)), offers narrowed redactions as to (A) Plaintiffs' proposed amended complaint (<u>compare</u> Docket Entry 77-1, <u>with</u> Docket Entry 81-2), (B) the Amendment Motion's supporting memorandum (<u>compare</u> Docket Entry 78, <u>with</u> Docket Entry 81-1), and (C) Taylor's deposition transcript (<u>compare</u> Docket Entry 78-1, <u>with</u> Docket Entry 81-3), and urges the Court to grant the Motion "to prevent competitive and financial harm to [Defendant] and personal harm to its owners" (Docket Entry 80 at 2; <u>see also</u> Docket Entry 81, ¶¶ 6-15)).  Plaintiffs oppose the Motion.  (<u>See</u> Docket Entry 89.)[2]

---

1  Docket Entry page citations utilize the CM/ECF footer's pagination.

2  Plaintiffs later made another filing (<u>see</u> Docket Entry 93 (replying to Defendant's response to the Amendment Motion)) and invoked the Motion as an existing basis to file that document under temporary seal, rather than filing a separate motion to seal pursuant to this Court's Local Rules, <u>see</u> M.D.N.C. LR 5.4(c)(2) (requiring motion to seal each time "party seeks to file documents or portions of documents under seal").  Defendant did not respond.
(continued...)

2

**DISCUSSION**

## I.  Relevant Standards

"[T]he courts of this country recognize a general right to inspect and copy . . . judicial records and documents."  <u>Nixon v. Warner Commc'ns, Inc.</u>, 435 U.S. 589, 597 (1978).  "The right of public access to documents or materials filed in a district court derives from two independent sources:  the common law and the First Amendment."  <u>Virginia Dep't of State Police v. Washington Post</u>, 386 F.3d 567, 575 (4th Cir. 2004).  "While the common law presumption in favor of access attaches to all 'judicial records and documents,' the First Amendment guarantee of access has been extended only to particular judicial records and documents."  <u>Stone v. University of Md. Med. Sys. Corp.</u>, 855 F.2d 178, 180 (4th Cir. 1988) (internal citation omitted) (quoting <u>Nixon</u>, 435 U.S. at 597).  Under the First Amendment, "access [to judicial records] may be restricted only if closure is necessitated by a compelling government interest and the denial of access is narrowly tailored to serve that interest."  <u>Doe v. Public Citizen</u>, 749 F.3d 246, 266 (4th Cir. 2014) (internal quotation marks omitted).  In turn, the common-law "presumption [of access] can be rebutted only by showing

---

2(...continued)
(<u>See</u> Docket Entries dated June 20, 2025, to present.) Because the subsequent filing contains the same purportedly confidential information as the materials Plaintiffs (then-properly) submitted with the Motion, the Court's decision on the Motion also resolves the sealing status of the subsequent filing.

3

that countervailing interests heavily outweigh the public interests in access." Id. (internal quotation marks omitted). Under either standard, "[t]he burden of establishing that a particular document should be sealed rests on the party promoting the denial of access." United States v. Moussaoui, 65 F. App'x 881, 889 (4th Cir. 2003).[3]

"Although the Fourth Circuit has yet to clarify whether First Amendment access rights apply to documents submitted with motions to amend a pleading," Rahman v. Wells Fargo Bank, N.A., No. 1:24cv333, 2025 WL 1919344, at *6 (M.D.N.C. July 11, 2025), "'district courts in this circuit tend to apply the common law right of access, rather than the First Amendment right of access, to motions to amend a pleading and supporting documents,'" id. (brackets omitted) (quoting Natera, Inc. v. NeoGenomics Lab'ys, Inc., No. 1:23cv629, 2024 WL 5245586, at *1 (M.D.N.C. Dec. 18, 2024). See also id. (collecting cases).

Whether "the public's [common law] right of access is outweighed by competing interests" depends on several factors, "includ[ing] whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business

---

3  This legal framework also "applies to requests by a party to file a redacted document, i.e., a document sealed in part." Mr. Dee's Inc. v. Inmar, Inc., No. 1:19cv141, 2021 WL 3809256, at *2 (M.D.N.C. Aug. 26, 2021). "The interest of the public in the flow of information is protected by [the Court's] exercis[e of] independent judgment concerning redactions." Moussaoui, 65 F. App'x at 888.

4

advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records." In re Knight Publ'g Co., 743 F.2d 231, 235 (4th Cir. 1984). To that last factor, the Court cannot seal "information [that] has already become a matter of public knowledge because . . ., once announced to the world, the information los[es] its secret characteristic." Washington Post, 386 F.3d at 579 (internal brackets and quotation marks omitted); see also New v. Thermo Fisher Sci., Inc., No. 1:19cv807, 2021 WL 4593986, at *7 (M.D.N.C. Oct. 6, 2021) (denying motion to seal as to "information that appears elsewhere on the public docket or that the parties revealed at [a public h]earing").

Moreover, "the right of public access, whether arising under the First Amendment or the common law, may be abrogated only in unusual circumstances." Public Citizen, 749 F.3d at 266 (internal quotation marks omitted). As the Fourth Circuit has explained, "public access promotes not only the public's interest in monitoring the functioning of the courts but also the integrity of the judiciary," as it "serves to promote trustworthiness of the judicial process . . . and to provide the public with a more complete understanding of the judicial system, including a better perception of fairness." Id. (internal quotation marks omitted); see also id. ("The political branches of government claim

5

legitimacy by election, judges by reason. Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like a fiat and requires rigorous justification." (internal quotation marks omitted)). Therefore, as a "[g]eneral[ matter], courts have been hesitant to seal or redact information that will 'play a role in the adjudicative process or adjudicate substantive rights.'" Russe v. United States, No. 1:20cv92, 2022 WL 11965612, at *4 (W.D.N.C. Oct. 20, 2022) (quoting In re U.S. for an Order Pursuant to 18 U.S.C. Section 2703(D), 707 F.3d 283, 290 (4th Cir. 2013)); see also, e.g., Scott v. City of Durham, No. 1:20cv558, 2022 WL 767557, at *2 (M.D.N.C. Mar. 14, 2022) (explaining that, in evaluating sealing request, "the court also considers whether the public needs access to the materials to understand a judicial decision").

"When presented with a request to seal judicial records," the Court "must give the public notice of the request to seal and a reasonable opportunity to challenge the request." Washington Post, 386 F.3d at 576. Then, "it must consider less drastic alternatives to sealing." Id. Finally, "if it decides to seal[,] it must state the reasons (and specific supporting findings) for its decision and the reasons for rejecting alternatives to sealing." Id.

"Adherence to this procedure serves to ensure that the decision to seal materials will not be made lightly and that it will be subject to meaningful appellate review." Id. This

6

approach also reflects the reality that "[t]he operations of the courts and the judicial conduct of judges are matters of utmost public concern," <u>Landmark Commc'ns, Inc. v. Virginia</u>, 435 U.S. 829, 839 (1978), as well as that "the public's business is best done in public," <u>Cochran v. Volvo Grp. N. Am., LLC</u>, 931 F. Supp. 2d 725, 727 (M.D.N.C. 2013).

## II. Analysis

### A. Preliminary Matters

The Motion has remained on the public docket since its filing in May 2025, with no objections filed thereto. (<u>See</u> Docket Entries dated May 15, 2025, to present.) Thus, the Court deems the initial procedural step for sealing satisfied, as all interested persons have received "notice of the request to seal and a reasonable opportunity to challenge the request," <u>Washington Post</u>, 386 F.3d at 576.

The record, however, reveals a different procedural problem. As noted above, Defendant's request for sealing arises from Plaintiffs' use of Taylor's deposition testimony. (<u>See</u> Docket Entry 80 at 1-2.) When Plaintiffs filed the Motion, they represented that they would attach "<u>excerpts</u> from [Taylor's] deposition transcript" (Docket Entry 68 at 2 (emphasis added)); yet, Plaintiffs filed (A) a placeholder for the deposition transcript (<u>see</u> Docket Entry 67-1) and (B) the entirety of the 395-

7

page deposition transcript under temporary seal (see Docket Entry 78-1).

Aside from ignoring their own, stated course of conduct (see Docket Entry 68 at 2), Plaintiffs failed to comply with clear instructions from the Court (per Chief United States District Judge Catherine C. Eagles) to "proffer[] deposition testimony . . . [by] sumbit[ting] relevant excerpts" (Docket Entry 29 at 1 (emphasis added)), along with this Court's Local Rules, see M.D.N.C. LR 7.1(c) ("Bulky or voluminous materials should not be submitted for filing . . . unless such materials are essential."). Therefore, the Court (per the undersigned) will (A) "order [Docket Entry 78-1] stricken," id.; see also Six v. Generations Fed. Credit Union, 891 F.3d 508, 519 (4th Cir. 2018) (noting district courts' "certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases" (internal quotation marks omitted)), and (B) will direct Plaintiffs to provide the Clerk's Office with a substitute filing containing excerpts of the transcript — subject to redactions detailed below — and consisting of the following, apparently relevant pages: 2, 8, 19-23, 29, 38-42, 45-54, 103-04, 109, 171, 205-08, 228-31, 235-37, 246-51, 253-54, 267-69, 275, 282, 287-88, 293-99, 306-08.[4]

---

4  Portions of page 235 (lines 1-11) and page 306 (lines 1-8, 10-11) contain information marked confidential but irrelevant to
(continued...)

8

## B. Defendant's Sealing Requests

Turning to matters of substance, Defendant seeks the sealing of "confidential business information" (Docket Entry 80 at 1). "Sealing confidential business records may be appropriate absent an improper purpose and countervailing interests." United Therapeutics Corp. v. Liquidia Techs., Inc., No. 1:25cv368, 2025 WL 3171207, at *2 (M.D.N.C. Nov. 13, 2025). However, the "bare contention that [records] . . . constitute sensitive and confidential business information does not suffice," Trustees of Purdue Univ. v. Wolfspeed, Inc., No. 1:21cv840, 2023 WL 2776193, at *2 (M.D.N.C. Feb. 28, 2023) (internal brackets, quotation marks, and parenthetical omitted); instead, the party maintaining confidentiality must "provid[e] specific underlying reasons for [this C]ourt to understand how [Defendant's interests] . . . reasonably could be affected by the release of such information," Washington Post, 386 F.3d at 579.

In support of its sealing requests, Defendant offers a sworn declaration (see Docket Entry 81 (the "Declaration")) from its chief of staff, who attests to its confidentiality claims (see id., ¶¶ 1-15).[5] As relevant to the Motion, the Declaration states:

---

4(...continued)
the Motion. As such, this Court's Local Rules mandate the redaction of those lines from the compiled excerpts. See M.D.N.C. LR 5.4(a)(3).

5 Defendant purported to file the Declaration under seal (see (continued...)

9

After reviewing [the Amendment Motion] and the corresponding exhibits, I can confirm that they contain sensitive, non-public information about [Defendant's] business operations.

Plaintiffs' proposed redactions in the[ Amendment] Motion . . . cover the confidential information in that document. However, Plaintiffs' proposed redactions in the remaining documents cover both confidential and non-confidential information. . . .

The information in these documents that [Defendant] considers confidential consists of: [its] corporate structure, the percentages of individual ownership interests in the [c]ompany, the owners' capital contributions, [Defendant's] revenues and profits, and the earned income of [its] owners.

All of the information in these categories is non-public, proprietary, and sensitive. [Defendant] keeps it confidential and discloses it only to persons with a need to know.

If this information were disclosed to the public, it would put [Defendant] at a competitive disadvantage — competitors would have insight into key aspects of [its] business operations. This is significant because multiple other companies operate in the space of assisting veterans through the [U.S. Department of Veterans Affairs] disability claims process.

Over the years, [Defendant] has secured its position at the forefront of the industry by refining its processes and policies, its corporate structure and investments, and its goals for future growth. Public disclosure of this information would undercut [Defendant's] present competitive advantage.

In addition, competitors and others who accuse [Defendant] of operating illegally might use this information in an effort to publicly defame [it].

---

5(...continued)
Docket Entry 81) without arguing why it warrants sealing (see generally Docket Entry 80). Because none of the information Defendant seeks to seal appears in the Declaration, the Court will order the Declaration unsealed.

10

If [Defendant's] private financial data were released, competitors also would be able to track their financial data against [Defendant's], without [Defendant] having the same opportunity to do so in return.

As for information about [Defendant's] individual owners, including their ownership percentages and earned income, [Defendant] has a strong interest in protecting their personal privacy, safety, and security. Because [Defendant] is not a public company, it does not disclose details about ownership percentages and the owners' earned income. Disclosing that information could subject the owners to unwanted solicitations, whether financial, professional, political, or otherwise.

Most troubling is that disclosure could jeopardize the owners' safety and security. Nefarious actors frequently target successful, high-profile individuals for violent or fraudulent schemes, such as blackmail and extortion. . . . Additionally, disclosure could put the owners at risk for [sic] the ever-increasing violence directed at wealthy corporate leaders . . . . The owners could also be vulnerable to politically motivated violence given their political leanings and campaign contributions.

(Docket Entry 81, ¶¶ 6-15 (paragraph numbering omitted).)

As the Declaration notes, Defendant asks the Court to seal information pertaining to (i) the earned income of its owners; (ii) the proportion of their ownership interests; (iii) Defendant's revenue and profits; and (iv) the existence of any capital contributions. (See Docket Entry 81, ¶ 8; see also Docket Entry 80 at 1-2, 4, 8-16.) The Court addresses each category in turn.

### 1. Earned Income

Defendant contends that "information regarding the earned income of [its] owners has minimal relevance to Plaintiffs' proposed amended claims" (Docket Entry 80 at 12) and that its

11

disclosure would unnecessarily risk its owners' "privacy, safety, and security interests" (id. at 13; see also Docket Entry 81, ¶¶ 14-15). Characterizing the figures as "ballpark estimate[s]" (Docket Entry 89 at 11), Plaintiffs ask the Court to unseal the information to inform class members of "how much [Defendant's] owners made from [the alleged] scheme . . . and how much remains outstanding" (id. at 12), and because they suspect that the information might "become relevant [to] the public . . . should Defendant argue that there are insufficient funds to compensate the [c]lass" (id. at 11).

Having reviewed the information regarding the earned income of Defendant's owners — which appears in each of the documents pertinent to the Motion — the Court determines that those figures warrant sealing. The Declaration sufficiently proves the confidential nature of this information (see Docket Entry 81, ¶¶ 9, 14) and the consequences its release could have on Defendant's interest in protecting its owners' privacy and security (see id., ¶¶ 13-14), and, as Defendant suggests, the Court can narrowly tailor the redactions to "the[] specific figures" at issue (Docket Entry 80 at 12). Moreover, redacting the figures aligns with the Court's recent decision (see Docket Entry 154) (per Chief Judge Eagles) granting a motion to seal as to redactions of Defendant's owners' earned income under the heightened First Amendment standard (see id. at 4 ("At this stage, there is nothing to indicate that

12

the amount of money an owner of [Defendant] makes is relevant . . . .")).

The Court will deny the Motion, however, as to any "information that appears elsewhere on the public docket," New, 2021 WL 4593986, at *7. For example, Plaintiffs' public allegation that "Defendant[ and its owners ] made in excess of one[-]hundred million dollars during the class period" (Docket Entry 66-1, ¶ 1) requires the Court to unseal that figure as it appears in the proposed amended complaint (see Docket Entry 77-1, ¶ 1) and the Amendment Motion's supporting memorandum (see Docket Entry 78 at 2). Similarly, a public filing containing the allegation that Defendant's owners "pa[id] themselves millions of dollars in annual distributions" (Docket Entry 101 at 41) prevents the Court from granting Defendant's requests as to that figure (see Docket Entry 77, ¶ 4; Docket Entry 77-1, ¶¶ 1, 65), regardless of any agreement between the parties to keep certain information redacted (see Docket Entry 80 at 2). See M.G.M. ex rel. Mabe v. Keurig Green Mountain, Inc., No. 1:22cv36, 2022 WL 6170557, at *2 (M.D.N.C. Oct. 7, 2022) ("It is well-established that the parties' agreement is an insufficient reason to seal judicial records.").

### 2. Ownership Interests

Defendant next requests the sealing of "information about [its] ownership percentages" (Docket Entry 80 at 11), which, as a "privately held" company (id.), it does "not disclose[] publicly"

13

(id.).  In opposition, Plaintiffs cite the existence of publicly available information regarding the fact that Taylor and Scott Greenblatt ("Greenblatt") "ha[ve ] ownership interest[s] in the [c]ompany" (Docket Entry 89 at 6 (emphasis and internal quotation marks omitted)).

The Court will grant the Motion with respect to the ownership percentages (including references to majority/minority interests) as those figures appear in Docket Entries 78 and 78-1.  That information raises the same privacy and security concerns mentioned above and in the Declaration (see Docket Entry 81, ¶¶ 13-14), and the Court can narrowly tailor the redactions to the percentages and references to majority/minority interests.  The Court cannot, however, seal basic, publicly available information regarding Defendant's ownership and founding (see, e.g., Docket Entry 18 at 8 (disclosing, in Defendant's own filing, that "Greenblatt and Taylor created Veterans Guardian"); Docket Entry 87 at 10 (alleging that Taylor and Greenblatt "own[] differing percentages" as "[Defendant's] sole shareholders"); Docket Entry 13 at 2 (disclosing that Taylor and Greenblatt constitute Defendant's only members), which Defendant nonetheless seeks to keep under seal (see Docket Entry 81-1 at 7; Docket Entry 81-2, ¶¶ 47, 51, 55; Docket Entry 81-3 at 247).

14

### 3. Revenue and Profits

Defendant further seeks to seal information concerning its revenue and profits to prevent competitive harm. (See Docket Entry 80 at 9, 11-12; Docket Entry 81, ¶¶ 8-13.) Plaintiffs ask the Court to disregard Defendant's competitive-harm argument as conclusory (see Docket Entry 89 at 8-9) and to unseal the underlying information, which they contend contains either "*approximate* profit estimates based on information provided by Taylor" (id. at 9) or "general statements regarding profit [ ] not reflect[ing] *any figures*" (id.) that do not warrant sealing (see id. at 8-9). Plaintiffs also contend that "sources of Defendant's revenue . . . can easily be derived from publicly available information." (Id. at 4.)

The Court will grant the Motion as to information related to Defendant's revenue and profits appearing in Docket Entries 78 and 78-1. Defendant has sufficiently shown that it keeps this information confidential (see Docket Entry 81, ¶ 9) and that, if disclosed, its competitors could use the information to Defendant's detriment (see id., ¶¶ 10, 13 (describing competitive landscape and process by which competitors could analyze Defendant's revenue and profits against their own)). Defendant's interest in preventing that harm outweighs any interest the public might have in accessing

15

the specific figures and information related to its revenue and profits.[6]

Once again, the Court limits its granting of the Motion to information not already publicly available. Any purportedly confidential profit figures that Plaintiffs "deriv[ed from] estimat[es] of [publicly available] information" (Docket Entry 89 at 5) do not warrant sealing (see Docket Entry 77-1, ¶¶ 1-2, 63). Nor can the Court maintain under seal similar information repeated throughout this case's public docket. (See, e.g., Docket Entry 1, ¶ 1 (accusing Defendant of "taking tens of millions of dollars [in] disability benefits"); Docket Entry 52, ¶ 1 (same); Docket Entry 110 at 8 (asserting that "Defendant . . . has unlawfully taken well over two[-]hundred million dollars[]").)

### 4. Capital Contributions

Defendant also asks the Court to seal information related to "capital contributions" (Docket Entry 80 at 4; accord Docket Entry 81, ¶ 8; Docket Entry 81-3 at 248-49), theorizing that its competitors could use that information to gain knowledge of Defendant's operations (see Docket Entry 81, ¶ 10). As Plaintiffs correctly note, however, "Defendant does not explain how [disclosure of] this information alone would harm [Defendant] —

---

6 Nothing in the Court's conclusion contradicts its decision on a separate motion to seal (see Docket Entry 153) (per Chief Judge Eagles) denying Defendant's request to seal certain portions of a document containing financial information neither implicated nor raised by either party here (see id. at 2-5).

16

particularly if precise revenue, profit, [and] earned income figures are not disclosed." (Docket Entry 89 at 7-8.) Defendant, whose Declaration and brief in support of the Motion reference capital contributions only sparingly (see Docket Entry 81, ¶ 8; Docket Entry 80 at 4, 9), has not carried its burden of providing "specific underlying reasons . . . [as to] how [its] interest[s] reasonably could be affected by the release of such information," Trustees of Purdue Univ., 2023 WL 2776193, at *2 (internal brackets and quotation marks omitted). The Court will therefore deny the Motion as to information regarding capital contributions.

### C.  Remaining Matters

Despite insisting that it has submitted "only [ ] limited portions [of ] highly sensitive" information for sealing (Docket Entry 80 at 14), Defendant's confidentiality designations extend far beyond the above-discussed categories of proprietary information. For instance, Defendant marks as confidential information concerning its owners' alleged personal liability (see Docket Entry 81-2, ¶ 67), its owners' lobbying and political donations (see Docket Entry 81-3 at 45-48, 53), whether its owners reinvested or took out loans against their income (see Docket Entry 81-1 at 7; Docket Entry 81-3 at 299), whether Defendant paid for its owners' vehicles (see Docket Entry 81-1 at 7), and whether anyone besides Taylor and Greenblatt owned the company (see id.), all without explaining why any of these items warrants sealing (see

17

generally Docket Entries 80 and 81).  Moreover, just as the Court denies Defendant's unreasoned requests to redact the mere fact of Taylor and Greenblatt's ownership (see, e.g., Docket Entry 81-1 at 7; Docket Entry 81-2, ¶ 47), it also denies Defendant's similar requests regarding Taylor and Greenblatt's control over Defendant's operations (see Docket Entry 77, ¶ 3; see also Docket Entry 101 at 42 (noting basic fact that Taylor and Greenblatt, as Defendant's "CEO and [ ] COO[,] exercise strategic vision for [the] entity, especially [as] . . . the two only members of [the] LLC")).

Defendant's slipshod designations, along with Plaintiffs' needlessly voluminous exhibit, compel the Court to remind the parties that it "may impose sanctions, including attorney's fees, for filing unsupported or overly broad motions to seal, or for making unsupported or overly broad confidentiality designations that are not appropriately narrowed following a request and that necessitate the filing of a motion to seal by another party," M.D.N.C. LR 5.4(a)(4).  The parties' oversights have wasted judicial and litigant resources, cluttered and complicated the docket — creating difficulty for the Court, parties, and public — and contravened this Court's Local Rules.  See, e.g., M.D.N.C. LR 5.4(c)(3) (requiring "a sufficient showing by the party claiming confidentiality as to why sealing is necessary"); M.D.N.C. LR 5.4 commentary ("As a general rule, parties should keep to a minimum the filing of sealed documents."); see also M.D.N.C. LR 5.4(a)(5)

18

("[The Court's Local Rules regarding filing documents under seal] are intended to minimize the filing of sealed documents, to protect the public right of access, to ensure the docket is clear so that documents can be found easily, and to allow for review of motions to seal in a way appropriate for the case and that reduces cost, time, and confusion."). The parties shall therefore share the burden of filing all necessary conforming documents. <u>See</u> M.D.N.C. LR 83.4(a) (authorizing issuance of "such orders as are just under the circumstances" as sanction for violating Local Rules). In so doing, the parties shall clearly identify and link each corrected document to all iterations of that document that appear on the docket.

To facilitate that endeavor, the Court summarizes its rulings regarding the various documents that the Motion sought to seal:

| Primary Docket Entry Number | Ruling |
|---|---|
| 77 | Unseal |
| 77-1 | Seal by redaction financial figure on page 2 |
| 78 | Seal by redaction ownership percentages (including any majority/minority designations) on pages 5-6 and financial figures on pages 6-7 |

19

| 78-1 | Replace entire transcript with relevant excerpts and seal by redaction:<br>Page 235: lines 1-11<br>Page 247: lines 11, 13, 19, 21-22<br>Page 248: line 5<br>Page 249: lines 14-15<br>Page 250: line 3<br>Page 267: line 5<br>Page 288: lines 2-3<br>Page 293: lines 4-12<br>Page 294: lines 1, 4, 7, 9<br>Page 295: lines 9, 11<br>Page 296: lines 4, 18<br>Page 297: lines 11-12, 16<br>Page 298: lines 2, 6-7, 9, 11-15, 17, 19-20<br>Page 299: lines 1-2, 4, 9-10<br>Page 306: lines 1-8, 10-11<br>Page 307: line 19<br>Page 308: lines 7-9 |
|---|---|
| 81 | Unseal |
| 93 | Seal by redaction financial figure on page 6 |

Finally, Defendant seeks "permanent[]" sealing of all affected materials. (Docket Entry 80 at 16.) However, as this Court (per Chief Judge Eagles) has explained:

> Because confidential business information is typically dated after a few years, the Court finds that sealing the information for ten years is sufficient to protect [Defendant's] interests. This is subject to further order of the Court as the case develops and the public's interest in particular details increases; the Court will reevaluate sealing of particular information needed to resolve a motion, if the case reaches trial, or upon motion to unseal filed by any litigant or member of the public.

Put Corp. v. R.J. Reynolds Tobacco Co., No. 1:22cv881, 2023 WL 3892482, at *3 (M.D.N.C. Jan. 9, 2023).

20

<u>CONCLUSION</u>

Defendant has justified sealing only certain information filed in support of the Amendment Motion.

**IT IS THEREFORE ORDERED** that the Motion (Docket Entry 68) is **GRANTED IN PART AND DENIED IN PART** as specified herein.

**IT IS FURTHER ORDERED** that, on or before April 13, 2026, the parties shall file public versions of Docket Entries 77-1, 78, 78-1, and 93 that conform with this Order.

**IT IS FURTHER ORDERED** that the Clerk shall unseal (i) Docket Entries 77 and 81 upon entry of this Order and (ii), subject to further order of the Court, Docket Entries 77, 77-1, 77-2, 78, 78-1, 81-1, 81-2, 81-3, and 93 on March 30, 2036.

This 30th day of March, 2026.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

21