# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

|  |  |  |
|---|---|---|
| JENNIFER FORD, ERIC BEARD, and BRIAN OTTERS, individually and on behalf of all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:23-CV-756 |
| VETERANS GUARDIAN VA CLAIM CONSULTING, LLC, | ) ) ) ) | |
| Defendant. | ) | |

## <u>**MEMORANDUM OPINION AND ORDER**</u>

Catherine C. Eagles, Chief District Judge.

On behalf of military veterans like the plaintiffs, Jennifer Ford, Eric Beard, and Brian Otters, Veterans Guardian VA Claim Consulting, LLC, prepares claims to obtain or increase disability compensation for presentation to the Veterans Administration. It charges a contingency fee for its services. For several policy reasons, federal law prohibits anyone not accredited by the VA from acting as an agent in preparing or presenting such claims to the VA and imposes limits on the fees such accredited entities can charge. The plaintiffs contend that Guardian violates federal law by offering these services without accreditation and that it charges and collects illegal fees in violation of the North Carolina Unfair and Deceptive Trade Practices Act and the North Carolina Debt Collection Act.

The evidence is undisputed that Guardian is not accredited, that on behalf of veterans it prepares claims forms, that in those forms it presents disability claims for decision by the VA, and that it charges fees for doing so. These actions violate federal law. The Court therefore grants the plaintiffs' summary judgment motion to this extent and likewise denies Guardian's summary judgment motion to this extent.

This ruling does not resolve all issues presented in the summary judgment motions. Those remaining issues will be addressed by separate order as time permits.

## I. Summary Judgment Standard

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In analyzing a summary judgment motion, courts "must construe all facts and reasonable inferences in the light most favorable to the nonmoving party." *Bandy v. City of Salem*, 59 F.4th 705, 709 (4th Cir. 2023). The moving party has the initial burden of demonstrating the absence of any material issue of fact; once the moving party meets its initial burden, the nonmoving party must come forward with evidentiary material demonstrating the existence of a genuine issue of material fact requiring a trial. *Id*. at 709–10; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

"When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties

2

deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (cleaned up); *see also Coal. for TJ v. Fairfax Cnty. Sch. Bd.*, 68 F.4th 864, 878 (4th Cir. 2023). "When considering each individual motion, the court must take care to resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion." *Rossignol*, 316 F.3d at 523 (cleaned up).

**II.        Overview of the Relevant Statutes and Regulations**

Federal law provides that "no individual may act as an agent or attorney in the preparation, presentation, or prosecution of any claim under laws administered by the Secretary unless such individual has been recognized for such purposes by the Secretary." 38 U.S.C. § 5901(a).[1]  Federal law also prohibits agents from charging or collecting a fee in connection with the filing of an initial disability claim for benefits before the Veterans Administration. *Id*. § 5904(c)(1).  Subject to statutory and regulatory reasonableness provisions, *id.* § 5904(a)(5); 38 C.F.R. § 14.636(e), agents and attorneys may charge fees for work later in the claims process.  38 U.S.C. § 5904(a)(5); 38 C.F.R. § 14.636(c)(1)(i) ("Agents and attorneys may charge claimants or appellants for representation provided after . . . notice of an initial decision on the claim . . . .").

Chapter 59 does not explicitly define "agent."  The regulations define an "agent" in terms of the standards and qualifications for accreditation.  38 C.F.R. § 14.627(c) ("Agent means a person who has met the standards and qualifications outlined in [38

---

[1] *See also* 38 C.F.R. § 14.629(b)(1) ("No individual may assist claimants in the preparation, presentation, and prosecution of claims for VA benefits as an agent or attorney unless he or she has first been accredited by VA for such purpose.").

3

C.F.R.] § 14.629(b)."); *id.* § 14.629(b) (listing requirements for accreditation, including applications, determination of character and fitness, a written examination, and continuing education).

### III.      Undisputed Facts

Neither Guardian nor its employees are accredited by the VA to act as agents in the preparation, presentation, or prosecution of VA disability claims.  Doc. 73-2 at 29; Doc. 52-1 at p. 3 ¶ 1(e).  Guardian assists veterans seeking to obtain VA disability benefits for the first time (initial claims) and veterans seeking to increase their VA disability benefits (non-initial claims).  Doc. 73-2 at 9; Doc. 52-1 at p. 10 ¶ 3(d).

Guardian follows standard practices and policies when working with its clients on their VA disability claims.  Doc. 73-2 at 11–12, 18, 23, 26; *see also* Doc. 52-1 at p. 4 ¶ 2; Doc. 123 at ¶ 1.  All of Guardian's clients sign a consulting service agreement when they begin working with Guardian.  Doc. 123 at ¶ 3; Doc. 52-1.  Thereafter, in summary, Guardian assists in gathering information and identifying the types of benefits for which a client may be eligible; it drafts documents and fills out the forms used to seek such benefits; it emails the forms to the client for review; and once the client approves the packet, Guardian prints the form and mails it to the client with a postage-paid envelope addressed to the VA.  *See infra* at 4–6.

To start the process, Guardian works with clients to obtain their medical and military service records.  Doc. 73-2 at 9, 13; *see also* Doc. 52-1 at p. 4 ¶ 2.  It gives clients an extensive questionnaire that it developed, and it uses the completed questionnaire to help identify symptoms and issues for claim packets.  Doc 73-2 at 9.  It

4

reviews the client's records and materials to "help determine . . . what types of claims the veteran may or may not be eligible for." *Id*. at 9, 14; *see also* Doc. 52-1 at p. 4 ¶ 2. It identifies additional medical or lay evidence needed to support the claims. Doc. 73-2 at 13–14; *see also* Doc. 52-1 at p. 4 ¶ 2. It offers referrals to medical providers to support claims. Doc. 52-1 at p. 4 ¶ 2. It makes medical appointments for clients. Doc. 106-2 at 7; Doc. 106-9 at 27; Doc. 106-16 at 13. It may "conduct medical research." Doc. 73-2 at 9; *see also* Doc. 52-1 at p. 4 ¶ 2. It "assist[s] in completing the forms, providing evidence, [and] . . . putting the claim packet together." Doc. 73-2 at 9, 14–15; *see also* Doc. 52-1 at p. 4 ¶ 2.

Guardian is responsible for "drafting the [claim] information [and] typing it into the fillable VA disability form." Doc. 73-2 at 11–12, 15–16. It then emails the assembled claim packets to clients for their review. Doc. 123 at ¶ 1. Guardian does not include its name anywhere in the claim packet. Doc. 73-2 at 18–19.

After clients review and agree with the claim packet as prepared by Guardian, Guardian prints hard copies of the claim packets and mails them to the clients with an instruction letter and a stamped envelope addressed to the VA. *Id*. at 17, 20, 23; *see also* Doc. 106-2 at 7. Guardian pays for the postage to the VA and adds "sign here" labels to the packets. Doc. 73-2 at 20, 22–23. The instruction letter explains to the client "what they're receiving, what they need to do, [and] what the steps are to submit the claim in their own name, on their own behalf." *Id*. at 23. Guardian's cover letter instructs clients "not to identify that the veteran has been working with Veterans Guardian." *Id*. at 24–25.

Clients are responsible for "validating that everything in there is truthful," and clients make the final decision on whether to submit the claim. *Id*. at 17. If they choose to submit the claim packet, clients sign the forms and mail the packet to the VA. *Id*. Guardian does not directly submit the packet to the VA. *Id*. at 17, 19. Guardian tracks the mailed packet to the client, *id*. at 19, and from the client to the VA. *Id*. at 25.

Guardian's consulting service agreement states that "Guardian is not a VA accredited agent," "is not the client's representative to the VA," and "does not file claims or any other documents or responses with the VA on behalf of the client." Doc. 52-1 at p. 3 ¶ 1(e). The agreement details that "[t]he client is solely responsible for any and all submissions of claims, documents or responses to the VA either as their own representative or through a VA accredited agent." *Id*. The agreement states that "there are completely free services available to veterans to support the filing of claims for VA benefits." *Id*. at p. 3 ¶ 1(d). Guardian's clients also sign an acknowledgement titled "Veteran's Right to Choose: Your Claim, Your Choice" that provides the same disclosures about free services with other organizations and the fact that Guardian is not accredited. *See e.g.*, Doc. 106-4 at 2.

Guardian's client agreement requires clients to notify Guardian of VA decisions and to "provide copies of any and all correspondence received from the VA to include Rating Decision Letters within two days of receipt." Doc. 52-1 at p. 6 ¶ 2(b)(9). As a standard practice, Guardian receives the decision letters from its clients, but not every client sends their letter. Doc. 73-2 at 28. Guardian's clients can, and sometimes do, instruct the VA to fax their rating decision letter to Guardian. Doc. 55-3 at 48, 50; Doc.

6

113-2; Doc. 125 at 23–24. Guardian can confirm its clients' disability income increases by calling the VA pay verification phone number and inputting the client's social security number and birthdate. Doc. 55-3 at 50. During the class period, Guardian employees called the VA pay verification phone number over 250,000 times. *See* Docs. 122, 122-1.

Guardian determines its clients' fees using their rating decision letters, Doc. 73-2 at 27, supplemented by information obtained from calls to the VA's pay verification number. Doc. 55-3 at 50. It emails invoices to clients after they receive their rating decision letters. Doc. 73-2 at 34.

Guardian works with clients on a contingent basis and only charges a fee when clients receive an increase in their monthly disability benefit. *See e.g.*, Doc. 52-1 at p. 5 ¶ 2(a)(6). It charges clients five times the increase in their monthly compensation. *Id*. at p. 9 ¶ 3(c). It provides options to pay either a lump sum with a 10% discount or monthly scheduled payments. *Id*. at pp. 10–11 ¶ 4(d); *see also* Doc. 52-2 at 3, 5, 8, 11.

The plaintiffs' testimony confirms Guardian's standard process for assisting clients. Ms. Ford testified that Guardian compiled her claim by sending her claim packet in an envelope prepped and ready to go. Doc. 106-2 at 7–8, 14, 34; *see also* Doc. 73-8 at ¶¶ 15–21, 26–30. She "gave them access to [her] records, and they put it all together." Doc. 106-2 at 7. Guardian set up her doctors' appointments. *Id*. at 7. Mr. Otters testified that the process followed the same way for him, *see* Doc. 106-16 at 14–16; *see also* Doc. 73-10 at ¶¶ 15–21, as did Mr. Beard. *See* Doc. 106-9 at 17, 21; *see also* Doc. 73-9 at ¶¶ 16–22.

Guardian assisted Ms. Ford with two non-initial VA disability claims.  Doc. 73-8 at ¶¶ 7–31; Doc. 52-2 at 3, 5.  As a result of the first claim submitted with Guardian's assistance, her disability rating increased from 60% to 70%.  Doc. 73-8 at ¶ 22; Doc. 52-2 at 3; Doc. 73-5 at 4.  Her monthly compensation increased from $1,585.03 to $1,962.95 for a total increase of $377.92.  Doc. 52-2 at 3.  Guardian charged her a fee of $1,880, five times her total increase rounded down to the nearest $10 increment.  *Id*.  She paid the entire invoice.  Doc. 73-8 at ¶ 25.  As a result of the second claim submitted with Guardian's assistance, her disability rating increased from 70% to 80%.  *Id*. at ¶ 31; Doc. 52-2 at 5.  Her monthly compensation increased from $2,133.06 to $2,471.15 for a total increase of $338.09.  Doc. 52-2 at 5.  Guardian charged her a fee of $1,690, five times her total increase rounded down to the nearest $10 increment.  *Id*.  She paid the entire invoice.  Doc. 73-8 at ¶ 34.

Guardian assisted Mr. Otters with a non-initial VA disability claim.  Doc. 73-10 at ¶ 22; Doc. 52-2 at 11.  As a result of the claim, his disability rating increased from 70% to 90%, and his monthly compensation increased from $1,977.06 to $2,576.39 for a total increase of $599.33.  Doc. 73-10 at ¶¶ 22, 24; Doc. 52-2 at 11.  Guardian charged him a fee of $2,990, five times his total increase rounded down to the nearest $10 increment.  Doc. 52-2 at 11.  He paid the entire invoice.  Doc. 73-10 at ¶ 25.

Guardian assisted Mr. Beard with an initial VA disability claim.  Doc. 73-9 at 3, 6; Doc. 52-2 at 8.  As a result of the claim, he received a disability rating of 100% and monthly compensation of $4,272.80.  Doc. 73-9 at ¶ 23; Doc. 52-2 at 8; Doc. 73-5 at 5.  Guardian charged him a fee of $21,360, five times his total compensation increase

8

rounded down to the nearest $10 increment.  Doc. 52-2 at 8.  He paid $19,224 and has an outstanding balance of $2,136.  Doc. 73-9 at ¶ 27.

It is undisputed that Guardian charges "more" for initial claims than accredited agents because Guardian charges fees for initial claims, Doc. 52-1 at pp. 8–9 ¶ 3, and accredited agents cannot charge anything for initial claims.  *See* 38 U.S.C. § 5904(c)(1). Guardian acknowledges that if it were accredited it could not charge fees for assisting veterans file initial VA disability claims.  Doc. 73-2 at 29–33.

Because Guardian does not include its name and involvement in claim preparation and presentation in the claim forms it prepares and instructs veterans to similarly exclude that fact, the VA does not review Guardian's fees for non-initial claims under the VA's reasonableness requirements that apply to the fees charged by accredited agents.  *See* 38 C.F.R. § 14.636(e).  Those regulations provide that "[f]ees which exceed 33 1/3 percent of any past-due benefits awarded shall be presumed to be unreasonable."  *Id*. § 14.636(f)(1).

## IV.     Overview of the Plaintiffs' Claims

All of the plaintiffs' claims depend on the factual assertion that Guardian is acting as an agent in the preparation or presentation of claims to the VA and on the legal proposition that doing so for a fee and without accreditation violates federal law.  This order addresses these factual and legal predicates to Guardian's liability on the state law claims asserted by the classes.

If the plaintiffs prevail on these legal and factual predicate questions, other elements are required to prevail on their state law claims and there are other issues

presented in the summary judgment briefing. This order does not address those larger liability questions, which will be addressed in a later order.

## V. Acting as an Agent

When courts interpret a statute, they start with the text. *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 457 (2022). They "begin by considering whether the language at issue has a plain and unambiguous meaning." *Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874, 895 (4th Cir. 2014). Here, the statutory framework and language both show a clear purpose of insuring that claimants are assisted only by knowledgeable, approved agents and attorneys and that claimants are protected against unreasonable fees and predatory practices. *See* 38 USC §§ 5901–5904; *see also Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 431–32 (2011). In this context, the statute says that "no individual may act as an agent or attorney in the preparation, presentation, or prosecution of any claim" unless recognized by the VA. 38 U.S.C. § 5901(a). Because Guardian does exactly that without such recognition by the VA, it engages in conduct prohibited by the statute.

### A. Anyone Who Assists Veterans with Preparation or Presentation of a Claim for a Fee is an Agent and Must Be Accredited by the VA.

In Title 38 of the United States Code, Congress has established a comprehensive statutory system governing benefits for veterans. The general provisions for making claims are in Chapter 51, *id*. § 5100 *et seq*., and the provisions governing who can assist veterans with their claims are in Chapter 59. *Id*. § 5901 *et seq*.

In Chapter 59, Congress requires that "no individual may act as an agent or attorney in the preparation, presentation, or prosecution of any claim under laws

administered by the Secretary unless such individual has been recognized for such purposes by the Secretary." *Id*. § 5901(a). The statute explicitly authorizes the Secretary to recognize three categories of people to prepare, present, and prosecute claims before the VA.

First, the Secretary may recognize representatives of veterans' organizations who are approved to prepare, present, and prosecute claims for no fee. *Id*. § 5902. Second, "the Secretary may recognize any individual for the preparation, presentation, and prosecution of any particular claim for benefits" for no fee and pursuant to a power of attorney. *Id*. § 5903. Third, under certain conditions, "the Secretary may recognize any individual as an agent or attorney for the preparation, presentation, and prosecution of claims." *Id*. § 5904.

To be recognized by the Secretary under this third option, the agents and attorneys must be qualified and competent to assist claimants; meet the Secretary's training rules, qualifications, and standards; and comply with the Secretary's "reasonable restrictions on the amount of fees" charged as detailed in regulations. *Id*. These restrictions on fees are consistent with the express congressional recognition of the potential for predatory practices by unaccredited and unapproved entities. *Id*. § 5901(b).

The organization of Chapter 59 shows an explicit congressional intent to limit those who assist veterans in the preparation, presentation, or prosecution of claims to those who are approved by the Secretary in one of three ways: as an approved group's representative who charges no fee, as an individual power of attorney who charges no fee, or as agents or attorneys who charge only reasonable fees. Within this statutory

11

framework, anyone who prepares, presents, or prosecutes VA disability claims[2] must be recognized and accredited by the VA in order to do such work and anyone who does this work for a fee on behalf of a veteran is an "agent."

The regulations confirm the interpretation that an agent is anyone who "assists" claimants in the preparation, presentation, or prosecution of claims for VA benefits for a fee. 38 C.F.R. § 14.629(b)(1). The regulations provide the following definitions. *See id*. § 14.627. "Accreditation means the authority granted by VA to representatives, agents, and attorneys to assist claimants in the preparation, presentation, and prosecution of claims for VA benefits." *Id*. § 14.627(a). "Agent means a person who has met the standards and qualifications outlined in § 14.629(b)." *Id*. § 14.627(c). Section 14.629(b) details the agent accreditation requirement for assisting claimants, the process to become accredited, and the conditions for accreditation. *Id*. § 14.629(b). "Claim means application made under title 38 U.S.C., and implementing directives, for entitlement to VA benefits, reinstatement, continuation, or increase of benefits, or the defense of a proposed agency adverse action concerning benefits." *Id*. § 14.627(h). The regulations also detail recognition, standards of conduct, and discipline for agents and attorneys. *Id*. §§ 14.626–14.637.

The regulations are consistent with the statute. The organization of § 14.629(b)(1), like the organization of the statute, shows that an individual acts as an agent by preparing, presenting, or prosecuting claims for a fee. *Id*. § 14.629(b)(1). The

---

[2] Section 5901(a) uses the disjunctive "or".

structure and language of the regulations are designed to restrict preparing, presenting, and prosecuting claims to those who are qualified and competent and who either charge no fee or a reasonable fee.[3] And § 14.627(c)'s definition of "agent" requires that a person preparing, presenting, or prosecuting claims must meet the requirements of § 14.629(b).

The VA advises that:

Preparing a benefits claim generally includes, but is not limited to, consulting with or giving advice to a claimant or potential claimant in contemplation of filing a benefits claim, gathering evidence in support of a benefits claim on behalf of a claimant or potential claimant, or filling out VA forms for their submission to VA.

Doc. 111-5 at 2. Its view is that "to provide assistance with a claim for VA benefits, even without charge, a person must be accredited by VA as an agent," Doc. 73-7 at 3, and that "Congress requires that an individual be accredited by VA to act as an agent or attorney in the *preparation* of a VA claim." *Id*. at 8.

In sum, the statute's text and structure shows that an agent is defined by the conduct of preparing, presenting, or prosecuting claims and that anyone who does one or more of these things must fall into one of the statutory categories or it is prohibited from providing such services. The regulations and the VA itself support that definition.

Guardian asserts that this interpretation of the word "agent" gives rise to constitutional questions, specifically the question of whether prohibiting it from charging fees for assisting with initial claims would violate the First Amendment. Doc. 104 at 21.

---

[3] Here, because the VA regulations are consistent with and appropriately implement the statutory requirements, the Court cites to them as further support for the Court's interpretation of the statute. *See Skidmore v. Swift & Co.,* 323 U.S. 134, 140 (1944).

Calling upon the canon of constitutional avoidance, it thus contends that the Court should interpret the word "agent" more narrowly to require activities meeting the common-law definition of the word agent. *Id*.

But the canon of constitutional avoidance does not apply unless the text of the statute is ambiguous. *See Nielsen v. Preap*, 586 U.S. 392, 419 (2019). It "comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction." *Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018) (cleaned up). But § 5901(a) is not ambiguous and ordinary textual analysis does not give rise to more than one construction. As discussed, the statute directly looks to actions of preparing, presenting, or prosecuting claims on behalf of a veteran in describing an agent. *See* 38 U.S.C. § 5901(a).

Moreover, Guardian's potential First Amendment argument, to the extent it has presented one, is weak. The statute governs conduct: preparing claims, presenting those claims in the required forms, and charging fees. It establishes what is essentially a licensing system for insuring that those who so act are qualified to perform those services and do not charge predatory fees. And it does not compel those who are accredited to deliver any particular government message. "[T]he First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567, (2011); *accord Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 769 (2018).[4]

---

[4] Guardian relies on only two cases. Doc. 104 at 21–22; Doc. 157 at 1. One is an out-of-circuit case that analyzed a New Jersey state law, not the federal law. Doc. 104 at 21–22

Finally, Guardian asserts that the plaintiffs' reading of the statutes and regulations would prohibit friends and family from assisting people with claims. Doc. 125 at 11–12, 19. But the regulations provide an exception for a friend or family member assisting on a single claim for no compensation. *See* 38 C.F.R. § 14.630. This argument is without merit.

### B. Guardian Is An Agent That Prepares and Presents Claims on Behalf of Class Members for a Fee Without Accreditation.

The evidence is undisputed that Guardian prepares claims on behalf of veterans for a fee without following the accreditation requirements and without authority from the VA. It is also undisputed that it presents such claims to the VA on behalf of veterans. As detailed more thoroughly *supra*, Guardian creates forms and surveys for veterans to use in telling Guardian about their relevant experience and potential disabilities, gathers information from clients and their medical care providers, refers clients to health care providers it determines might be helpful, and decides how to fill out the forms requesting benefits and increases in benefits, thus preparing the claim. *See, e.g.,* Doc. 106-2 at 7; Doc. 106-9 at 13–15, 21; Doc. 106-16 at 14–16; *see also supra* at 4–5. It advises veterans on the best way to present the veteran's claims in those forms, attaches the exhibits it has gathered and developed to the forms it has filled out, and assembles the

---

(discussing *Veterans Guardian VA Claim Consulting LLC v. Platkin*, 133 F.4th 213 (3d Cir. 2025)). The other is a recent Supreme Court case *Chiles v. Salazar*, 607 U.S. ___, 146 S. Ct. 1010 (2026), which was directed to content-based regulation of speech and explicitly recognized that laws regulating conduct with only incidental effect on speech are not subject to strict scrutiny. *Chiles*, 146 S. Ct. at 1022–23. Guardian has made no showing that the statute is likely to violate its First Amendment rights.

claims packets for submission to the VA, thus presenting the claim in those claims packets. *See, e.g.,* Doc. 106-2 at 7; Doc. 106-9 at 15-18, 21; Doc. 106-16 at 14–16; *see also supra* at 5–6. It does all of this for the client's benefit, with the client's permission, and at the client's direction. Clients entrust Guardian with confidential medical and personal information, including their social security numbers and dates of birth. *See e.g.,* Doc. 55-3 at 50. Guardian prints the claim packets and sends the completed claim packets to clients. Doc. 73-2 at 17, 20, 23; *see also* Doc. 106-2 at 7. All the clients have to do is review the claim's form for accuracy, sign at the places marked by Guardian, and then mail the form, using the postage-paid envelope provided by Guardian. *See e.g.,* Doc. 73-2 at 20, 22–23, 25; *see also supra* at 5–6. Guardian tracks delivery of the claim packet to the VA. Doc. 73-2 at 25.

In all these activities, the evidence is undisputed that Guardian has the actual authority from the client to investigate the client's situation, to obtain information and develop evidence on the client's behalf, and to fill out the claim forms and decide what should go into the claims packets it assembles. These activities constitute the "preparation" of claims to the VA and the "presentation" of claims to the VA. 38 U.S.C. § 5901(a).

As to preparing a claim, the VA's guidance is consistent. The VA advises that:

> Preparing a benefits claim generally includes, but is not limited to, consulting with or giving advice to a claimant or potential claimant in contemplation of filing a benefits claim, gathering evidence in support of a benefits claim on behalf of a claimant or potential claimant, or filling out VA forms for their submission to VA.

16

Doc. 111-5 at 2.  Guardian admits that it does those exact actions.[5]

Guardian contends that it does not prepare or present claims and that it only provides "consulting" services, as shown by its actions and signed contracts with clients. *See, e.g.*, Doc. 52-1.  First, the label that Guardian attaches to its services is not controlling; the reality of the work done is what matters.  *See e.g., Cmty. Worship Fellowship v. United States*, 178 Fed. Cl. 764, 774 (2025) (stating "the compensation label an organization applies to its payments does not control the analysis" (cleaned up)). The undisputed evidence shows that Guardian was much more than a "consultant."[6]

Second, the fact that clients make the final decision on whether to file and prosecute a claim prepared by Guardian does not mean that Guardian did not prepare or present the claim or that Guardian is not an agent.  Absent a power of attorney as authorized under 38 U.S.C. §§ 5902 and 5903, or other extenuating circumstances, the veteran must sign the claim form and attest to its accuracy.  *See e.g.*, Doc. 108-3 at 9. And *O'Neill v. Department of Housing & Urban Development*, 220 F.3d 1354 (Fed. Cir.

---

[5] While not determinative, the VA agrees that Guardian acts as an agent by preparing claims. The VA sent Guardian two cease and desist letters in January 2019, and August 2024.  Doc. 73-7. The letters point out that Guardian was acting as an unaccredited agent in assisting clients with VA disability claims.  *Id*. at 3 ("[T]o provide assistance with a claim for VA benefits, even without charge, a person must be accredited by VA as an agent . . . ."); *id*. at 8 ("Congress requires that an individual be accredited by VA to act as an agent or attorney in the *preparation* of a VA claim.").

[6] Indeed, Guardian repeatedly emphasizes that its work helps veterans obtain benefits they would not obtain without its help, or at least sooner than they otherwise would, thus seeking to take credit for the results of the claims it prepares and presents.  Yet it inconsistently contends that it is not responsible for those claims when it comes to complying with federal law.  It is disingenuous to take the credit for good results achieved by its work if it was not responsible for preparing the claims.

2000), the case on which Guardian relies, Doc. 104 at 16, itself notes that in an agency relationship the "principal has the right to control the conduct of the agent with respect to matters entrusted to him." *O'Neill*, 220 F.3d at 1360. That the client may make some of the decisions related to the way the claim is presented and that the client makes the ultimate decision on filing does not mean that Guardian is not an agent or does not prepare or present claims, nor is it sufficient to give rise to a disputed question of fact.

Guardian contends that because it does not affirmatively act on plaintiffs' behalf before the VA or have a power of attorney, it is not an agent. Doc. 104 at 19–20.[7] But nothing in the statute requires that someone do either of those things in order to be an agent. The reference in the statute to powers of attorney concerns representatives and individuals who prepare and present claims without charging a fee, not agents who charge a fee for such work. *See* 38 U.S.C. §§ 5902(b)(1), 5903(a).

Guardian also relies on *O'Neill* to support its contention that there can be no agency relationship when the agent does not have actual or apparent authority to act on the claimant's behalf. Doc. 104 at 16. But Guardian does have such actual authority. As discussed *infra*, it is undisputed that for a fee, Guardian has actual authority to investigate and develop evidence, to make medical appointments, and to fill out the claim forms. Those are the exact steps needed to prepare a claim to the VA. It is undisputed that

---

[7] Guardian points to its Chief Operating Officer's deposition testimony about "representation provided by accredited agents." Doc 104 at 20. But he states, "I can't speak directly to what they do." Doc. 106-1 at 7. And then he states what he thinks accredited agents do. *See e.g., id.* at 7, 9–10, 16. In any event, Guardian does not cite to a source supporting his speculation that agents receive power of attorney and his testimony expressing his opinions about who is and is not an agent is not material.

Guardian has the actual authority to compile the forms and exhibits into a persuasive presentation requiring only the veteran's signature and delivery to the VA, using stamped pre-addressed envelopes that Guardian provides and that Guardian tracks. These are the steps needed to present a claim to the VA. These are the acts that make Guardian an "agent" in this statutory scheme.

## VI. Conclusion

Federal law and the undisputed facts establish that Guardian acts as an agent on behalf of class members in the preparation of VA disability claims and in the presentation of VA disability claims. The undisputed facts show that Guardian is not accredited, as federal law requires of those who prepare or present claims on behalf of veterans, and that it charges and collects fees for those services in violation of federal law. To that extent, the plaintiffs' summary judgment motion will be granted, and Guardian's summary judgment motion will be denied.

The Court reserves ruling on the remaining issues presented in the summary judgment motions. Those issues will be addressed by later order as time permits.

It is **ORDERED** that:

1. The plaintiffs' motion for summary judgment, Doc. 109, is **GRANTED in part** and it is deemed established for purposes of this case that the defendant, Veterans Guardian VA Claim Consulting, LLC, acts as an unaccredited agent on behalf of the class members in preparing and presenting initial and non-initial claims to the Veterans Administration, in violation of federal law.

19

2. To the extent Guardian contends it is entitled to judgment in its favor because it is not an agent, its motion for summary judgment, Doc. 103, is **DENIED**.

3. The parties need not yet comply with the deadlines in the scheduling order, Doc. 151 at ¶¶ 2–3, tied to a summary judgment decision.

4. Other scheduling deadlines remain in place for the time being.

This the 20th day of May, 2026.

_____
UNITED STATES DISTRICT JUDGE