IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JENNIFER FORD, ERIC BEARD, and BRIAN OTTERS, individually and on behalf of all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:23-CV-756 |
| VETERANS GUARDIAN VA CLAIM CONSULTING, LLC, | ) ) ) ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, Chief District Judge.

The defendant, Veterans Guardian VA Claim Consulting, LLC, prepares and presents disability claims for veterans like the plaintiffs, Jennifer Ford, Eric Beard, and Brian Otters, to submit to the VA, even though it is not accredited by the VA as required by federal law. In this class action, the plaintiffs contend that Guardian's federal law violations constitute violations of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA") and the North Carolina Debt Collection Act ("NCDCA"). Because North Carolina law applies to the UDTPA claims of the named plaintiffs and class members and because Guardian committed unfair trade practice acts, the Court will grant the plaintiffs' motion for summary judgment on liability for the unfair trade practices claims. Guardian's motion for summary judgment on the debt collection claim will be granted in part, to the extent the claim is based on N.C. Gen. Stat. § 75-54(4)

because the plaintiffs have provided no evidence of any misleading statement in a legal proceeding. Guardian's summary judgment motion will otherwise be denied.

## I. Overview

Guardian has moved for summary judgment on the issue of whether it is an agent, on the UDTPA claims, on a narrow aspect of the NCDCA claim, and on its affirmative defense of the voluntary payment doctrine. Doc. 103 at 2; Doc. 104 at 15–30. The plaintiffs have moved for summary judgment on the issue of whether Guardian is an agent and on liability as to their UDTPA claims. Doc. 109; Doc. 110 at 23–25.

All three claims brought by the plaintiffs and the classes they represent are statutory claims under North Carolina law: the UDTPA claims under N.C. Gen. Stat. § 75-1.1 and the NCDCA claim under N.C. Gen. Stat. §§ 75-54(4), (7), 75-55. The named plaintiffs and class representatives are residents of states other than North Carolina. *See* Doc. 73-8 at ¶ 2; Doc. 73-9 at ¶ 2; Doc. 73-10 at ¶ 2. The classes include people who live in North Carolina and outside of North Carolina. Doc. 131 at 17, 27.

All claims by the plaintiffs on behalf of the three certified classes depend on the premise that Guardian violates federal law by preparing and presenting disability claims to the VA on behalf of veterans without accreditation. The plaintiffs have established that predicate requirement, for reasons explained in an earlier order filed May 20, 2026. Doc. 175. That order is adopted in full by reference. The Court has also resolved questions arising from the enactment of a new law by the North Carolina legislature related to fees charged for providing services like Guardian provides and has granted Guardian's motion as to claims arising after September 30, 2025. Doc. 178. That order is also adopted in

full by reference.  This order addresses all remaining summary judgment arguments, resolving those motions in full.

## II.    Undisputed Facts

The plaintiffs and class members signed contracts with Guardian and used Guardian's services to apply for first-time VA benefits (initial claims) or for increases in VA benefits (non-initial claims).  All received either a disability benefit amount for the first time or an increase in their current VA disability benefit amount.  Doc. 52-2 at 3, 5, 8 11; Doc. 131 at 27.  The plaintiffs and class members each received an invoice from Guardian for its fee and paid at least part of the amount owed.  Doc. 73-8 at ¶¶ 25, 34; Doc. 73-9 at ¶ 27; Doc. 73-10 at ¶ 25; Doc. 131 at 27.

Guardian is domiciled in North Carolina.  Doc. 13 at 2; Doc. 52 at ¶ 24; Doc. 53 at ¶ 24.  All of Guardian's acts occurred in North Carolina.  Doc. 73-2 at 37, 41.

Guardian works with clients on a contingent basis and charges a fee if and when clients receive an initial VA benefit or an increase in their existing VA benefit.  Doc. 52-1 at p. 5 ¶ 2(a)(6).  Guardian charges five times the increase in the client's monthly compensation.  *Id.* at p. 9 ¶ 3(c)(1)(c).  Guardian calculates the "increase" by subtracting the monthly compensation a client received before working with Guardian, if any, from the monthly compensation a client received after working with Guardian.  *Id.*

When Guardian assists clients with initial disability claims, it always uses $0 as the monthly compensation a client received before working with it.  *See e.g.*, 52-2 at 8. As Guardian acknowledges, it could not charge fees for preparing the initial VA disability claims if it was accredited, Doc. 73-2 at 29–33, because such fees are prohibited by

3

statute.  38 U.S.C. § 5904(c)(1); *see also* Doc. 175 at 9.  So any fee charged for assistance on initial claims is "more" than accredited agents could charge.

Fees charged by accredited agents for preparing non-initial claims for benefits are subject to review by the VA for reasonableness.  *See* 38 U.S.C. § 5904(a)(5); 38 C.F.R. § 14.636(e).  Because Guardian does not include its name and involvement in claim preparation and presentation in the claim forms it prepares and it instructs clients to exclude that fact, Doc. 73-2 at 24–25, the VA does not review Guardian's fees for reasonableness.  Those regulations provide that "[f]ees which exceed 33 1/3 percent of any past-due benefits awarded shall be presumed to be unreasonable."  38 C.F.R. § 14.636(f)(1).

Other undisputed facts will be addressed in the context of the plaintiffs' specific claims and Guardian's specific arguments.

## III.    Choice of Law

The contracts signed by the parties provide for application of North Carolina law to disputes about the contract, and the claims at this stage center on whether Guardian's conduct in performing its duties under that contract constitutes unfair trade practices. North Carolina law applies to the claims of all the named plaintiffs and class members alleging the unfair acts of acting as an agent in violation of federal law.

### A.  The Choice of Law Provision in the Contract

It is undisputed that all of Guardian's clients sign a consulting service agreement when they begin working with Guardian.  Doc. 123 at ¶ 3; Doc. 52-1.  The contracts, written by Guardian, provide that "[t]his agreement is entered into and shall be governed

4

by the laws of the State of North Carolina and said state's courts shall have exclusive jurisdiction to adjudicate any dispute arising out of or relating to this agreement."  Doc. 52-1 at p. 11 ¶ 8.

North Carolina courts generally honor choice-of-law clauses, *iPayment, Inc. v. Grainger*, 257 N.C. App. 307, 312, 808 S.E.2d 796, 800 (2018), but the North Carolina Supreme Court has not decided whether this type of generic choice-of-law provision applies to UDTPA claims.  *See Frazier v. Titlemax of Va., Inc.*, __N.C. App.__, __S.E.2d__, 2026 WL 1235226, at *4 (2026).[1]  Some federal district courts have determined that generic choice of law provisions only apply to issues of contract construction, interpretation, or enforceability.  *See e.g., P & L Dev. LLC v. Bionpharma, Inc.*, 367 F. Supp. 3d 421, 429 (M.D.N.C. 2019).  Other district courts have looked to the facts of the case to determine the intent of the parties and whether the claim is closely related to the parties' contract.  *See e.g., Volvo Grp. N. Am., LLC v. Forja de Monterrey S.A. de C.V.*, No. 16-CV-114, 2019 WL 4919632, at *6 (M.D.N.C. Oct. 4, 2019).

Here, the plaintiffs do not assert a breach of contract claim, but they do contend that the contractual provisions detailing Guardian's services and establishing the fees owed for those services constitute an unfair trade practice because the services Guardian

---

[1] The choice-of-law provision at issue here is generic because it "provides that the contract shall be 'governed by' the law of a particular state without specifically providing that the clause governs any and all claims arising from or relating to the contract."  *Frazier*, 2026 WL 1235226, at *4 (cleaned up).  "[C]aselaw regarding the scope of a generic choice-of-law provision is unsettled, with the courts divided as to whether a generic choice-of-law clause only applies to contractual claims or more broadly applies to statutory and tort claims that relate to the contract."  *Id.*; *see also Brimer v. MDElite Laser & Aesthetic, LLC*, 770 F. Supp. 3d 876, 888–89 (E.D.N.C. 2025).

provides and the fees Guardian charges under the contract violate federal law. This contract-based illegality forms the basis for their UDTPA claims and NCDCA claim, which also requires an unfair trade practice. *See* discussion *infra*.

By implicit definition, the UDTPA classes include only those veterans who have a contract with the choice-of-law provision. Doc. 131 at 27.[2] Guardian's affirmative defense of the voluntary payment doctrine relies on the contract, Doc. 104 at 27–30, and other affirmative defenses that it raised earlier in the case also relied on the contract. Doc. 53 at 43–44 (raising affirmative defenses of "no material misrepresentation" and "commercially reasonable and lawful action"). At the summary judgment hearing, Guardian's counsel stated that "[the case] is basically a contract case. . . ." Doc. 174 at 40. And in a different case where different choice-of-law rules applied but involving the same contract, Guardian asserted that North Carolina law applied to a consumer protection tort claim. *See Young v. Veterans Guardian VA Claim Consulting LLC*, No. 24-CV-1021, Doc. 44 at 16–17 (M.D.N.C. Dec. 19, 2024) (applying Montana's choice of law rules and asserting that the contract provision includes tort claims related to the contract). Thus, the contract is closely intertwined with the plaintiffs' unfair trade practices claims. *Volvo Grp.*, 2019 WL 4919632, at *6.

Guardian decided that North Carolina law should apply to its agreement with clients, showing its clear intent to be governed by North Carolina law. Class members

---

[2] The class definitions require payment for a claim "under a consulting contract substantially similar to Exhibit A to the Consolidated Complaint." Doc. 131 at 27. The contracts attached to the Consolidated Complaint contain the choice-of-law provision. Doc. 52-1 at 11, 21, 31.

also agreed that North Carolina law should apply. That mutual intent is corroborated by the broader forum selection clause in the same sentence, which calls for courts in North Carolina "to adjudicate any dispute arising out of or relating to this agreement," Doc. 52-1 at p. 11 ¶ 8, showing the parties' more general intent. As everyone agrees, the disputes in this case arise out of and relate to the agreement. It only makes sense for North Carolina law to also govern whether Guardian's actions taken pursuant to that contract constitute unfair trade practices. And while enforceability of the contract is not directly at issue, the plaintiffs' claims, if successful, would undermine such enforceability. Based on the choice of law provision, the questions the claims raise as to enforceability, *see, e.g.*, *P & L Dev.*, 367 F. Supp. 3d at 429, the intent of the parties, *see, e.g.*, *Volvo*, 2019 WL 4919632, at *6, and the fact that the claims are closely related to the parties' contract, *see, e.g.*, *id.*, application of North Carolina law is appropriate.

Guardian contends that the choice of law provision in the contract does not apply because the claims at issue are essentially tort claims and the choice of law provision only encompasses disputes over the contract. *See generally* Doc. 180. The plaintiffs do allege in the operative complaint that Guardian made "false representations" to its veteran clients, *e.g.*, Doc. 52 at ¶ 36, but those "false representations" were allegedly made in the contract itself. *See, e.g.*, *id.* Moreover, the plaintiffs' arguments in their brief in favor of summary judgment on the UDTPA claims do not reference allegations of false statements. Doc. 110 at 23–25. As discussed, *supra*, the UDTPA claims closely relate to the contract because the claims rely on the contract language and both sides invoke the contract in their arguments, among other reasons.

Guardian contends that its assertions in *Young* are inapplicable because the facts were different, Montana choice of law rules applied, and the Court did not rely on Guardian's argument in that case. *See* Doc. 182. Unlike North Carolina which has not addressed the application of generic choice of law provisions to tort claims, the Montana Supreme Court has held that a generic choice of law provision applies to contract claims and tort claims related to the contract. *Masters Grp. Int'l., Inc. v. Comerica Bank*, 352 P.3d 1101, 1114–16 (Mont. 2015). The Court appreciates the difference, but that does not make Guardian's litigation conduct in *Young* irrelevant. The Court does not decide the choice of law issue based solely on Guardian's litigation conduct in *Young*; rather Guardian's argument in *Young* is one of many factors the Court has considered.

### B. North Carolina Choice of Law Rules – the UDTPA Claim

In the alternative, North Carolina choice of law rules also call for application of North Carolina law to the Unfair and Deceptive Trade Practices Act claims. If there is no applicable contractual provision, federal district courts sitting in diversity apply the choice-of-law rules of the state in which they sit. *Small v. WellDyne, Inc.*, 927 F.3d 169, 173 n.3 (4th Cir. 2019). Both parties agree that North Carolina's choice of law rules govern.

North Carolina courts consistently examine choice of law issues in terms of the nature of the cause of action. For example, the Supreme Court of North Carolina consistently has applied the doctrine of "lex loci, the law of the situs of the claim," to actions sounding in tort. *Boudreau v. Baughman,* 322 N.C. 331, 335, 368 S.E.2d 849, 854 (1988); *see Charnock v. Taylor*, 223 N.C. 360, 361, 26 S.E.2d 911, 913 (1943)

(noting "the lex loci" is the "law of the jurisdiction in which the transaction occurred or circumstances arose on which the litigation is based"); *but see New England Leather Co. v. Feuer Leather Corp.*, 942 F.2d 253, 255 (4th Cir. 1991) (noting that when the place of injury is open to debate, a "most significant relationship test seems appropriate"). The "interpretation of a contract is governed by the law of the place where the contract was made," unless there is a contrary choice of law provision in the contract. *Tanglewood Land Co. v. Byrd,* 299 N.C. 260, 262, 261 S.E.2d 655, 656 (1980). Federal courts take a similar approach, examining the nature of the cause of action to determine what law applies. *See, e.g.*, *Rhone-Poulenc Agro S.A. v. Monsanto Co.*, 73 F. Supp. 2d 554, 555–56 (M.D.N.C. 1999) (evaluating various causes of action and applying North Carolina law to a fraud claim, Illinois law to a breach of contract claim, and Connecticut law to breach of oral or implied agreement claims).

For a UDTPA claim, the plaintiff must establish an unfair or deceptive act or practice in or affecting commerce that proximately causes injury. *See Davis Lake Cmty. Ass'n v. Feldmann*, 138 N.C. App. 292, 296, 530 S.E.2d 865, 868 (2000); N.C. Gen. Stat. § 75-1.1. "[T]he UDTPA is not a tort; it is 'the creation of statute' and 'neither wholly tortious nor wholly contractual in nature." *Foodbuy, LLC v. Gregory Packaging, Inc.,* 987 F.3d 102, 121 (4th Cir. 2021) (quoting *Bernard v. Cent. Carolina Truck Sales, Inc.,* 68 N.C. App. 228, 230, 314 S.E.2d 582, 584 (1984)). It is, instead, "a different legal creature and not subject to the same defenses as traditional contract and tort claims." *Id.* at 121–22 (quoting *Media Network, Inc. v. Long Haymes Carr, Inc.,* 197 N.C. App. 433, 678 S.E.2d 671, 683 (2009)).

The nature and elements of a UDTPA claim may vary depending on whether it is based on allegedly unfair practices or on allegedly deceptive practices. *See, e.g.*, *CPI Sec. Sys., Inc. v. Vivint Smart Home, Inc.*, 145 F.4th 390, 401 (4th Cir. 2025) (noting "unfair competition claims do not have as an element the plaintiff's reliance" in contrast to a UDTPA claim "tantamount to fraud, which requires reliance"); *Lifebrite Hosp. Grp. of Stokes, LLC v. Blue Cross & Blue Shield of N.C.*, No. 1:18-CV-293, 2026 WL 1383204, at *19 (M.D.N.C. May 18, 2026) (examining a UDTPA claim that "does not sound in fraud"); *SciGrip, Inc. v. Osae*, 373 N.C. 409, 427, 838 S.E.2d 334, 347 (2020) (discussing the need for "substantial aggravating circumstances" for a breach of contract to constitute an unfair trade practice).

"The Supreme Court of North Carolina has not addressed the proper test for determining when the UDTPA applies" to out-of-state plaintiffs. *Teijin Auto. Techs. NA Holding Corp. v. Sompo Am. Ins. Co.*, No. 24-CV-159, 2025 WL 932934, at *7 (M.D.N.C. Mar. 27, 2025). The North Carolina Court of Appeals has recognized a "split of authority" within its decisions about whether the lex loci test or an alternative "most significant relationship" test should be applied to UDTPA claims. *Stetser v. TAP Pharm. Prods., Inc.*, 165 N.C. App. 1, 14–15, 98 S.E.2d 570, 580 (2004) (analyzing under both standards). Under the lex loci test, "the substantive law of the state where the injury or harm was sustained or suffered," applies; this is, "ordinarily, the state where the last event necessary to make the actor liable or the last event required to constitute a tort takes place." *SciGrip*, 373 N.C. at 420 (cleaned up). "The most significant relationship test considers (1) the place of injury, (2) the place of the conduct causing the injury, (3) the

domiciles of the parties, and (4) the place where the relationship is centered." *Teijin Auto.*, 2025 WL 932934, at *8.

The North Carolina Business Court generally applies the lex loci test to UDTPA claims. *See, e.g.*, *Window World of Baton Rouge, LLC v. Window World, Inc.*, 2024 WL 5053172, at *44 (N.C. Super. Nov. 26, 2024), *amended on reconsideration*, 2024 WL 5098060 (N.C. Super. Dec. 12, 2024). "[F]ederal courts generally appear to favor the lex loci rule," *SmithKline Beecham Corp. v. Abbott Labs.*, No. 15-CV-360, 2017 WL 1051123, at *6 (M.D.N.C. Mar. 20, 2017); *see also P & L Dev.*, 367 F. Supp. 3d at 428 (collecting cases), but that approach is not universal. *See Hardee's Food Sys., Inc. v. Beardmore*, No. 96-CV-508, 1997 WL 33825259, at *3 (E.D.N.C. June 6, 1997) (finding the UDTPA applicable based on "substantial in-state effect"); *Hometown Publ'g., LLC v. Kidsville News!, Inc.*, No. 14-CV-76, 2014 WL 7499450, at *5–6 (E.D.N.C. Oct. 3, 2014) (Mag. J., recommendation), *adopted*, 2015 WL 13650095, at *4–5 (E.D.N.C. Jan. 5, 2015) (following *Hardee's* reasoning and allowing the UDTPA claim by an out-of-state plaintiff that alleged no in-state injury based on misconduct committed in North Carolina). In many cases, federal courts have avoided the issue because the result is the same under the lex loci test and the most significant relationship test. *See Teijin Auto.*, 2025 WL 932934, at *8; *SmithKline*, 2017 WL 1051123, at *9; *Guzman v. Diamond Candles, LLC*, No. 15-CV-422, 2016 WL 5679451, at *2–3 (M.D.N.C. Sep. 30, 2016).

A hard and fast choice-of-law rule on the applicability of the UDTPA does not make sense because of the wide range of behaviors and actions that can constitute unfair trade practices. Some, such as those based on fraud, are more like tort claims, and some,

such as those based on an aggravated breach of contract, are more like contract claims. Other UDTPA claims can fall somewhere in the middle of that spectrum. And, as noted *supra*, when the place of injury is open to debate, courts apply the most significant relationship test. *See New England Leather*, 942 F.2d at 255; *see also* n. 4 *infra*.

The varying nature of UDTPA claims warrants a case-by-case analysis considering the relevant facts and the nature of the conduct claimed to constitute an unfair or deceptive trade practice, any difficulties in determining where the "last act" occurred, and, if applicable, the parties' contract. The North Carolina legislature's removal of the UDTPA's geographical limitation, *see Window World*, 2024 WL 5053172, at \*44, supports such flexibility.

In this case, these considerations lead to the application of North Carolina law. At summary judgment, the plaintiffs focus their UDTPA claims on the contention that they were injured when Guardian prepared and presented their claims without accreditation and without disclosure to the VA, when they paid the illegal fees to Guardian in North Carolina,[3] and when they were exposed to Guardian's unlawful conduct of acting as an unaccredited agent. Doc. 110 at 23–25; Doc. 174 at 25–26. These alleged injuries occurred both in their locations at the time they paid Guardian and in North Carolina where Guardian received payment and where all of Guardian's acts occurred. *See New England Leather*, 942 F.2d at 255 (stating that when the place of injury is open to debate, a "most significant relationship test seems appropriate"); *Teijin Auto.*, 2025 WL 932934,

---

[3] The record does not contain evidence of where the named plaintiffs or any class members were located when they made payments to Guardian. *See* n. 4 *infra*.

12

at *7 (same); *see also Cargill, Inc. v. WDS, Inc.*, No. 3:16-CV-848, 2018 WL 1525352, at *8 (W.D.N.C. Mar. 28, 2018) (confirming that the injury in a UDTPA claim arose when the plaintiffs paid the defendant in North Carolina, which constituted the last act under the lex loci test); *Harco Nat'l Ins. Co. v. Grant Thornton LLP*, 206 N.C. App. 687, 696–97, 698 S.E.2d 719, 725–26 (2010) (rejecting a bright line rule that the injured party suffers its injury at its principal place of business and instead determining where an injured party in fact sustained its alleged injury to determine the applicable law).

And, as already noted, Guardian has chosen North Carolina law to apply to any dispute related to its contracts with its clients, which this case assuredly is. *See* discussion *supra*. Even if North Carolina courts would not apply the contractual choice of law provision as determinative, that does not make it irrelevant.

It is undisputed that North Carolina is the place of the conduct causing the alleged injury because all of Guardian's acts occurred in North Carolina. Doc. 73-2 at 37, 41. Guardian is domiciled in North Carolina. Doc. 13 at 2; Doc. 52 at ¶ 24; Doc. 53 at ¶ 24. The relationships with class members are centered in North Carolina where Guardian operates, communicates with class members, and prepares VA claims. Doc. 73-2 at 37, 41; Doc. 52-1 at 3; Doc. 52-2 at 4. Guardian received payment in North Carolina. *See* Doc. 52-2 at 3–4 (invoices stating acceptance of electronic card payment, automatic bank transfer, and mailed checks and using Guardian's North Carolina address). Deciding where the "last act" creating liability occurred may also be complicated.[4]

---

[4] This can be complicated legally and factually. Is the last act where payment was made, where payment was received, or some other place? If it is where payment was made, where did

Considering the facts and claims made specific to this case, North Carolina law applies to the UDTPA claims of the plaintiffs and class members. Guardian's motion for summary judgment will be denied as to its argument that the UDTPA does not apply to the out-of-state plaintiffs and class members.

### C. North Carolina Choice of Law Rules – the NCDCA Claim

"All NCDCA claims require: (1) a consumer; (2) that owes a debt; (3) to a debt collector." *Onnipauper LLC v. Dunston*, 290 N.C. App. 486, 490, 892 S.E.2d 487, 491 (2023). In addition to these basic elements, an NCDCA claim requires a showing that the debt collector committed an unfair act that affects commerce and that proximately injures the consumer. *Id*.

In the initial summary judgment briefing, neither party specifically addressed the choice-of-law issue in discussing the NCDCA claim. In the supplemental briefing, the parties direct their choice-of-law arguments to both the UDTPA claims and the NCDCA claim but without distinguishing between the two. *See generally* Docs. 179, 180. To the extent that the plaintiffs rely on the same unfair acts to support their NCDCA claim as support their UDTPA claims at summary judgment–illegally acting as an agent for clients on VA disability claims in violation of federal VA accreditation law and seeking to collect

---

that happen? The parties seem to assume that the class member's home state is the location from which payment was made. Doc. 104 at 26; Doc. 110 at 26; *see also* n. 4 *infra*. But gone are the days when all bills were paid by mailing a check at a nearby post office. People visit family, travel, and work across state lines, and it is easy to make payments from a mobile phone or other mobile device from anywhere; is payment made where the payor lives, or where the payor is physically located when they hit the "pay now" button, or where the branch bank where the account was opened is physically located, where the online bank is headquartered, or somewhere else?

illegal fees for those claims in violation of federal law–the analysis is the same and North

Carolina law applies.[5]

### D. Conclusion

Considering the elements of the claims, the facts of this case, and the parties'

contract, North Carolina law applies to the UDTPA and the NCDCA claims based on the

unfair act of acting as an agent in violation of federal law brought by the out-of-state

named plaintiffs and class members.

## IV. Liability Under Counts I and II: Unfair and Deceptive Trade Practices

Both parties move for summary judgment as to liability on the two UDTPA

claims. For a UDTPA claim, the plaintiff must establish an unfair act or practice in or

affecting commerce that proximately causes injury. *See Davis Lake Cmty. Ass'n*, 138

N.C. App. at 296; N.C. Gen. Stat. § 75-1.1. The plaintiffs contend that Guardian

committed *per se* violations of the UDTPA by acting as an unaccredited agent in

preparing and presenting initial VA disability claims (Count I) and non-initial VA

disability claims (Count II). Doc. 110 at 23; *see also* Doc. 52 at ¶¶ 188–90, 207–08, 225–

28, 283. In the alternative, they contend that even if Guardian's actions were not *per se*

---

[5] In the operative complaint, the plaintiffs alleged facts framing the NCDCA claim in terms of false representations. *See* Doc. 52 at ¶¶ 300–03. They have not moved for summary judgment on the NCDCA claim, and it is unclear what facts they plan to use to support that claim at trial. The Court declines to address whether North Carolina law would apply to this more tort-like aspect of the plaintiffs' NCDCA claim absent application of the contractual provision because the parties have not addressed that specific issue and it is not necessary given the Court's decision that the contractual choice of law provision applies. *See Margolin v. Nat'l Assoc. of Immigration Judges*, 608 U.S. __, 146 S. Ct. 1285, 1288 (2026) (per curiam) ("Federal courts adhere to the principle of party presentation.").

UDTPA violations, its actions were still unfair trade practices. Doc. 110 at 23–25; *see also* Doc. 52 at ¶¶ 187–208, 222, 279–82.

Whether a defendant committed the acts in question can be a question of fact, but whether those acts constitute unfair trade practices is a question of law for the Court. *See, e.g.*, *Legacy Data Access, LLC v. MediQuant, Inc.*, No. 3:15-CV-584, 2017 WL 6001637, at *16 (W.D.N.C. Dec. 4, 2017). Whether such acts affect commerce or proximately cause injury are questions of fact. *See id.*

### A. What is an Unfair Trade Practice?

"A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Walker v. Fleetwood Homes of N.C., Inc.*, 362 N.C. 63, 72, 53 S.E.2d 393, 399 (2007) (cleaned up). "[T]he violation of a statute designed to protect the consuming public may constitute an unfair and deceptive practice, even where the statute itself does not provide for a private right of action." *Stanley v. Moore*, 339 N.C. 717, 723, 454 S.E.2d 225, 228 (1995). But such a "violation does not automatically result in an unfair or deceptive trade practice." *Walker*, 362 N.C. at 70.

In deciding whether the violation of a statute constitutes an unfair trade practice, the North Carolina Supreme Court has looked to whether the "statute at issue defined in detail unfair methods of [business] and unfair and deceptive acts or practices in the . . . industry, thereby establishing the [legislative] intent to equate a violation of that statute with the more general provision of § 75-1.1." *Id*. at 71; *see also Cross v. Ciox Health, LLC*, 438 F. Supp. 3d 572, 586 (E.D.N.C. 2020). Violations of regulatory statutes may be

*per se* violations if "the regulatory statute specifically defines and proscribes conduct which is unfair or deceptive within the meaning of N.C. Gen. Stat. § 75-1.1." *Noble v. Hooters of Greenville (NC), LLC*, 199 N.C. App. 163, 170, 681 S.E.2d 448, 454 (2009); *see also Djarum v. Dhanraj Imps., Inc.*, 876 F. Supp. 2d 664, 668 (W.D.N.C. 2012) (violation of the Lanham Act constitutes an unfair trade practice); *Camco Mfg., Inc. v. Jones Stephens Corp.*, 391 F. Supp. 3d 515, 528 (M.D.N.C. 2019) (same). Even if a violation of federal law does not constitute a *per se* UDTPA violation, such violation may still be the basis for an unfair practice, depending on the facts. *See CPI Sec. Sys., Inc. v. Vivint Smart Home, Inc.*, No. 20-CV-504, 2021 WL 5225634, at *5 n.4 (W.D.N.C. Nov. 9, 2021).

### B. Guardian's Violations of Federal Law Constitute *Per Se* Unfair Trade Practice Violations

Section 5901 proscribes the unfair and deceptive conduct in the industry by discussing the accreditation requirements for agents and warning against "predatory practices" that occur when unaccredited agents violate those requirements. 38 U.S.C. § 5901(b); *see, e.g., Noble*, 199 N.C. App. at 170 (stating that regulatory statutes must define and proscribe conduct that is unfair within the meaning of § 75-1.1 for a violation of the statute to constitute a *per se* UDTPA violation); *Cross*, 438 F. Supp. 3d at 586 (same and adding that courts look to whether statutes define in detail unfair practices in the industry thus establishing the legislative intent for a § 75-1.1 violation). Section 5901 requires the VA to provide links to online tools for claimants to (1) report individuals violating Chapter 59; (2) search a list for accredited agents, attorneys, and other entities;

17

and (3) find final disciplinary decisions for people who have violated Chapter 59.  38 U.S.C. § 5901(b)(1)(B)-(D).  Those requirements protect veterans by cautioning against unauthorized claim assistance and giving them tools to find information about proper assistance.  *Id*. § 5901(b).

Here, it is undisputed that Guardian engages in this conduct by acting as an unaccredited agent and charging fees.  *See* Doc. 175 at 19.  In addition, Guardian's fees are either prohibited by federal law (as to initial claims) or are assessed in an attempt to avoid the required VA oversight (as to non-initial claims).  *See* discussion *infra* at 19–20.  These violations continued to occur after the VA issued cease-and-desist letters.[6]  *See Cross*, 438 F. Supp. 3d at 587–88 (looking to whether the regulatory violation "readily translated to" a type of UDTPA violation and whether the violation was a single incident or ongoing practice).  These actions, taken together, are unfair, prohibited by law, and predatory.  They constitute unfair trade practices.[7]

Guardian contends that § 5901 does not specifically define and proscribe the unfair or deceptive conduct to establish a *per se* UDTPA violation.  Doc. 125 at 24–25.  But the statute requires agents to be accredited to prepare and present disability claims

---

[6] As early as January 2019, Guardian knew that the VA believed Guardian was violating the federal accreditation laws.  *See* Doc. 73-7 (cease-and-desist letters from the VA to Guardian in January 2019, and August 2024).

[7] There cannot be a *per se* UDTPA violation based on a violation of a federal law if North Carolina law regulates that legal area.  *See Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 805 (4th Cir. 2001).  Before October 1, 2025, North Carolina did not define unfair trade practices in the context of charging fees for assisting veterans with VA claims, N.C. Gen. Stat. § 143B-1278, so a § 5901 violation before October 1, 2025, can be a *per se* UDTPA violation.  *See Lyons P'ship*, 243 F.3d at 805; *see also* Doc. 178 at 6.  Claims after that date have already been dismissed on other grounds.  Doc. 178 at 6.

18

and requires the VA to warn about people violating the accreditation mandate.  38 U.S.C. § 5901.  It directs the VA to provide a search tool for claimants to find agents and attorneys accredited to prepare, present, or prosecute VA claims.  *Id*. § 5901(b)(1)(C). The statute sufficiently describes the unfair and deceptive conduct because it details the predatory practice of acting as an unaccredited agent.  *See Noble*, 199 N.C. App. at 170. Guardian's federal accreditation violations translate to "unfair or deceptive acts or practices" under § 75-1.1, and Guardian engages in that exact predatory practice by acting as an unaccredited agent in violation of federal law.

### C.  Guardian's Violations of Federal Law Constitute Unfair Trade Practice Violations

Alternatively, Guardian's actions of preparing claims without accreditation and charging fees outside the statutory and regulatory system constitute unfair trade practices, viewed in toto.  *See CPI Sec. Sys.*, 2021 WL 5225634, at *5 n.4.

First, as has already been shown, Guardian violates federal law by preparing and presenting claims without accreditation.  Doc. 175 at 19.

Second, Guardian charges fees for initial claims that are illegal under federal law and avoids oversight by the VA for the fees it charges for non-initial claims.  Federal law prohibits charging a fee in connection with the filing of an initial disability claim for benefits before the VA even by accredited agents.  38 U.S.C. § 5904(c)(1).  Guardian acknowledges that it could not charge clients any amount for assistance with initial VA disability claims if it was accredited.  Doc. 73-2 at 29–33.  Guardian's action of charging for assistance with initial claims as an unaccredited agent violates federal law, and

Guardian engages in predatory practices by acting as an unaccredited agent and charging fees for preparing such claims in violation of federal law. The amount Guardian charges its clients for unlawful assistance supports that its actions constitute UDTPA violations, at least as to initial claims.

It appears to be disputed whether the fees Guardian charges for preparing non-initial claims are always, often, usually, or sometimes larger than would be approved by the VA.[8] But it is undisputed that Guardian instructs veterans not to mention Guardian's assistance in its communications with the VA and that the way Guardian presents claims avoids oversight by the VA for reasonableness of the fee charged by accredited agents.

Finally, the evidence is undisputed that Guardian attempts to avoid the flat prohibition against preparing and presenting claims without accreditation in ways that contradict reality, border on subterfuge as to the VA, or are otherwise unfair. Guardian instructs clients not to mention Guardian's involvement in the preparation or presentation of the claim in any materials submitted to the VA, *id*. at 24–25, thus undermining the VA's ability to identify statutory violations and predatory fees. Guardian knows that it is not accredited, and it knows that no one, not even accredited agents, can charge for preparing initial claims. *See id*. at 29–33. It is undisputed that Guardian knew what it was doing and acted intentionally. It continues to violate federal law despite at least two cease-and-desist letters from the VA. Doc. 73-7.[9] Guardian illegally charges fees, and

---

[8] The parties did not develop this point in the summary judgment briefing and disagreed on it at a hearing. This factor does not play into the Court's determination.

[9] *See supra* note 6.

20

class members have paid over $250,000,000 in fees during the class period.  Doc. 75-1; Doc. 147 at 16.

It is undisputed that Guardian's actions affected commerce as there was an exchange of money.[10]  And it injured the class members because they paid for assistance that Guardian was not allowed to provide without accreditation.

The plaintiffs' motion for summary judgment as to liability on its Unfair and Deceptive Trade Practice Claims, Count I and Count II, will be granted.  Guardian's motion for summary judgment on Count I and Count II will be denied.

## V.    Count III:  North Carolina Debt Collection Act Claim

Only Guardian moves for summary judgment on Count III, the plaintiffs' claim under the North Carolina Debt Collection Act, and it moves on a limited ground.  *See* Docs. 103, 109.  In Count III of the operative complaint, the plaintiffs alleged that Guardian engaged in unfair debt collection, citing, among other provisions, the first provision of § 75-54(4).  Doc. 52 at ¶ 300.  Guardian moves for summary judgment only to the extent the plaintiffs allege a violation of this provision.

The NCDCA lists a number of specific examples of prohibited unfair acts.  In the first clause of § 75-54(4), the provision at issue in the pending motion, the NCDCA prohibits, "[f]alsely representing the character, extent, or amount of a debt against a consumer or of its status in any legal proceeding . . . ."  N.C. Gen. Stat. § 75-54(4).[11]

---

[10] Guardian does not dispute the "in commerce" element.  Doc. 174 at 50.

[11] Section 75-54(4) prohibits other unfair conduct not raised by the plaintiffs.

As a number of courts have held, to be prohibited and unfair under this part of § 75-54(4), the statute requires a legal proceeding. *See Waddell v. U.S. Bank Nat'l Ass'n*, 395 F. Supp. 3d 676, 683 (E.D.N.C. 2019) (collecting cases). The plaintiffs have not presented any evidence of a false statement in a legal proceeding, and they cite no authority for their argument that this provision of the statute does not require a legal proceeding. Doc. 110 at 28–29; Doc. 127 at 14–15. Guardian is entitled to summary judgment on this aspect of the NCDCA claim.

Guardian's motion for partial summary judgment directed to this aspect of the NCDCA claim in Count III will be granted.

## VI. The Voluntary Payment Defense

Guardian asserts the affirmative defense of "voluntary payment" as to all of the plaintiffs' claims and contends its application precludes the plaintiffs' request for recovery of fees paid. Doc. 104 at 27. In North Carolina, "a payment cannot be recovered if it is voluntarily made by a person with full knowledge of all facts relevant to the payment." *Boydell v. Wells Fargo Bank, N.A.*, No. 12-CV-35, 2013 WL 5462255, at *1 (W.D.N.C. Sep. 30, 2013); *see Guerry v. Am. Tr. Co.,* 234 N.C. 644, 647, 68 S.E.2d 272, 274 (1951).[12] This defense applies generally to breach of contract and unjust enrichment claims. *See Guerry*, 234 N.C. at 647. Guardian has not cited nor has the Court found a North Carolina case dismissing a UDTPA or NCDCA claim based on this

---

[12] As damages, the plaintiffs seek to recover the fees paid by the class members for using Guardian's services to prepare and present their claims. Doc. 73 at 27.

22

defense. As discussed, *supra*, the elements of a UDTPA and NCDCA claim are different from contract and unjust enrichment claims. *See, e.g., Foodbuy*, 987 F.3d at 121–22.

In addition, courts have recognized that application of the voluntary payment defense to consumer protection statutory claims "would undermine the legislative purpose in enacting those statutes." *Braan v. Wells Fargo Home Mortg., Inc. by Wells Fargo Bank, N.A.*, No. 17-CV-380, 2017 WL 3315253, at *7 (D. Md. Aug. 3, 2017).[13] That is the case here. The defense does not apply to bar the plaintiffs' claims.

Finally, Guardian has not established that the plaintiffs had "full knowledge of all facts relevant to the payment." *Boydell,* 2013 WL 546225, at *1. The plaintiffs and class members knew that Guardian was not accredited by the VA, but Guardian's contract stated that its "services provided are [in accordance with] regulations and limitations identified in Chapter 59, Title 38, United States Code and Title 38, Code of Federal Regulations, section 14." Doc. 52-1 at p. 4 ¶¶ 2(a)(2)(a), 2(a)(3)(a); *see id*. at p. 3 ¶ 1. That statement is not accurate. Doc. 73-7 at 3–4, 7–8; Doc. 175 at 10, 19. The voluntary payment doctrine does not apply.

Guardian's motion for summary judgment on this defense will be denied.

## VII.    Conclusion

North Carolina law applies to the UDTPA and the NCDCA claims based on the unfair act of acting as an agent in violation of federal law brought by the out-of-state

---

[13] The Court doubts even Guardian would assert that the voluntary payment doctrine defense applies against a *per se* UDTPA violation under the new Military Veteran Support Act provisions. *See* N.C. Gen. Stat. § 143B-1278(d).

named plaintiffs and class members. Guardian committed unfair trade practice acts that affected commerce and injured the class members, and the plaintiffs are entitled to summary judgment as to liability on their UDTPA claims. To the extent the plaintiffs contend that Guardian has acted unfairly in ways prohibited by the first provision of § 75-54(4), Guardian is entitled to summary judgment because the plaintiffs have neither alleged nor offered evidence of any false or misleading representation in a legal proceeding. Guardian's motion will be denied as to the voluntary payment defense because the defense does not apply.

It is **ORDERED** that:

1. The plaintiffs' motion for summary judgment, Doc. 109, is **GRANTED** as to liability on the unfair trade practices claims in Counts I and II.

2. The defendant's motion for summary judgment, Doc. 103, is **GRANTED** in part as follows:

   a. The NCDCA Claim in Count III is **DISMISSED** to the extent that it is based on N.C. Gen. Stat. § 75-54(4).

   b. The remaining aspects of the NCDCA claim in Count III may proceed to trial.

3. The defendant's motion for summary judgment, Doc. 103, is otherwise **DENIED**.

This the 3rd day of August, 2026.

_____
UNITED STATES DISTRICT JUDGE

24