**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| JENNIFER FORD, ERIC BEARD, and BRIAN OTTERS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VETERANS GUARDIAN VA CLAIM CONSULTING, LLC,<br><br>Defendant. | No. 1:23-cv-756-CCE-LPA |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**

## TABLE OF CONTENTS

INTRODUCTION ........ 1

BACKGROUND ........ 2

ARGUMENT ........ 3

I. The Orders Involve Three Controlling Questions Of Law As To Which There Is Substantial Ground For Difference Of Opinion ........ 3

A. Question One: Whether North Carolina Law Applies To The Claims Of The Out-Of-State Named Plaintiffs And Class Members. ........ 3

B. Question Two: Whether "Anyone Who Assists Veterans With Preparation Or Presentation Of A Claim For A Fee Is An Agent And Must Be Accredited By The VA." ECF No. 175 at 10. ........ 7

C. Question Three: Whether Preparing Claims Without Accreditation And Charging Related Fees Constitutes An Unfair Trade Practice. ........ 8

II. Interlocutory Review Would Materially Advance The Ultimate Termination Of This Litigation ........ 8

CONCLUSION ........ 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Clark v. Martinez*,
543 U.S. 371 (2005) .......... 8

*Karanik v. Cape Fear Acad., Inc.*,
No. 7:21-CV-169, 2022 WL 16556774 (E.D.N.C. Oct. 31, 2022) .......... 6

*United States ex rel. Michaels v. Agape Senior Cmty., Inc.*,
848 F.3d 330 (4th Cir. 2017) .......... 10, 11

*Northcross v. Bd. of Educ. of Memphis City Schs.*,
412 U.S. 427 (1973) (per curiam) .......... 7

*P & L Dev., LLC v. Bionpharma, Inc.*,
367 F. Supp. 3d 421 (M.D.N.C. 2019) .......... 5

*Riley v. Dow Corning Corp.*,
876 F. Supp. 728 (M.D.N.C. 1992) .......... 9

*Sacks Holdings, Inc. v. Grin Natural USA Limited*,
No. 1:23-CV-1058, 2025 WL 2552589 (M.D.N.C. June 11, 2025) .......... 9, 10

*Veterans Guardian VA Claim Consulting LLC v. Platkin*,
133 F.4th 213 (3d Cir. 2025) .......... 7, 8

*Walmart v. Quarterfield Partners LLC*,
No. 20-1927, 2022 WL 16859737 (4th Cir. Nov. 10, 2022) .......... 6

*Yamaha Motor Corp., USA v. Calhoun*,
516 U.S. 199 (1996) .......... 6

**Statutes**

28 U.S.C. § 1292(b) .......... *passim*

38 U.S.C. § 5901(b) .......... 8

**Other Authorities**

LR 7.2(a) .......... 2

## INTRODUCTION

Plaintiffs' opposition largely fails to address, let alone rebut, the factors warranting certification of this Court's Orders under 28 U.S.C. § 1292(b). Substantial grounds for difference of opinion exist on each of the three controlling questions of law Veterans Guardian has identified, and resolving any one in Veterans Guardian's favor would materially advance the ultimate termination of this litigation.

The first controlling question—whether North Carolina law applies to the claims of the out-of-state named plaintiffs and class members—presents an especially compelling case for certification. The Court's answer to that threshold question rests on two clean legal issues, which both involve splits of authority unresolved by the state's highest court. Specifically, this Court noted that the North Carolina Supreme Court (1) "has not decided whether [a] generic choice-of-law provision applies to UDTPA claims[,]" ECF No. 183 at 5, and (2) "has not addressed the proper test for determining when the UDTPA applies" to out-of-state plaintiffs, *id.* at 10. The Court also acknowledged that other courts reached "divergent conclusions" on both questions. *Id.* at 5, 10–11. Yet Plaintiffs never address the Court's discussion of these splits in authority.

Plaintiffs instead reframe these pure questions of law as "application of law to this case's distinct facts" to argue that timely appellate review is unwarranted. ECF No. 195 at 9.[1] Plaintiffs are mistaken. The Court engaged in a factual analysis *after* (and because) it had embraced Plaintiffs' proposed legal frameworks—a "totality of the circumstances"

---

[1] CM/ECF system-appended page numbers cited.

test on the first sub-question and a "most significant relationship" test on the second. The Fourth Circuit could resolve each question in Veterans Guardian's favor without delving into the factual record.

The second and third controlling questions—whether anyone who assists a veteran with claim preparation is an agent under the federal statute, and whether preparing claims without accreditation for a fee constitutes an unfair trade practice—also warrant immediate appellate review. Plaintiffs do not dispute that both questions are controlling. Instead, they water down the substantial ground for difference of opinion by misconstruing the relevance of the various authorities in tension with this Court's decision.

Appellate resolution of any one of these questions would advance the ultimate termination of this litigation. This class action involves more than 60,000 class members and Plaintiffs seek over $1.2 *billion* in trebled damages, civil penalties, and interest. Additional briefing and trial loom. This is precisely the extraordinary case in which section 1292(b) certification serves its purpose: avoiding protracted, expensive litigation that rests on a legal foundation the appellate court may reject. The Court should grant Veterans Guardian's motion.

## BACKGROUND

Since Veterans Guardian filed its motion, this Court issued a Scheduling Order setting trial for February 8, 2027. ECF No. 192 at 2.[2] The Court also directed the parties

[2] This brief contains a concise statement of new facts "to the limited extent of responding to factual matters newly raised in the response." LR 7.2(a); *see* ECF No. 195 at 20 (faulting Veterans Guardian for "fail[ing] to acknowledge that the 2027 trial date is set[,]" though the trial date was set after Veterans Guardian filed its motion).

to submit supplemental summary judgment motions regarding "legal issues surrounding the NCDCA claim and the appropriate calculation of damages" for both the NCDCA and UDTPA claims. *Id.* at 1. In their supplemental motion, Plaintiffs specified that they seek $1,041,540,983.25 in trebled damages, $127,774,000 in civil penalties, and over $84,845,165 in prejudgment interest. ECF No. 197 at 31–32. Veterans Guardian will file its opposition and cross-motion on October 2.

The Court also set pre-trial deadlines for (1) proposed verdict sheets and jury instructions; (2) pre-trial disclosures of witness and exhibit lists; (3) motions in limine and Daubert motions; (4) designations of deposition testimony for trial; and (5) trial briefs. ECF No. 192 at 3–5.

## ARGUMENT

### I. The Orders Involve Three Controlling Questions Of Law As To Which There Is Substantial Ground For Difference Of Opinion

Plaintiffs have failed to refute that at least one of the three controlling questions of law warrants interlocutory review.

#### A. <u>Question One</u>: Whether North Carolina Law Applies To The Claims Of The Out-Of-State Named Plaintiffs And Class Members.

The first controlling question is whether "North Carolina law applies to the UDTPA and the NCDCA claims . . . brought by the out-of-state named plaintiffs and class members." ECF No. 183 at 15. The Court's answer rests on two pure legal issues: (1) whether, under North Carolina law, a generic choice-of-law provision governs UDTPA and NCDCA claims, *id* at 4–8; and (2) whether, "in the alternative, North Carolina choice of law rules also call for application of North Carolina law to the [UDTPA and NCDCA]

claims." *Id.* at 8–14. As this Court acknowledged, both of these questions involve splits of authority unresolved by the state's Supreme Court. *Id.* at 5, 10.

Plaintiffs try to reframe these two issues as "fact-bound" rulings that require this Court's "application of law to this case's distinct facts." ECF No. 195 at 9. Not so. Veterans Guardian is not seeking review of the Court's factual analysis—it is seeking review of the controlling, antecedent question of pure law: which legal frameworks govern in the first place. Resolution of that question in Veterans Guardian's favor would obviate the need for the Court's subsequent factual analysis.

On the first sub-issue, there is no factual dispute about the relevant contract. Everyone agrees that the choice-of-law provision in the Consulting Service Agreement ("CSA") is "generic." ECF No. 183 at 5 n.1. The only contested point is whether, under North Carolina law, a generic choice-of-law provision applies to UDTPA and NCDCA claims. That is a pure question of law. The Court engaged in factual analysis only because it embraced Plaintiffs' totality-of-the-circumstances framework, which "look[s] to the facts of the case to determine the intent of the parties and whether the claim is closely related to the parties' contract." *Id.* at 5.

If Veterans Guardian is correct that generic choice-of-law clauses do not extend to UDTPA and NCDCA claims, the Fourth Circuit would not need to engage in any factual analysis. North Carolina's default choice-of-law principles would dictate which state's substantive law applies, and the Fourth Circuit would proceed to the second sub-issue. This first sub-issue therefore presents a pure question of law.

Plaintiffs' framing fares no better on the second sub-issue. Here, too, Plaintiffs conflate the underlying question of law—which choice-of-law test governs—with the Court's follow-on application of its chosen choice-of-law framework. The factual analysis that Plaintiffs describe arose only *because* the Court decided to apply the "most significant relationship" test. ECF No. 183 at 11–15. By contrast, if the *lex loci* test governs, as Veterans Guardian urges and several courts have concluded, the Fourth Circuit would simply look to where Plaintiffs made their payments. *See P & L Dev., LLC v. Bionpharma, Inc.*, 367 F. Supp. 3d 421, 428–29 (M.D.N.C. 2019) (explaining that under the *lex loci* rule, the "law of the State where the last act occurred giving rise to [the plaintiff's] injury governs[,]" and, for claims of unfair and deceptive trade practices in particular, courts "look at the location where the economic loss was felt").

There is no evidence (or even allegation) that the class representatives paid fees in North Carolina. *See* ECF No. 110 at 26 (acknowledging Plaintiffs are "out-of-state individuals" who have not alleged an "in-state injury," but arguing Plaintiffs are nevertheless permitted to pursue claims under the North Carolina UDTPA because, among other things, Veterans Guardian "received payments" in North Carolina). Each of the named Plaintiffs resided outside of North Carolina during all relevant times—Ford in Texas, Beard in Ohio, and Otters in Mississippi. *See, e.g.*, Ford Dep. 14:9–15, ECF No. 106-2; *id.* at 42:19–23, 77:3–78:8; Beard Dep. 8:3–5, ECF No. 106-9; Beard Dep. Ex. 16 (payment confirmation), ECF No. 106-15; Otters Dep. 10:18–11:1, ECF No. 106-16; Otters Dep. Ex. 22 (payment confirmation), ECF No. 106-21. And Plaintiffs have never argued, let alone established, that they made payments outside their home states.

So Plaintiffs are wrong that this threshold choice-of-law question resembles the situation confronted in *Walmart v. Quarterfield Partners LLC*, No. 20-1927, 2022 WL 16859737 (4th Cir. Nov. 10, 2022). There, the Fourth Circuit dismissed the section 1292(b) appeal because the district court had "simply applied *settled* principles of Maryland law to interpret the particular terms of the leases at issue." *Id.* at *2 (emphasis added). Here, the choice-of-law framework remains unresolved by the North Carolina Supreme Court, and (as this Court recognized) it has divided the courts. That is precisely the kind of pure legal question section 1292(b) is designed to address. *See Karanik v. Cape Fear Acad., Inc.*, No. 7:21-CV-169, 2022 WL 16556774, at *5 (E.D.N.C. Oct. 31, 2022) (certifying legal question that would not require the Fourth Circuit to "delve significantly into the facts").

Plaintiffs are wrong that the Court's "two independent grounds" for applying North Carolina law somehow create a "fundamental problem" because reversal of one does not eliminate the other. ECF No. 195 at 12–13. The Court's alternative legal holdings do not prevent these two issues from being dispositive. Each presents an unsettled question of law, and the Fourth Circuit can resolve them together in a single appeal.

* * *

If the Court agrees that this first question is a controlling one of law "as to which there is substantial ground for difference of opinion[,]" it can skip to the final analysis of whether "an immediate appeal from the order may materially advance the ultimate termination of the litigation[.]" 28 U.S.C. § 1292(b); *see Yamaha Motor Corp., USA v. Calhoun*, 516 U.S. 199, 205 (1996) ("[T]he appellate court may address any issue fairly included within the certified order because it is the *order* that is appealable, and not the

controlling question identified by the district court." (internal quotation marks and citation omitted)). In that case, because section 1292(b) requires only a certification that the order "involves *a* controlling question of law[,]" 28 U.S.C. § 1292(b) (emphasis added), the Court need not evaluate the second and third questions.

### B. <u>Question Two</u>: Whether "Anyone Who Assists Veterans With Preparation Or Presentation Of A Claim For A Fee Is An Agent And Must Be Accredited By The VA." ECF No. 175 at 10.

To the extent the second question remains relevant to the Court's certification analysis, Plaintiffs do not seriously dispute that "the proper construction of [section] 5901 presents a pure legal question[.]" ECF No. 195 at 13. Instead, Plaintiffs contend that there is not a substantial ground for disagreement among the courts on this issue.

As explained, however, *see* ECF No. 187 at 16–17, several decisions provide grounds for difference of opinion based on interpretations of parallel language in other federal statutes. Rather than meaningfully engage the cases construing the analogous "act as an agent" phrase, Plaintiffs simply dismiss them as involving "different statutes and regulatory schemes[.]" ECF No. 195 at 16. However, Plaintiffs do not refute "[t]he similarity of language" across the federal statutes or rebut that that similarity "is, of course, a strong indication that the [various] statutes should be interpreted pari passu." *Northcross v. Bd. of Educ. of Memphis City Schs.*, 412 U.S. 427, 428 (1973) (per curiam).

Plaintiffs also misunderstand the relevance of the Third Circuit's *Platkin* decision. Of course, the Third Circuit did not define agency under section 5901. The point is that the Third Circuit's "serious[] doubt" about the constitutionality of a New Jersey state law interfering with Veterans Guardian's ability to assist veterans under the First Amendment,

*Veterans Guardian VA Claim Consulting LLC v. Platkin*, 133 F.4th 213, 221–22 (3d Cir. 2025), reinforces that construing "agent" to bar such assistance at least raises a serious "constitutional question." *Clark v. Martinez*, 543 U.S. 371, 381–82 (2005) (statutes should be construed "to *avoid* the decision of constitutional questions").

### C. <u>Question Three</u>: Whether Preparing Claims Without Accreditation And Charging Related Fees Constitutes An Unfair Trade Practice.

Plaintiffs do not dispute that the third question is purely legal or that it is dispositive. Instead, they wave away this controlling issue by noting that the Court "has already held that the MVSA applies prospectively and does not govern civil claims arising before October 1, 2025." ECF No. 195 at 17. But the Court's decision to apply retroactively 38 U.S.C. § 5901(b)'s warning against "potential predatory practices" to claims and services that predate that statute's November 2025 enactment, *see* ECF No. 183 at 17–21, stands in tension with its decision to apply the MVSA only prospectively, *see* ECF No. 178 at 6. And even if the MVSA declares only prospectively that charging *excessive* claims-assistance fees "is an unfair trade practice under G.S. 75-1.1," that same provision at least establishes a substantial ground for difference of opinion as to whether the General Assembly viewed charging such fees (particularly fees *within* the MVSA's reasonable limits) as an unfair trade practice before the MVSA's effective date.

## II. Interlocutory Review Would Materially Advance The Ultimate Termination Of This Litigation

Plaintiffs do not dispute that if the Fourth Circuit were to rule in Veterans Guardian's favor on any one of the three controlling questions, it would "materially advance the ultimate termination of the litigation[.]" 28 U.S.C. § 1292(b). Instead, they attempt to

distract from that statutory standard by raising two separate arguments, neither of which succeeds.

*First*, Plaintiffs contend that potential savings in trial costs cannot cure the failure to meet section 1292(b)'s other requirements. ECF No. 195 at 12–13. This may be true as a general matter—but here, the other section 1292(b) requirements *are* satisfied. And as explained below, the material advancement factor strongly favors certification.

*Second*, Plaintiffs argue that because trial is set for February 2027, interlocutory review would delay, rather than advance, the litigation. ECF No. 195 at 14–15. But the relevant question is not the proximity of the trial date—it is whether "an immediate reversal of an issue at the appellate level will save the parties unnecessary time and expense." *Riley v. Dow Corning Corp.*, 876 F. Supp. 728, 731 (M.D.N.C. 1992).

In fact, this Court recently confronted a similar situation and reached the *opposite* conclusion from the one Plaintiffs urge. In *Sacks Holdings, Inc. v. Grin Natural USA Limited*, No. 1:23-CV-1058, 2025 WL 2552589 (M.D.N.C. June 11, 2025), the Court certified an order for interlocutory appeal under section 1292(b) even though trial was scheduled for just *two months away*, and pretrial disclosure obligations were due within weeks. *Id.* at *2. The Court reasoned that "[i]f the Court is wrong" on the challenged issue, "the parties, the Court and court staff, and jurors will have engaged in an entirely useless and time-consuming trial[.]" *Id.* Even if the Court was right on the challenged issue, appellate confirmation would be "likely to streamline the trial of damages issues and result

in a higher degree of cooperation between the parties, further materially advancing the ultimate termination of the litigation." *Id.*[3]

The same logic applies here, and with even greater force. Plaintiffs argue that section 1292(b) should be "limited to extraordinary cases[,]" ECF No. 195 at 2 (citations omitted), but this is far from an ordinary case. Plaintiffs bring claims on behalf of more than 60,000 class members across the country and seek over $1.2 billion. ECF No. 197 at 27, 32. An award in the extraordinary amount Plaintiffs seek would impose absolutely devastating harms on Veterans Guardian, reputationally and financially, that a subsequent reversal on appeal could not fully undo. Further, the pretrial proceedings ahead—including supplemental summary judgment briefing, Daubert motions, and trial briefs, ECF No. 192 at 1–5—and the awaiting trial underscore the substantial expenses that could be rendered entirely unnecessary if the Fourth Circuit resolves any of the controlling legal questions in Veterans Guardian's favor.

Plaintiffs' cited authority only reinforces the point. Plaintiffs lean heavily on *Agape*, where the Fourth Circuit dismissed in part an interlocutory appeal. *United States ex rel.*

[3] The Fourth Circuit's subsequent denial of the petition for interlocutory appeal in *Sacks* does not caution against a grant here. The complicated procedural history and piecemeal appeals in that case—where an appeal from a prior preliminary injunction ruling was already pending at the Fourth Circuit and where this Court declined to stay the proceedings (while removing the case from the trial calendar)—placed it in a very different position than this one. Moreover, although the controlling question was "dispositive of almost all the trademark liability issues in th[at] case," the Court relied on "dicta" from other decisions to find a "substantial ground for disagreement" because the "[a]pplicable cases" on the relevant issue were "sparse." *Sacks*, 2025 WL 2552589, at *1. By contrast, here, the controlling questions are front and center in the cases discussed above that illustrate a substantial ground for disagreement, particularly with respect to the choice-of-law issues.

*Michaels v. Agape Senior Cmty., Inc.*, 848 F.3d 330, 335 (4th Cir. 2017). But the Fourth Circuit did not dismiss a portion of the appeal because the trial was too close or the case was too far along. It dismissed the portion because the challenged issue did not present a pure question of law. *Id.* at 340–41. Indeed, the Fourth Circuit proceeded to resolve the merits of the portion of the appeal that did present a controlling question of law. *Id.* at 339–40. That reasoning supports Veterans Guardian's position here, where the Fourth Circuit could decide pure legal questions without having to evaluate the factual record. And the scale of this case rivals *Agape* itself: here, this class action involves thousands of class members, Plaintiffs seek an extraordinary sum, and complex damages and liability issues still lie ahead.

Moreover, Plaintiffs do not credibly claim prejudice from any delay. This Court's own ruling confirms that Veterans Guardian's services do not constitute an unfair trade practice as of October 1, 2025. *See* ECF No. 178 at 5–6. Allowing for timely appellate review of Plaintiffs' backward-looking claims for monetary relief would pose no harm.

## CONCLUSION

For the foregoing reasons, Veterans Guardian respectfully requests that this Court certify for interlocutory appeal its August 3, 2026 Order (ECF No. 183)—including the orders adopted in full by reference therein—for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

Date: September 22, 2026

Respectfully submitted,


*/s/* Dustin T. Greene

Dustin T. Greene
North Carolina Bar No. 38193
FOLEY & LARDNER LLP
4140 Parklake Avenue, Suite 610
Raleigh, NC 27612
Office: (984) 375-3050
Fax: (984) 375-3040
Email: dustin.greene@foley.com

*/s/* Caroline L. Wolverton

Anthony T. Pierce*
Lide Paterno*
Caroline L. Wolverton*
Nicole A. Greenstein*
Madeline M. Kinsey*
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Tower
2001 K Street N.W.
Washington, DC 20006
Tel: (202) 887-4000
Email: apierce@akingump.com
lpaterno@akingump.com
cwolverton@akingump.com
*special appearance

*Counsel for Defendant Veterans Guardian VA Claim Consulting, LLC*

## CERTIFICATE OF WORD COUNT

I hereby certify that, pursuant to Local Rule 7.3(d)(1), the foregoing document complies with the 3,125-word limit according to the word processing system used to process this document.

*/s/* Caroline L. Wolverton
Caroline L. Wolverton

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/* Caroline L. Wolverton
Caroline L. Wolverton