IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JENNIFER FORD, ERIC BEARD, and BRIAN OTTERS, individually and on behalf of all others similarly situated, | ) | |
| Plaintiffs, | ) | |
| v. | ) | 1:23-CV-756 |
| VETERANS GUARDIAN VA CLAIM CONSULTING, LLC, | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Catherine C. Eagles, Senior District Judge.

In this consumer-protection class action lawsuit, both parties have filed supplemental summary judgment motions addressing the plaintiffs' claims for damages caused by violations of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA") and addressing liability and damages arising from the alleged violations of § 75-55(2) of the North Carolina Debt Collection Act ("NCDCA"). There are no disputed questions of material fact as to damages caused by the unfair trade practices violations and summary judgment will be granted in favor of the classes. But the defendant is entitled to summary judgment on the Debt Collection Act claim because the undisputed evidence does not show a violation of § 75-55(2).

## I. Background

The defendant, Veterans Guardian VA Claim Consulting, LLC, prepares and presents disability claims for veterans like the plaintiffs, Jennifer Ford, Eric Beard, and Brian Otters, to submit to the VA, even though it is not accredited by the VA as required by federal law. Doc. 175 at 1–2, 19. The plaintiffs contend that Guardian's federal law violations constitute violations of the UDTPA and the NCDCA. Doc. 52 at ¶¶ 187–314. The Court certified three classes, one for each count alleged: (1) UDTPA initial VA claims, as alleged in Count 1, (2) UDTPA non-initial VA claims, as alleged in Count 2, and (3) NCDCA, as alleged in Count 3. Doc. 131 at 27.

Across three summary judgment orders, the Court (1) determined that the undisputed evidence showed that Guardian acts as an unaccredited agent in violation of federal law, Doc. 175; (2) dismissed claims under the UDTPA and NCDCA arising on or after October 1, 2025, the effective date for a relevant North Carolina law, Doc. 178; (3) determined that North Carolina law applied to all named plaintiffs and class members, Doc. 183 at 4–15; (4) granted summary judgment for the class members as to liability on the UDTPA claims, *id*. at 15–21; and (5) dismissed the NCDCA claim to the extent that it was based on N.C. Gen. Stat. § 75-54(4). *Id*. at 21–22. The plaintiffs thereafter requested a voluntary dismissal of the aspect of the NCDCA claim asserted under § 75-54(7). Doc. 198 (order granting motion for voluntary dismissal).

The Court adopts the previous three summary judgment orders in full by reference, including the comprehensive case background and full undisputed facts. The Court will address each remaining summary judgment issue in turn.

## II. Guardian's Unlawful Conduct Proximately Caused Class Members Injury under the UDTPA

As the Court has previously held, federal law prohibits anyone from charging a veteran a fee for assistance with an initial claim for benefits and charging such a fee constitutes an unfair trade practice. *See, e.g.*, Doc. 183 at 19–20 (determining that "Guardian engages in predatory practices by acting as an unaccredited agent and charging fees for preparing such claims in violation of federal law."). It is undisputed that Guardian charged such fees and that the members of the classes paid such unlawful fees. These class members were injured, because they paid Guardian fees which it could not lawfully charge. *See id*. at 17–21 (determining that Guardian's violations of federal law constitute *per se* unfair trade practice violations under Counts I and II and alternatively that Guardian's violations of federal law constitute unfair trade practice violations).

Federal law also prohibits persons who are not accredited agents from charging veterans fees for acting as agents in connection with filing VA claims to increase benefits, and it limits the fees accredited agents can charge. It is undisputed that Guardian is not accredited and that it charged fees for its services. These class members were injured because they paid for assistance that Guardian was not allowed to provide without accreditation. *Id*. at 20-21.

## III. The UDTPA Damages are the Amount of Fees Paid, Trebled

To recover damages under the UDTPA, a plaintiff must prove that he "suffered actual injury as a proximate result of defendant's conduct." *Belk, Inc. v. Meyer Corp., U.S.*, 679 F.3d 146, 164 (4th Cir. 2012) (cleaned up). "Actual injury may include the loss

of the use of specific and unique property, the loss of any appreciated value of the property, and such other elements of damages as may be shown by the evidence." *Id*. at 165 (cleaned up). "The North Carolina courts have explained that the measure of damages used should further the purpose of awarding damages, which is to restore the victim to his original condition, to give back to him that which was lost as far as it may be done by compensation in money." *Id*. (cleaned up).

The amount of damages is ordinarily a fact question for the jury, but courts determine the measure of damages. *See Media Network, Inc. v. Long Haymes Carr, Inc.*, 197 N.C. App. 433, 448–49, 678 S.E.2d 671, 681–82 (2009); 1 North Carolina Unfair Business Practice § 10.03 (2026). Here, the appropriate measure of damages is the amount of the fee unlawfully charged by Guardian and paid by each class member. *See Belk*, 679 F.3d at 165; *see also Richardson v. Bank of Am., N.A.*, 182 N.C. App. 531, 563, 643 S.E.2d 410, 430 (2007).

Guardian's own records show the undisputed amounts paid by each class member. *See* Doc. 197-1 (spreadsheet of fees class members paid Guardian from Guardian's records).[1] There are no material factual issues for a jury to determine as to UDTPA damages, and summary judgment is appropriate.

The plaintiffs' claim for treble damages similarly raises no disputed questions of material fact. Treble damages are assessed automatically upon a violation of the UDTPA. *Belk*, 679 F.3d at 165; N.C. Gen. Stat. § 75-16.

[1] The parties have represented that they can work toward a joint stipulation to resolve any discrepancies in this data. Doc. 197 at 15 n.1; Doc. 203 at 11 n.2.

Guardian asserts that there can be no UDTPA recovery where the NCDCA applies. Doc. 203 at 11–12. "If the abusive conduct alleged pertains only to debt collection, the NCDCA provides a claimant's exclusive remedy." *Williams v. Pegasus Residential*, *LLC*, 18-CV-1030, 2019 WL 4305989, at *2 (M.D.N.C. Sep. 11, 2019); *see also Tobias v. Nationstar Mortg.*, *LLC*, No. 17-CV-486, 2018 WL 264103, at *4 (M.D.N.C. Jan. 2, 2018). But that principle does not apply here. As discussed *infra* Section IV, the undisputed evidence does not establish a violation of § 75-55(2), the only provision of the NCDCA on which the plaintiffs continue to rely. And Guardian does not point to any other provision of the NCDCA that does apply. Doc. 203 at 14–15. Finally, Guardian's abusive conduct does not pertain only to debt collection; that abusive conduct begins and encompasses acting as an unaccredited agent in providing VA benefit assistance.

Guardian contends that the class members suffered no injury or damages because they received VA benefits they otherwise would not have received. *Id*. at 15–18. It is undisputed that Guardian provided actual services to the class members and that each class member received benefits or an increase in benefits after using Guardian's services. The class definitions include only the veterans who made payments to Guardian, Doc. 131 at 27, and the evidence is undisputed that Guardian only charged contingent fees for veterans who received first time benefits or increased benefits.

But there are two problems with Guardian's argument. First, the causal link asserted by Guardian is highly speculative; anecdotal evidence that Guardian did good work does not mean that any and all class members would have received nothing had they used one of the legal no-fee or accredited agents available. Second, and more

importantly, all class members paid Guardian for work Guardian was not lawfully allowed to charge. It is undisputed that every single class member is out of pocket the amount of those unlawful fees they actually paid.

Alternatively, Guardian contends that any damages amount should be reduced by the amount of value a class member received as a result of using Guardian's services. Doc. 203 at 15–26. But the text of Chapter 75 does not provide for a damages offset. *See Taylor v. Volvo N. Am. Corp.*, 339 N.C. 238, 260, 451 S.E.2d 618, 630 (1994) ("Chapter 75 has no such offsetting provisions."). And this exact argument has been rejected by the North Carolina courts. *See Richardson*, 182 N.C. App. at 562–65.

In *Richardson*, the defendant contended that class members received value from an illegally charged insurance premium and that the value should have been deducted from the UDTPA damages before trebling damages. *Id*. at 562–63 The North Carolina Court of Appeals rejected this argument, holding that the insurance had no value because it was an unlawfully sold insurance product. *Id*. at 562–65. The court pointed out that courts have reduced UDTPA damages amounts before trebling in cases where plaintiffs had received goods or property that retained value and could be resold. *Id*. at 562 (citing cases). Moreover, Guardian does not explain why it should receive an offset for an amount of money paid by the VA, and, as with its other argument, the causal link is speculative. The offset proposed by Guardian is inconsistent with the purpose of the damages award because it would not financially restore the class members to their positions before paying the unlawful fees. And it would reward Guardian for violating federal law.

## IV. Section 75-55(2) of the NCDCA Does Not Prohibit Guardian's Conduct

The undisputed evidence shows that Guardian charged class members a contingent fee for its services and that each class member paid at least a portion of the fee. Doc. 131 at 27; Doc. 175 at 7. The plaintiffs contend that charging for this service is illegal and violates § 75-55(2) of the NCDCA. But the plaintiffs misread the statute. Section 75-55(2) does not prohibit Guardian's conduct because Guardian did not charge a fee for collecting the debt or collecting any illegal fee incidental to the principal debt. The undisputed evidence does not support this claim.

When construing a North Carolina statute, courts "first examine the plain words of the statute as the best indicia of legislative intent is the language of the statute itself." *Wynn v. Frederick*, 385 N.C. 576, 581, 895 S.E.2d 371, 377 (2023) (cleaned up).[2] "If the plain language of the statute is unambiguous, courts apply the statute as written." *Id.* (cleaned up).

Section 75-55 of the NCDCA provides that "[n]o debt collector shall collect or attempt to collect any debt by use of any unconscionable means." N.C. Gen. Stat. § 75-55. Several subsections follow, listing a non-exclusive list of "unconscionable means." In the subsection on which the plaintiffs rely here, such unconscionable means are defined to include "[c]ollecting or attempting to collect from the consumer all or any part of the debt collector's fee or charge for services rendered, collecting or attempting to

[2] In a diversity case involving construction of a state statute, federal courts apply state law statutory construction rules. *See Whitmire v. S. Farm Bureau Life Ins. Co.*, 52 F.4th 153, 157 (4th Cir. 2022).

collect any interest or other charge, fee or expense incidental to the principal debt unless legally entitled to such fee or charge." N.C. Gen. Stat. § 75-55(2). This subsection is logically read as a list, prohibiting two different kinds of unconscionable debt collection, either one of which is an unfair debt collection practice:

> [1] Collecting or attempting to collect from the consumer all or any part of the debt collector's fee or charge for services rendered,
>
> [2] Collecting or attempting to collect any interest or other charge, fee or expense incidental to the principal debt unless legally entitled to such fee or charge.

There is no evidence that Guardian collected or attempted to collect any "debt collector's fee or charge" from anyone, including the class members. Nor is there any evidence that Guardian collected or attempted to collect any interest or other charge, fee, or expense incidental to the principal debt. All of the evidence is that Guardian charged only the contingent fee for its services rendered in acting as the veteran's agent to gather needed information and fill out all the forms required to claim benefits, as provided in the purported contracts with class members. *See* Doc. 175. There was no added fee or charge for debt collection and there was no interest or incidental charge or fee. Thus, the plaintiffs have not produced any evidence that Guardian committed an unfair debt collection practice as defined by § 75-55(2), the only statutory provision on which they now rely.

The plaintiffs read § 75-55(2) to define an unconscionable debt collection practice as "collecting or attempting to collect from the consumer all or any part of the debt

collector's fee or charge for services rendered . . . unless legally entitled to such fee or charge." Doc. 197 at 25–26 (quoting § 75-55(2) in part). But reading the statute this way removes many words from the statutory provision and results in a construction that is inconsistent with the meaning of the subsection read as a whole.

Nothing in the grammar or punctuation of § 75-55(2) supports such a reading. The reference in the first part of the subsection to a "charge for services rendered" cannot be read without reference to the immediately preceding phrase to which it is linked: "the debt collector's fee or charge for services rendered," which makes it clear that "charge for services rendered" means services rendered as a debt collector. Otherwise, the subsection would make it an unfair debt collection practice to send a bill for any and all services rendered, which is an absurd result. And the second item in the list — the part of the subsection where the phrase "unless legally entitled to such fee or charge" is found — explicitly relates to add-on fees and incidental charges, which are not at issue here.

Indeed, most of the cases cited by the plaintiffs to support their interpretation involve add-on fees or incidental charges beyond the principal debt, which, as just discussed, are explicitly covered by § 75-55(2) and which Guardian did not assess or impose. For example, in *IRA Club FBO Melissa Dahlquist IRA 2000487 v. Danzy*, the Court of Appeals upheld five out of six § 75-55(2) violations based upon "attempts to collect late fees" added to an underlying debt of monthly rent due. 299 N.C. App. 148, 915 S.E.2d 302 (table), 2025 WL 1452659, at *9 (May 21, 2025). It upheld the sixth § 75-55(2) violation because the landlord had agreed to $999 monthly rent, but then "in

its numerous communications to [the tenant] attempting to collect on debt, . . . assert[ed] that [the tenant] owed *an additional* $100." *Id.* (emphasis added).

There is dicta in one case cited by the plaintiffs that provides some support for their position. In *Onnipauper LLC v. Dunston*, the plaintiffs claimed that a $125 fee added to monthly rent for use of a well for water was a violation of § 75-55(2) as an attempt to collect "a fee for the provision of water that [the landlord] was not legally entitled to collect." 290 N.C. App. 486, 487–88, 892 S.E.2d 487, 490 (2023). The North Carolina Court of Appeals held that the fee charged was not "unlawful" under two other statutory provisions governing landlord provision of fit premises and utilities, *id*. at 492–93 (citing N.C. Gen. Stat. §§ 42-42 and 42-42.1). The court noted in dicta that "[i]f the provision was indeed unlawful under section 42-42, it would be against public policy and therefore unfair under the NCDCA." *Id*. at 492. But the court did not analyze that proposition in light of the statutory language in § 75-55(2), which is the statute on which the plaintiffs rely here. To the extent the Court of Appeals implied that § 75-55(2) makes it an unfair debt collection practice to charge a fee for an unlawful service, the Court does not find this dicta persuasive.[3]

In the absence of any disputed question of material fact, Guardian is entitled to summary judgment on the NCDCA claim.

[3] This Court, sitting in diversity, is not bound by the precedent of the North Carolina Court of Appeals but rather must adjudicate the issues before it consistent with the precedent of the North Carolina Supreme Court; where no such precedent exists, it must predict how the North Carolina Supreme Court would rule if presented with the issue. *See Wells v. Liddy,* 186 F.3d 505, 527–28 (4th Cir. 1999).

### V. Prejudgment Interest

"[S]tate law applies to questions involving prejudgment interest in diversity cases." *United States v. Dollar Rent A Car Sys., Inc.*, 712 F.2d 938, 940 (4th Cir. 1983) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497 (1941)). For a North Carolina UDTPA claim, a judgment for "compensatory damages bears interest from the date the action is commenced until the judgment is satisfied." N.C. Gen. Stat § 24-5(b); *see also Beach Mart, Inc. v. L&L Wings, Inc.*, No. 2:11-CV-44, 2021 WL 1159656, at *8 (E.D.N.C. Mar. 26, 2021); *Williams v. Ests. LLC*, No. 19-CV-1076, 2022 WL 1809464, at *4 (M.D.N.C. June 2, 2022). Prejudgment interest is calculated based on the amount of compensatory damages; it is not awarded on the trebled damages and the prejudgment interest is not itself trebled. *See Williams*, 2022 WL 1809464, at *4 (collecting cases).

In their briefing, Doc. 197 at 31, the plaintiffs contend that prejudgment interest begins to run for each and every class member on August 23, 2023, the date the first lawsuit asserting a class UDTPA claim was filed in state court by plaintiff Brian Otters. *See* No. 23-CV-762, Doc. 1-1 at 2 (showing complaint filed by consolidated plaintiff Brian Otters in state court on August 23, 2023). For all class members who had paid Guardian on or before that date, that argument makes some sense. Mr. Otters filed suit on behalf of himself and all others similarly situated, and those "similarly situated" ultimately recovered compensatory damages.

On the other hand, the Court did not identify those who were "similarly situated" until it certified the class action on December 30, 2025, and approved the class notices on

February 9, 2026. Doc. 131 at 27 (defining the UDPTA classes as "veterans who made their first payment to Veterans Guardian . . . between August 23, 2019, and the date of this Court's order approving class notice"); Doc. 147 (order approving notices). And, as Guardian points out, the classes include veterans who made payments up to February 9, 2026, well after the first lawsuit was filed, and thus almost certainly include veterans who had not paid Guardian anything as of the date Mr. Otters filed suit in state court.[4] Class members were able to opt-out of the class up to May 4, 2026, Doc. 147 at 9, and almost 700 class members took advantage of that option. Doc. 176 at 2.

The North Carolina Supreme Court has held that two of the purposes of the prejudgment interest statute are "to compensate plaintiffs for loss of the use of their money" and "to prevent unjust enrichment of the defendant by having money he should not have." *Brown v. Flowe*, 349 N.C. 520, 524, 507 S.E.2d 894, 896 (1998) (citing *Powe v. Odell,* 312 N.C. 410, 413, 322 S.E.2d 762, 764 (1984) (interpreting the 1983 version of § 24–5)). Until a class member paid Guardian, he or she had not lost the use of any money, so awarding interest from a date before such payment was made is inconsistent with the first purpose. *Id.* And until Guardian received the payment, it did not have money it should not have had, so such interest is also inconsistent with the second purpose. *Id.* It does not make sense to award interest on money a class member had not paid out and that the defendant had not received.

[4] The Court later granted in summary judgment in part to Guardian and dismissed all claims arising after September 30, 2025. Doc. 178. But the same problem remains: there are almost certainly class members with claims remaining who did not pay Guardian until after Mr. Otters filed suit in 2023.

The statute only authorizes prejudgment interest on compensatory damages, which here are the amount of money a class member paid to Guardian. *See* discussion *supra* at 4. The plaintiffs have cited no case in which a court has held that a class member was entitled to prejudgment interest beginning before that class member incurred any compensatory damages. To the extent the plaintiffs contend that every single class member is entitled to prejudgment interest as of August 23, 2023, when Mr. Otters filed suit, that argument is without merit.

Guardian appears to contend that the class members are not entitled to any prejudgment interest. But beyond their argument that class members have not been harmed — an argument the Court has rejected before and rejects again today — Guardian cites no law supporting that contention. And such an argument is inconsistent with the North Carolina statute, which provides that a judgment for compensatory damages "bears interest" and which does not include any language indicating that courts have discretion in imposing such interest. To the extent Guardian contends no prejudgment interest should be imposed, that argument is without merit.

Guardian does not offer any alternative way to calculate prejudgment interest. Beyond its contentions that class members should not get interest on money they had not yet paid and that any prejudgment interest awarded should not overcompensate class members, Doc. 203 at 29–30, Guardian has not suggested a specific way to calculate prejudgment interest. Neither party has cited any case law applying the North Carolina prejudgment interest statute in a case where some class members did not have any

compensatory damages until after the lawsuit was filed, and the Court has not located any such case in its research.[5]

For the three named plaintiffs, Ms. Ford, Mr. Otters, and Mr. Beard, the answer is easy and required by the statute: Guardian must pay prejudgment interest from the date each filed suit. For all other class members, the Court concludes that the logical solution is to require Guardian to pay prejudgment interest from May 5, 2026, the day after the deadline for opting-out of the class action.

For class members, the opt-out deadline is the logical equivalent to the date the case was filed. By this point, putative class members had received notice of the lawsuit and had enough information to decide whether to stay in or opt-out. The opt-out date is when every putative class member had to commit, either to staying in the class or to opting-out. In this context, the failure to opt-out functions like filing a lawsuit: the putative class members have committed to the pursuit of the claims, they are no longer putative, and they will be bound by the results of the litigation. It is also the date on which Guardian knew the scope of its potential liability, so this result satisfies the third goal of prejudgment interest: to promote settlement. *Brown*, 49 N.C. at 524. Finally, every class member had incurred compensatory damages at that point, because the classes do not include anyone who paid Guardian after the notice was approved on

---

[5] For that matter, neither party has cited a case from anywhere applying any other prejudgment interest statute in a case where some class members did not have any compensatory damages until after the lawsuit was filed. The Court has also consulted William B. Rubenstein, *Newberg & Rubenstein on Class Actions* (6th ed. 2026), and Joseph M. McLaughlin, *McLaughlin on Class Actions* (22nd ed. 2025), without result.

February 9, 2026; this deadline is generally, if not precisely or wholly, consistent with the goals of compensating class members for the loss of use of their money and avoiding a windfall to the defendant.

Prejudgment interest will run on Mr. Otters' compensatory damages beginning on August 23, 2023, the date he filed suit. *See* No. 23-CV-762, Doc. 1-1 at 2. Prejudgment interest will run on Jennifer Ford's compensatory damages beginning on September 1, 2023, the date she filed suit. Doc. 1. Prejudgment interest will run on Eric Beard's compensatory damages beginning on December 8, 2023, the date he filed suit. *See* No. 23-CV-1080, Doc. 1. For all other class members, prejudgment interest will begin to accrue as of May 5, 2026, the day after the deadline for putative class members to opt out of the class action.

Such interest will be calculated on the amount of compensatory damages only, before that amount is trebled. Prejudgment interest itself will not be trebled.

## VI. Conclusion

The appropriate measure of UDTPA damages is the amount of fees unlawfully charged by Guardian and paid by the class members. The evidence is undisputed as to those amounts. Such damages are trebled as a matter of law. The plaintiffs are entitled to summary judgment on their claims for UDTPA damages. Prejudgment interest will be calculated based on the compensatory damages amount before it is trebled. The date for prejudgment interest accrual for the plaintiffs will be the date that each filed his or her initial complaint, and the accrual date for the other class members will be May 5, 2026, the day after the opt-out deadline.

Section 75-55(2) of the NCDCA does not prohibit Guardian's conduct. The plaintiffs' reading of that statute is overbroad. Guardian is entitled to summary judgment on the plaintiffs' § 75-55(2) NCDCA claim.

The parties have indicated their ability to agree on the amounts each class member paid and thus the amount of compensatory damages, trebled damages, and prejudgment interest as determined under the decisions in this order. Doc. 197 at 15 n.1; Doc. 203 at 11 n.2. The Court will require the parties to meet and confer about the form of a final judgment and will set a status conference.

This order means that there are no issues for trial. The case is removed from the February 8, 2027, calendar.

It is **ORDERED** that:

1. The plaintiffs' supplemental motion for summary judgment, Doc. 197 is **GRANTED in part** and **DENIED in part**.
2. The defendant's supplemental cross-motion for summary judgment, Doc. 202, is **GRANTED in part** and **DENIED in part**.
3. The plaintiffs and the classes are entitled to summary judgment as to the calculation of damages on the UDTPA claims, and compensatory damages are the amount each class member paid Guardian, trebled, plus prejudgment interest, not trebled, on the amount of compensatory damages.
4. The plaintiffs' remaining NCDCA claim under § 75-55(2) is **DISMISSED**.
5. The February 8, 2027, trial is **CANCELLED**.

6. The parties **SHALL** promptly meet and confer as to the form of an appropriate final judgment and the damages and prejudgment interest amounts.
7. The matter is set for status conference on December 1, 2026, at 2 p.m.

This the 10th day of November, 2026.

SENIOR UNITED STATES DISTRICT JUDGE